IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, v. THE UNITED STATES, Defendant. | No. 96-166C<br>Chief Judge Edward J. Damich |

**OPPOSITION OF THE UNITED STATES TO ZOLTEK'S MOTION TO MODIFY THE COURT'S ORDER OF APRIL 13, 2004**

Zoltek Corporation (Zoltek) moves to modify the Court's Order of April 13, 2004 to allow Zoltek to take stenographic and video depositions of Messrs. Rogers and Capoccia, both employees of Northrop Grumman Corporation. Zoltek Mot. to Modify the Court's Apr. 13, 2004[1] Order (hereinafter Zoltek's Mot. to Modify (Dkt. 283)). In the intervening 15 months since the Court issued its Order, Zoltek has taken no discovery, and it cannot show any change in circumstance warranting the modification of the Court's Order. Accordingly, the Zoltek's motion should be denied.

[1] Zoltek contends that the Order of April 13, 2004 is no longer under seal. Zoltek's Mot. to Modify (Dkt. No. 283) at 1 n.1. Defendant could not find any record indicating that the April 13, 2004 Order was ever made public by the Court, and the Clerk's docket does not reflect such a change. Since Zoltek has included the April 13, 2004 Order in its public filings, however, it is *de facto* in the public record. Defendant has reviewed the Order and has no objection leaving it in the public record.

## I. BACKGROUND

On July 30, 2002, Zoltek moved to compel Rule 30(b)(6) depositions of and document production from Northrop Grumman Corp. (Northrop) and two of its employees – Messrs. George Rogers and Michael Capoccia. Zoltek's Motion to Compel Discovery and for an Extension of Time to Comply (Dkt No. 202, July 30, 2002) (hereinafter "Motion to Compel (Dkt. No. 202"). Northrop opposed on several grounds, primarily related to the breadth of the discovery and the discovery obtained from the United States. Northrop Grumman Corporation's Opposition to Zoltek Corporation's Motion to Compel Discovery (Dkt No. 209, Sept. 6, 2004) (hereinafter "Northrop Response"). The United States submitted its views with respect to the Motion to Compel in a separate paper. Statement of the United States with Respect to Zoltek's Motion to Compel Discovery and for Extension of Time to Comply (Dkt. No. 212, Sept. 17, 2005) (hereinafter "Government Statement"). Both Northrop's response and the Government's Statement noted that the B-2 program included classified information. Government Statement, Declaration of John B. Hennessy at A1 through A3 (Dkt. No. 212); Northrop Response, Coyne Declaration at 2 (Dkt. No. 211). Further, the Government requested that, if the court was inclined to grant discovery, any depositions of Northrop be conducted upon written interrogatory in order to protect against the release of classified information.

After considering the briefs and exhibits presented by the parties, the Court issued its Order of April 13, 2004 (Dkt. No. 255). That Order fully addressed the same information that Zoltek again presents as support for the current motion. With respect to that information, the Court noted:

> The existence of carbon fibers and their particular traits are not classified. Nor, apparently, is the fact that Northrop chose to purchase them under the

> auspices of the B-2program. The use to which these fibers are put by Northrop, however, is a different matter. Northrop did not indicate how it would use the requested fibers, what processes might be applied to them, what they may be made into, or how precisely they were relevant to the B-2. Another supplier of these fibers characterized Northrop as "'[A] black box,' th[at] did not reveal why they were buying carbon fibers or how they intended to use those fibers." Statement of the United States at 6.
>
> It is entirely possible that the Government has strong reasons for keeping this material secret. Even if some of this information is publicly available, the totality of its use and how it is incorporated in the B-2 could be of national security concern. As was noted above, even unclassified material, if collected and organized in a particular way, can be considered classified material. Exec. Order No. 12598, Sec. 1.8 (e)(2), 60 Fed. Reg. 19825 (Apr. 17, 1995). Therefore, the fact that Zoltek was solicited by Northrop to sell certain types of fibers does not show that Northrop waived any confidentiality regarding the B-2 program outside of what was revealed in Northrop's solicitation.

Order at 6 (Dkt. No. 255, Apr. 13, 2004). Thereafter, the court found:

> The Government requests that the depositions be limited to written interrogatories to ensure that no classified security information is released. Statement of the United States, at 20-21. Zoltek argues that [d]epositions upon written questions are simply impractical, given the length of this litigation and the probability that further disputes will arise. Reply, at 23-24. Additionally, Zoltek seeks to have this Court available during live interrogatories to resolve issues over the scope of classified disclosures. *See* Reply, at 24.
>
> Given the circumstances of this case, written interrogatories are appropriate to ensure [] that no classified information is inadvertently released. If discovery disputes do arise, they can be addressed by this Court in the same way it addresses other discovery disputes.

Order at 9 (Dkt. No. 255, Apr. 13, 2004). Further, the Court modified Zoltek's discovery requests, limiting both the interrogation of witnesses and the requests for production to information relating the B-2 rather than "any and all products" made by Northrop on behalf of the United States. Order at 8 (Dkt. No. 255, Apr. 13, 2004). Subsequently, Northrop affirmatively stated that it had no documents that were responsive to the requests. Northrop

Grumman Corp.'s *Further Corrected* Statement Re Production of Documents and Things In Light of Order on Mot. to Compel at 2 (Dkt. No. 266, Aug. 25, 2004).

Zoltek moved to compel Northrop to produce documents and things within the classes of information described in the lists, as modified by the Court. Zoltek's Mot. to Show Cause Why 3d Party Northrop Grumman Corp. Should Not Be Held in Contempt of Court (Dkt. No. 272, Apr. 1, 2005). After receiving Northrop's response which stated that "it is Northrop's understanding that the B-2 does not use partially carbonized fibers with controlled resistivities as claimed in Zoltek's patent." Northrop Grumman Corp.'s Opp. to Zoltek's Mot. to Show Cause Why 3d Party Northrop Grumman Corp. Should Not Be Held in Contempt of Court (Dkt. No. 273, Apr. 18, 2005). After receiving the positions of the parties, the court denied Zoltek's requested relief. Order (Dkt. No. 281, June 21, 2005).

Zoltek has yet to take the deposition of Northrop. And it now seeks to change the conditions imposed by the Court only with respect to depositions of Messrs. Rogers and Capoccia.

## II. ZOLTEK HAS FAILED TO ESTABLISH A CHANGE OF CIRCUMSTANCES WARRANTING A MODIFICATION OF THE COURT'S ORDER

While we recognize that the Court has inherent authority to modify its orders while the case remains before it, as a general rule the court's orders should not be modified except for good cause shown. *cf.* RCFC 16(b)(7) (scheduling orders may not be "modified except upon a showing of good cause and by leave of the judge"). Zoltek fails to demonstrate good cause for its motion.

In the 15 months since this Court issued the Order in question, nothing has changed. Zoltek has taken no discovery. Indeed, depositions of Northrop and its employees have never been scheduled, nor even requested. The most Zoltek has sought from Northrop to date is documents.

Zoltek simply seeks to re-argue its position. Zoltek's two page argument presents no new information. Only the quotation from *DeGraffenreid v. United States*, 224 U.S.P.Q. 787, 2 Cl. 640, 645 Ct. (1983) had not been previously presented. Zoltek's Mem. in Support of Its Mot. to Modify the Court's Apr. 13, 2004 Order (hereinafter Zoltek's Mem. (Dkt. No. 284)) at 5-6. And that quotation does not assist Zoltek.

The *DeGraffenreid* court stated: "Absent extraordinary circumstances, this Court shall not intervene to preclude a party from exercising certain methods of discovery." *Id.* In the instant case, this Court specifically found "extraordinary circumstances" that warranted restricting Zoltek's discovery options. As the Court stated: "Given the circumstances of this case, written interrogatories are appropriate to ensure [] that no classified information is inadvertently released." Order at 9 (Dkt. No. 255, Apr. 13, 2004).

## III. THE UNITED STATES HAS LEGITIMATE CONCERNS FOR THE SAFETY OF IT'S CLASSIFIED INFORMATION

The Government's concern for the safety of its classified information is not new to this case. The United States has expressed its concern throughout the nine years in which this litigation has been pending. The Government's efforts to protect its classified information are fully set forth in the Statement of the United States with Respect to Zoltek's Motion to Compel

Discovery and for Extension of Time to Comply (Dkt. No. 212, Sept. 17, 2002) and, therefore, were considered in the Court's Order of April 13, 2004.

Zoltek's present argument is no more than a short summary of its previous arguments. *Compare* Zoltek's Mem. (Dkt. No. 284) at 5-6 *with* Motion to Compel (Dkt. No. 202) at 9-15. Those argument were previously rejected by the Court. Order of April 13, 2004 (Dkt. No. 255) at 4-6.

Zoltek reiterates its assertion that the testimony of BASF employees Mr. Venner and Ms. Heffner supports their position. But Zoltek must make an extreme jump in logic to reach that assertion. Mr. Venner testified that he had a conversation with George Rogers of Northrop, but he further testified that he had no knowledge as to whether BASF sold any of its Celect product to Northrop. Zoltek's Mem. (Dkt. No. 284) at 46-48 (Exhibit 8). He did not testify as to the approximate time of that conversation. *Id.* Ms. Heffner's declaration states that BASF was producing Celect SEC fibers for "Northrop Corporation and others" during 1989 through 1991. Zoltek's Mem. (Dkt. No. 284) at 51 (Exhibit 9). Zoltek then concludes that Mr. Venner's conversation is somehow related to Ms. Heffer's statement and further assumes that the upswing in production during 1989-91 was somehow due to the production of the B-2, even though Ms. Heffner tied her memory to the Gulf War (also referred to as Operation Desert Shield/Desert Storm). Notably absent, is any information that would tie Ms. Heffner's and Mr. Venner's statements to Zoltek's conclusions, logically or temporally. In any event, the beliefs of private citizens who are not associated with the B-2 program (whether Zoltek or BASF employees) are of no consequence because their beliefs cannot control whether Northrop may present information at a unclassified deposition.

Zoltek similarly rehashes its arguments that none of the fiber manufacturers were asked to "obtain security clearances before creating and supplying these products to Northrop." Zoltek's Mem. (Dkt. No. 284) at 4, 6. The Court has already answered this argument. Order at 5 (Dkt. No. 255, Apr. 13, 2004). Assuming for the moment that Zoltek's statement is correct, although there is no evidence to support it, the mere fact that suppliers were not asked to obtain security clearances would not establish that the Government's concerns were unwarranted. As the Court noted, "Northrop did not indicate how it would use the fibers, what processes might be applied to them, what they may be made into, or how precisely they were relevant to the B-2." Order at 6 (Dkt. No. 255, Apr. 13, 2004).

Zoltek agrees to avoid "any inquiry as to the usage of these partially carbonized fibers on sheets/mats/coatings on the B-2 bomber." Zoltek's Mem. (Dkt. No. 284) at 6. While this goes part way, it is insufficient to relieve the Government's concern. Only if Zoltek were to agree not to ask any questions with respect to Northrop's reasons for acquiring fibers, and Northrop's subsequent use of the fibers acquired, would the Government agree to go forward with oral depositions. Under such circumstances, however, we do not believe that Zoltek would gain much information from the deposition. In short, it would probably be a waste of everyone's time.

Finally, Zoltek chastises Northrop for not providing a copy of Purchase Order No. 114-804148A. Zoltek's Mem. (Dkt. No. 284) at 5. Strangely, the source of information regarding that purchase order is a document produced by Zoltek. Zoltek's Mem. (Dkt. No. 284) at 32 (Exhibit 6). Although Zoltek knew of the existence of this 20 year old purchase order and had the order number available to it, *Zoltek did not specifically request that purchase order*. Instead,

Zoltek sent Northrop on a far reaching search of any and all Northrop B-2 records related to partially carbonized fibers in general. In sum, Zoltek asked Northrop to find the proverbial "needle in the haystack." Zoltek should not be heard to complain that Northrop failed to find this one document: if Zoltek wanted the purchase order (which was received, and apparently filled, by Zoltek's predecessor-in-interest), it should have made a reasonably specific request for the document and related records. But, whatever the effect may be on the course of this litigation, a purchase order by Northrop almost exactly a year before Zoltek's original patent application was filed simply does not impact on the Government's concerns regarding access to classified information.

## III. CONCLUSION

For the reasons stated herein, Zoltek's request to modify the Court's Order of April 13, 2004 should be denied.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

*s/Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345
e-mail: gary.hausken@usdoj.gov

August 22, 2005

Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2005, a copy of the forgoing Opposition of the United States to Zoltek's Motion to Modify the Court's Order of April 13, 2004 was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dean A. Monco, Esq.
John S. Mortimer, Esq.
WOOD, PHILLIPS, KATZ, CLARK
& MORTIMER
Citicorp Center, Suite 3800
500 West Madison Street
Chicago, Illinois 60661-2511

Counsel for Plaintiff, Zoltek Corp.

Further, a copy of the forgoing has been sent by electronic mail with confirming copy by first class mail, postage prepaid, this date to:

Joseph F. Coyne, Esq.
Mark Greenstone, Esq.
Sheppard, Mullin, Richter &
Hampton
333 South Hope Street, 38th Floor
Los Angeles, California 90071-1448

Counsel for Non-Party Deponents,
Northrop Corporation, George
Rogers & Michael Capoccia

*s/Gary L. Hausken*
GARY L. HAUSKEN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345
E-mail: gary.hausken@usdoj.gov