Electronically filed on 8-22-05

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ZOLTEK CORPORATION,<br>a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 96-166C<br><br>Chief Judge Edward J. Damich |

**NORTHROP GRUMMAN CORPORATION'S OPPOSITION TO ZOLTEK CORPORATION'S MOTION TO MODIFY THE COURT'S APRIL 13, 2004 ORDER**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 4

III. ZOLTEK'S MOTION SHOULD BE DENIED .....

A. Zoltek's Motion Is Procedurally Improper ..... 7

1. Zoltek Make No Effort To Satisfy RCFC Rule 60 ..... 7

2. Zoltek Cannot Satisfy RCFC, Rule 60 ..... 7

B. Zoltek's Motion Is Substantively Without Merit ..... 8

1. Air Force Security Has Already Stated The Information Zoltek Seeks Is Classified ..... 9

2. Even If The Topics Of Examination Listed In Zoltek's Motion Were Not Classified, Oral Depositions Would Create A Substantial Risk Of A Security Violation No Matter What Precautions Are Taken ..... 10

C. Northrop Has Assisted, Not Hindered, The Production Of Substantial Discovery To Zoltek ..... 11

D. Equitable Considerations Also Weigh In Favor Of Denying Zoltek's Motion ..... 14

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## Cases

Flatow v. The Islamic Republic of Iran,
196 F.R.D. 203 (D.D.C. 2000) .......... 9

United States v. Fowler,
932 F.2d 306 (4th Cir. 1991) .......... 9

Statutes

18 U.S.C. § 641 (Exh. 18) .......... 9

18 U.S.C. § 793 .......... 9

18 U.S.C. §§ 794 .......... 9

Rule 60 .......... 1, 2, 7, 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ZOLTEK CORPORATION,<br>a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 96-166C<br><br>Chief Judge Edward J. Damich |

**NORTHROP GRUMMAN CORPORATION'S OPPOSITION TO ZOLTEK CORPORATION'S MOTION TO MODIFY THE COURT'S APRIL 13, 2004 ORDER**

Non-party Northrop Grumman Corporation ("Northrop") hereby submits its Opposition to plaintiff Zoltek Corporation's ("Zoltek") Motion to Modify the Court's April 13, 2004 Order (the "Motion"), which would result in the imposition on Northrop of discovery this Court has already denied.

## I.

## INTRODUCTION

Zoltek requests that this Court modify its April 13, 2004 Order (the "Order") requiring that the depositions of Northrop witnesses George Rogers and

Michael Cappocia be taken by written interrogatory based exclusively upon evidence already briefed to this Court by Zoltek in support of its original motion to compel as well its recent failed attempt to have Northrop held in contempt. Zoltek employs this evidence to advance arguments also already briefed to the Court, and which the Court expressly rejected in the very Order Zoltek seeks to have modified. Zoltek's Motion is procedurally improper, substantively meritless, and should be denied.

Under the Rules of the Court of Federal Claims ("RCFC"), a party seeking relief from a court order bears the burden of demonstrating reconsideration is justified based upon newly discovered facts, a change in the law, or excusable neglect, surprise, inadvertence or mistake. See RCFC Rule 60. No such justification exists here, and Zoltek does not claim that such justification exists. Completely ignoring the procedural requirements, Zoltek requests that this Court simply change its mind and allow the depositions in question to be taken stenographically, rather than by written interrogatory, because this is allegedly a fairer result. Zoltek makes no effort to even identify the rule of law under which its Motion is brought, much less articulate an accepted basis for reconsideration, failing to cite a single legal authority in support of its Motion. Zoltek's failure to carry its burden under RCFC Rule 60 provides an independent basis for denial of its Motion.

Zoltek's Motion should also be denied because it is substantively meritless. The gravamen of Zoltek's case is that the B-2 Bomber allegedly infringes upon a patent owned by Zoltek. As recognized by this Court, nearly every aspect of the B-2 Program remains highly classified. Any deposition of Northrop personnel relating to the B-2

Program therefore presents the danger that classified testimony will be disclosed. This fact remains unchanged and is the basis of the Order, which should also remain unchanged.

Purporting to narrow the topics on which it intends to depose Northrop's witnesses, Zoltek argues security concerns will not be implicated. Zoltek is wrong for two reasons. First, Zoltek's supposed "narrowing" of its proposed areas of inquiry is an illusion. Notwithstanding the fact that this Court has expressly limited discovery to the B-2 Program, Zoltek proposes multiple areas of inquiry not connected to the B-2 Program. These questions far exceed the scope of permissible discovery. In addition, Air Force Security has already stated that Northrop's witnesses may not provide much of the information sought by Zoltek due to security concerns. For example, with respect to alleged purchases of materials containing partially carbonized fibers, Air Force Security has stated Northrop's witnesses may not identify Northrop suppliers (if any) or dates and quantities of purchase (if any). Granting Zoltek's Motion would therefore serve no useful purpose.

Finally, Zoltek's Motion should also be denied as a matter of equity. To the extent Zoltek has been prejudiced in its efforts to obtain discovery, any such prejudice is of Zoltek's own making. The information discoverable by Zoltek is necessarily limited by the fact that the B-2 Program is a classified program to which Zoltek is not cleared. Northrop advised Zoltek of this limitation at the outset of litigation over five years ago, but it nonetheless chose not to apply for clearance. The Order which Zoltek seeks to have modified was entered over one year ago. Zoltek has therefore had ample time to

attempt to conduct discovery on the terms ordered by the Court and propound interrogatories to Northrop's witnesses, or alternatively apply for a security clearance, but has chosen not to do so. Instead, Zoltek now asks the Court to modify its Order without offering any recognized basis for doing so, and without having attempted to pursue the method of discovery ordered by the Court. Zoltek should not be rewarded for its lack of diligence by modification of a Court Order based upon legitimate security concerns of which it was warned by Northrop years ago.

## II.

## FACTUAL BACKGROUND

Zoltek provides the Court with no factual background; however, the history of this matter is important to understanding the current dispute.

The B-2 Program is a classified weapons program for which Northrop is the prime contractor. (Declaration of Joseph F. Coyne, Jr. filed in support of Opposition to Motion to Compel ("Coyne Decl."), ¶ 2.) (Exh. 1)[1] Northrop may not release information pertaining to classified subject matter to those who do not have the appropriate security clearance from the Government. (Id.) The Government has informed Northrop that neither Zoltek nor its attorneys have B-2 Program clearances, and counsel for Zoltek has confirmed this. (Id., ¶ 3)

[1] For the Court's convenience, a copy of Mr. Coyne's declaration is attached hereto as Exhibit 1.

Both Northrop and the Government have repeatedly warned Zoltek that discovery directed to Northrop concerning the B-2 Program implicates serious security concerns. (Coyne Decl., ¶ 4.) Indeed, Joseph F. Coyne, Jr. of Sheppard, Mullin, Richter & Hampton wrote to Dean A. Monco, counsel for Zoltek, as early as April of 1999 in connection with a former subpoena *duces tecum* relating to the B-2 Program, cautioning that the subpoena raised security concerns, in addition to being overly broad and unduly burdensome. (Exh. 2.) Shortly thereafter, Northrop filed a Motion to Quash in the United States District Court for the Central District of California (from which the subpoena had been improperly issued) which set forth in detail the classified nature of the B-2 Program and the serious security concerns raised by discovery directed to Northrop relating to the B-2 Program. (Exh. 3.) The subpoena was withdrawn before the motion could be heard.

With regard to the subpoenas at issue, Mr. Coyne cautioned Mr. Monco during discussions which took place in the fall of 2001 that discovery relating to the B-2 Program raised security concerns and encouraged Mr. Monco to obtain the necessary security clearance. (Coyne Decl., ¶ 5.) Zoltek has therefore been on notice literally for years that discovery directed to Northrop concerning the B-2 Program implicates serious security concerns and has chosen not to obtain the necessary security clearances.

As a result of these concerns, in June 2002 Zoltek submitted a series of nineteen questions to the Government, which in turn provided the questions to Air Force Security for review. (Exh. 4.) The purpose of Zoltek's submission was to determine whether the questions it intended to ask at deposition raised security issues. Confirming

the concerns voiced by Northrop and the Government, Air Force Security responded that Northrop's witnesses would not be permitted to answer questions 3, 6, 8, 11, 13, 14, 15, 16, 17, 18 and 20, comprising eleven of the nineteen questions submitted by Mr. Monco. (Exh. 5.) Question 10 could "probably be answered as written, but no further explanation would be permitted." (Id.)

Importantly, it is self-evident from the Air Force response that the security constraints on Northrop personnel reach beyond questioning directed explicitly at the B-2 Program. For example, one question posed by Zoltek in connection with George Roger's August 6, 1987 letter to Stackpole Fibers Company was whether Northrop ever ordered materials containing partially carbonized fibers (Question No. 2). In the next question (Question No. 3), Zoltek asked "[i]f the answer to Question No. 2 is anything other that an unqualified no, please identify from whom such paper/sheets/mats/coatings were purchased, the dates of such purchase and the quantities obtained." The Air Force stated that Northrop's witnesses would not be permitted to answer this question. Unsatisfied with the Air Force's position, Zoltek filed a motion to compel the depositions of Northrop's witnesses, resulting in the Order which Zoltek now asks be reconsidered.

## III.

## ZOLTEK'S MOTION SHOULD BE DENIED

### A. Zoltek's Motion Is Procedurally Improper

Litigants do not enjoy an unfettered right to move for reconsideration of court orders; rather, a showing must be made which justifies the requested relief. Those factors justifying reconsideration by this Court are identified in RCFC Rule 60, which provides in pertinent part:

> Rule 60. Relief from Judgment or Order…
>
> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect

See RCFC Rule 60(b).

#### 1. Zoltek Make No Effort To Satisfy RCFC Rule 60

Zoltek relies entirely upon evidence presented by the Court on two prior occasions, and does not claim to have discovered any new evidence. Nor does Zoltek contend that its request for reconsideration of the Order is justified by a change in the law, or mistake, surprise, inadvertence or excusable neglect. Indeed, Zoltek does not cite or discuss RCFC Rule 60, or any other rule, statute, case or legal authority in its Motion.

#### 2. Zoltek Cannot Satisfy RCFC, Rule 60

There is no new evidence bearing upon the issue presented here. The B-2 program remains classified, and the danger that an oral deposition will result in the

disclosure of classified information therefore remains a real danger. Nor is Northrop aware of any developments in the law justifying reconsideration. Finally, it is equally clear that Zoltek cannot justify its Motion on the basis of "mistake, inadvertence, surprise, or excusable neglect." The evidence relied upon by Zoltek, such as the two letters by Messrs. Rogers and Cappocia, has been in Zoltek's possession for years, and played a central role in its previous motions directed at Northrop. Zoltek did not "neglect" to raise the arguments it makes now. To the contrary, they were fully briefed but largely rejected by this Court.

In essence, Zoltek asks this Court to change its mind without providing any basis for doing so beyond its contention that a fairer result would obtain. Because Zoltek has completely failed to provide any recognized basis for reconsideration of the Order, Zoltek's motion is improper and should be denied outright.

**B. <u>Zoltek's Motion Is Substantively Without Merit</u>**

Procedural considerations aside, Zoltek's Motion should be denied even if it is deemed properly brought under RCFC Rule 60 (which it is not). Air Force Security has already determined that much of the information sought by Zoltek may not be disclosed. Moreover, even if this were not the case, proceeding by oral deposition would still pose a substantial risk of a security violation.

The potential disclosure of classified information is a serious matter, and more than justifies conducting the depositions by written interrogatory. Under the Espionage Act, the willful transmission of classified information to any person or entity

not entitled to receive it is a criminal offense. 18 U.S.C. § 793. (Exh. 15.) *See also*, 18 U.S.C. §§ 794; 798. (Exhs. 16, 17.) The unauthorized transmission of classified information (whether tangible or intangible) is also punishable as conversion of United States property. 18 U.S.C. § 641 (Exh. 18); United States v. Fowler, 932 F.2d 306, 309-310 (4th Cir. 1991). A subpoena which requires the violation of a federal law, such as the unauthorized disclosure of classified information, necessarily imposes an undue burden. Flatow v. The Islamic Republic of Iran, 196 F.R.D. 203, 207 (D.D.C. 2000) (portion of subpoena commanding production of IRS records which IRS was prohibited by statute from releasing placed Treasury Department in "catch-22 position" and therefore imposed an undue burden).

### 1. Air Force Security Has Already Stated The Information Zoltek Seeks Is Classified

Air Force Security has already stated that Northrop's witnesses would not be permitted to provide much of the information sought by Zoltek. (Exhs. 4, 5) Having narrowed its proposed topics of inquiry, Zoltek claims that its questioning will not implicate security concerns. This is demonstrably untrue. It is clear from the topics listed in Zoltek's Motion that Zoltek intends to question both Mr. Rogers and Mr. Cappocia regarding Northrop's supplier base for its alleged purchase of materials containing partially carbonized fibers, as well as the details surrounding any alleged purchases of such materials. The Air Force has already stated that Northrop's witnesses will not be allowed to respond to such questioning due to security concerns. (Exh. 4.)

**2. Even If The Topics Of Examination Listed In Zoltek's Motion Were Not Classified, Oral Depositions Would Create A Substantial Risk Of A Security Violation No Matter What Precautions Are Taken**

Even assuming, *arguendo*, that the specific topics of inquiry listed in Zoltek's Motion are not classified, an oral deposition would carry with it a substantial risk of a security violation for two reasons.

Issues of classification are complex, and are not always governed by "bright lines." This is evident from the responses of Air Force Security to the questions posed by Zoltek. Those responses show clearly that the security restrictions of the B-2 program reach far beyond information directly related to the program on its face. However, the precise limits are unknown to the lay person, and even security professionals often find it necessary to consult reference manuals and guidelines. Asking questions "in the dark" with respect to these standards, in a case concerning a highly classified program, there is a real danger counsel will venture into classified subject matter. This is particularly true of Zoltek's counsel, given they are not cleared to the Program

Ordering oral depositions would also place the deponents in an impossible position, forcing them to make potentially difficult classification decisions "on the fly," and to choose between refusing to answer the questions posed or violating their security obligations. An ever present danger exists that the deponent will make the wrong decision, or accidentally offer protected information. Moreover, this danger cannot be addressed by requiring a security officer to attend because he too would have to make split second decisions. Given the complexity of classification issues on a multi-billion dollar program such as the B-2 Program, there will inevitably be instances where he is

either unable to do so and/or unable to silence the witness in time. The resulting damage is irreversible -- once classified information is divulged, a breach has occurred which cannot be undone.

For these reasons as well, Zoltek's Motion should be denied.

## C. **Northrop Has Assisted, Not Hindered, The Production Of Substantial Discovery To Zoltek**

Zoltek strongly suggests that Northrop has withheld responsive information, and, consequently, that it has been denied the opportunity to conduct effective discovery. Although not germane to issue of whether the depositions in question should be taken by written interrogatory, Northrop feels compelled to respond to Zoltek's assertions to prevent the creation of a misleading record.

It is not Northrop's intention to withhold properly discoverable information, nor do the facts suggest that it has done so. As explained by Northrop previously, the purported evidence relied upon by Zoltek fails to establish any fact relevant to Zoltek's case; Zoltek relies upon innuendo and speculation. Furthermore, the truth which Zoltek fails to acknowledge is that Zoltek has been provided with substantial discovery, obtained with the assistance of Northrop.

The Court's Order limits discovery on Northrop to partially carbonized fibers *actually used* on the B-2. The Government has taken the position that such materials within the meaning of Zoltek's patent are not used on the B-2 for the purpose of absorbing radar, and Zoltek presents no evidence to the contrary. Nonetheless, Zoltek

points the finger at Northrop in its motion stating that "[t]o date, Northrop has not produced any documents regarding its purchase and/or use of partially carbonized fibers." Zoltek Motion, fn. 3. This statement has no basis to the extent it assumes the existence of responsive documents possessed by Northrop, which is self-evident from review of the purported "evidence" relied upon by Zoltek.

Zoltek devotes substantial attention to the statements of two BASF employees, Jozef Venner and Louise Heffner. However, neither individual discusses what materials are *actually used* on the B-2. The portion of Mr. Venner's deposition upon which Zoltek relies establishes only that during the period 1980 – 1992 BASF manufactured partially carbonized fibers for military aircraft applications, and that Mr. Venner "discussed" the purchase of partially carbonized fibers with George Rodgers of Northrop's B-2 Division. Mr. Venner does not state that the B-2 Division ever actually purchased such materials; and even if it had, this would not establish the materials were actually used on the B-2.

In her declaration, Ms. Heffner states simply that during 1989 -1991 "thousands of pounds" of partially carbonized fibers were shipped to "Northrop Corporation and others." Ms. Heffner fails to identify the specific amount of materials shipped, the Northrop division to which they were shipped, or what use was made of them. The testimony of Mr. Venner and Ms. Heffner fails to establish materials containing partially carbonized fibers with controlled resistivities as claimed in Zoltek's patent were ever used on the B-2 for the purpose of absorbing radar.

Nor does Michael Cappocia's February 21, 1997 letter to Andrea Dry of Zoltek speak to what materials are actually used on the B-2. Mr. Cappocia simply indicates that Northrop had purchased controlled resistivity fibers in the past and was looking for a supplier. Mr. Cappocia does not indicate the volume of materials purchased, or the use for which they were purchased.

Moreover, Zoltek is not the "victim" that it claims to be; the Government has provided it with significant discovery regarding the B-2 Program, facilitated in part by Northrop. On December 8, 1998, Zoltek filed a motion seeking, *inter alia*, to compel the Government to produce "all documents relating to the use of carbon fiber materials on the B-2 Bomber, as referred to in the Declaration of Michael A. Urig." On March 25, 1999, the Government produced for inspection the 41 documents referenced in Mr. Urig's declaration, as well as other documents requested by Zoltek, at Tinker Air Force Base, Oklahoma.

The Government has also produced B-2 physical samples of potential relevance. The Government was ordered by this Court on March 16, 2001 to produce a sample of "each and every type of carbon fiber sheet/mat used in any capacity on the B-2 Stealth Bomber." These materials were subsequently produced to Zoltek.

Having failed to identify facts to support its claims, Zoltek now looks elsewhere for evidence, attempting to build a case upon innuendo and speculation. Northrop respectfully submits that it should not be allowed to do so.

**D. Equitable Considerations Also Weigh In Favor Of Denying Zoltek's Motion**

Zoltek does not come to this Court as a party that has been denied the opportunity to conduct necessary discovery. To the contrary, Zoltek has been given ample opportunity to conduct discovery, but has instead chosen to do nothing.

Zoltek could easily have avoided, or at least substantially mitigated, issues caused by security had its counsel simply applied for a security clearance, which Northrop's counsel advised over five years ago. Zoltek simply decided not to do so. Zoltek has also failed to take advantage of the discovery opportunities provided by the Court. The Order Zoltek seeks to modify was issued on April 13, 2004. Zoltek therefore had ample time to propound interrogatories to the deponents in a good faith effort to obtain the information it seeks. Instead, Zoltek let another year go by without taking any action in this regard, and now seeks to modify the Court's order without ever having attempted to pursue the discovery already authorized. In this connection Northrop notes that there is still ample time for Zoltek to take the depositions of Messrs. Rogers and Cappocia by written interrogatory in light of the recent extension of the close of fact discovery to January 31, 2006.

Zoltek argues that it is prejudiced by the Court's Order, which it suggests unfairly limits its ability to conduct necessary discovery. The truth is, however, that any prejudice suffered by Zoltek is a product of its own lack of diligence, as evidenced by its failure to apply for a security clearance, and its failure to attempt to make use of the discovery opportunity provided by the Court. As a matter of fairness, Zoltek should not

be rewarded for these failures by modification of the Court's Order in a manner which places Northrop's witnesses at risk of violating their security obligations.

**IV.**

**CONCLUSION**

For all of the foregoing reasons, Northrop respectfully requests that Zoltek's Motion to Modify the Court's April 13, 2004 Order be denied.

Dated: August 22, 2005

Respectfully Submitted,

*s/ JOSEPH F. COYNE, JR.* .
Joseph F. Coyne, Jr.
Sheppard, Mullin, Richter & Hampton LLP
333 S. Hope Street, 48th Floor
Los Angeles, California 90071
Tel: (213) 620-1780
Fax: (213) 620-1398

Attorneys for Non-Party,
NORTHROP GRUMMAN CORPORATION