# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 96-166C |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Chief Judge Edward J. Damich |
| Defendant. | ) | |

DECLARATION OF JOSEPH F. COYNE, JR. IN SUPPORT OF NORTHROP GRUMMAN CORPORATION'S OPPOSITION TO ZOLTEK CORPORATION'S MOTION TO COMPEL DISCOVERY

1. I am an attorney admitted to practice before the Court of Federal Claims. I am a partner at the law firm of Sheppard, Mullin, Richter & Hampton LLP, counsel for Northrop Grumman Corporation ("Northrop"). I have personal knowledge of the facts set forth herein and, if called as a witness, would testify competently thereto.

2. Northrop is a engaged as the prime contractor for the construction of the B-2 Bomber, a highly classified Government program. As an attorney for

EXHIBIT 1

Northrop, I have top secret clearance from the Government and have been cleared to work on the B-2 Bomber Program for approximately thirteen years. Although Northrop is the prime contractor for the B-2, Northrop does not manufacture sheets/mats/coatings used on the B-2. Northrop may not release information pertaining to classified subject matter to those who do not have appropriate security clearance from the Government. Likewise, B-2 Program documentation is classified and its dissemination limited to those with a need to know and the appropriate security clearance.

3. Gary L. Hausken, counsel for the Department of Justice, has informed me that Zoltek and its attorneys do not have the security clearance necessary to receive information relating to the B-2 Program. Dean A. Monco, counsel for plaintiff Zoltek Corporation ("Zoltek"), has confirmed this during discussions I have had with Mr. Monco concerning the subpoenas which are the subject of Zoltek's Motion to Compel Discovery directed to Northrop (the "Subpoenas").

4. Both Northrop and the Government have warned Zoltek that discovery directed to Northrop concerning the B-2 Program implicates serious security concerns. As early as April of 1999, I wrote to Mr. Monco in connection with a former subpoena *duces tecum* relating to the B-2 Program, cautioning that the subpoena raised security concerns, in addition to being overly broad and unduly

burdensome. (Exh. 2.) Shortly thereafter, I caused a Motion to Quash to be filed on behalf of Northrop in the United States District Court for the Central District of California (from which the subpoena had been improperly issued) which set forth in detail the classified nature of the B-2 Program and the serious security concerns raised by discovery directed to Northrop relating to the B-2 Program. (Exh. 3.) The subpoena was withdrawn before the motion could be heard.

5. With regard to the Subpoenas at issue, Zoltek was told by the Government in early October 2001 that a Government Security Officer must be present during the deposition of Northrop personnel. (Exh. 4.) In addition, I cautioned counsel for Zoltek during discussions which took place in the summer and fall of 2001 that discovery relating to the B-2 Program raised security concerns and encouraged counsel to obtain the necessary security clearance.

6. During preliminary discussions before the Subpoenas were even issued, I informed Mr. Monco that the witnesses were available for deposition on November 12, 2001 in response to a request for availability dates. (Exh. 5.) Shortly thereafter, Mr. Monco responded that the week of November 12, 2001 was no longer available and indicated that the depositions would be noticed for the week of November 26, 2001, but that "Northrop should consider those dates <u>tentative</u>." (Exh. 6.) (Emphasis in original.)

7. Mr. Monco mailed the Subpoenas to my office on October 31, 2001. (Exh. 1.) I never stated that I was authorized to accept service of the Subpoenas, and the Subpoenas have in fact never been served to this date. I did indicate during discussions with Mr. Monco in the fall of 2001 subsequent to receipt of the Subpoenas that I believed the Subpoenas to be over broad and required narrowing, in addition to raising security concerns. Although the Subpoenas purported to notice the depositions for the last week of November, 2001, the cover letter under which they were provided reiterated that the schedule should be considered "tentative." (Id.)

8. On November 1, 2001, Mr. Monco informed me that it would be necessary to postpone the depositions due to a scheduling conflict with another case on which Mr. Monco was lead counsel, and requested that availability dates in the December, 2001 and January, 2002 time frame be provided. (Exh. 7.) Mr. Monco then indicated that due to scheduling conflicts the depositions could not go forward in December, 2001 and requested that the they take place in January, 2002. (Exh. 8.)

9. I am lead counsel in General Motors Corp. v. Northrop Corp., Marion County (Indiana) Superior Court Case No. 49D05-9902-CP-154, which was in trial from approximately January 22, 2002 through March 13, 2002. It was therefore necessary and unavoidable that I request the depositions take place sometime in the April-May, 2002 time frame.

10. By letter dated April 17, 2002, I confirmed the availability of George Rodgers and Michael Capoccia to be deposed on May 9 and 10, 2002 and emphasized the need to narrow the scope of the 30(b)(6) subpoena and the document requests and inspection demands attached to each subpoena. (Exh. 9.) On April 19, 2002 I wrote to Mr. Monco again emphasizing the need to narrow the scope of Zoltek's 30(b)(6) subpoena and the document requests and inspection demands. (Exh. 10.)

11. On April 26, 2002, I wrote to Mr. Monco again confirming the availability of George Rodgers and Michael Capoccia to be deposed on May 9 and 10 and confirming that responsive documents within their working files, if any, would be produced. No restriction was placed upon their testimony by Northrop; Mr. Monco was merely advised, as he had been numerous times in the past, that security may be a factor. (Exh. 11.) Northrop only declined to produce the classified documents and Government property called for by the Subpoenas, and 30(b)(6) witnesses due to the classified nature of the subject matters listed for deposition, the over breadth of the 30(b)(6) subpoena, and given that much of the information sought therein is either irrelevant and/or cumulative of prior discovery facilitated by Northrop. I offered to meet and confer further with the Government present if Zoltek cared to do so. (Id.)

12. Shortly thereafter, Mr. Monco called off the depositions of George Rodgers and Michael Capoccia which Zoltek now seeks to compel. (Exh. 12.) I, Mr. Monco and Mr. Hausken had a conference call on June 5, 2002 to discuss Zoltek's concerns. As a result of that call, Mr. Monco submitted a series of nineteen questions to Mr. Hausken, who in turn provided the questions to Air Force Security for review (Mr. Monco refused to provide the questions to Northrop for review). (Exh. 13.)

13. Provided as Exhibits 1 through 24 in the accompanying Appendix are true and correct copies of the following documents:

- Exhibit 1: October 31, 2001 letter from Dean A. Monco to Joseph F. Coyne, Jr. with Subpoenas attached;
- Exhibit 2: April 14, 1999 letter from Joseph F. Coyne, Jr. to Dean A. Monco;
- Exhibit 3: Northrop Grumman Corporation's Motion to Quash Subpoena of Zoltek Corporation filed May 10, 1999;
- Exhibit 4: October 5, 2001 letter from Dean A. Monco to Joseph F. Coyne, Jr.;
- Exhibit 5: October 22, 2001 letter from Joseph F. Coyne, Jr. to Dean A. Monco;

- Exhibit 6: October 25, 2001 letter from Dean A. Monco to Joseph F. Coyne, Jr.;
- Exhibit 7: November 1, 2001 letter from Dean A. Monco to Joseph F. Coyne, Jr.;
- Exhibit 8: November 9, 2001 letter from Dean A. Monco to Joseph F. Coyne, Jr.;
- Exhibit 9: April 17, 2002 letter from Joseph F. Coyne, Jr. to Dean A. Monco;
- Exhibit 10: April 19, 2002 letter from Joseph F. Coyne, Jr. to Dean A. Monco;
- Exhibit 11: April 26, 2002 letter from Joseph F. Coyne, Jr. to Dean A. Monco;
- Exhibit 12: May 1, 2002 letter from Dean A. Monco to Joseph F. Coyne, Jr.;
- Exhibit 13: June 12, 2002 letter from Dean A. Monco to Gary L. Hausken;
- Exhibit 14: July 10, 2002 letter from Gary L. Hausken to Dean A. Monco;
- Exhibit 15: 18 U.S.C. § 793;
- Exhibit 16: 18 U.S.C. § 794;
- Exhibit 17: 18 U.S.C. § 798;

- Exhibit 18: 18 U.S.C. § 641;
- Exhibit 19: Defendant's Responses to Zoltek's Third Set of Interrogatories dated April 30, 1999;
- Exhibit 20: Stipulated Protective Order dated December 3, 1996;
- Exhibit 21: Declaration of Michael A. Urig dated September 11, 1998;
- Exhibit 22: Amended Response on Behalf of the Department of the Air Force to Plaintiff's First Set of Interrogatories to Defendant U.S.A. dated September 11, 1998;
- Exhibit 23: March 16, 2001 Order Granting Plaintiff's Second Motion to Compel; and,
- Exhibit 24: Defendants Response To The Court's Order of March 16, 2001 dated May 14, 2001.

I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 4th day of September, 2002

JOSEPH F. COYNE, JR.