# United States Court of Appeals for the Federal Circuit

04-1349

CRATER CORPORATION,

Plaintiff-Appellant,

v.

LUCENT TECHNOLOGIES, INC.
and AT&T COMPANY,

Defendants-Appellees,

and

UNITED STATES,

Defendant-Appellee.

Robert Schultz, Schultz & Little, L.L.P., of Chesterfield, Missouri, argued for plaintiff-appellant.

Alisa B. Klein, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With her on the brief were Peter D. Keisler, Assistant Attorney General, James G. Martin, United States Attorney, of St. Louis, Missouri, and Mark B. Stern, Attorney, Appellate Staff, of Washington, DC.

Louis F. Bonacorsi, Bryan Cave, of St. Louis, Missouri, argued for defendants-appellees AT&T Company, et al. With him on the brief was K. Lee Marshall.

Appealed from: United States District Court for the Eastern District of Missouri

Judge E. Richard Webber

# United States Court of Appeals for the Federal Circuit

04-1349

CRATER CORPORATION,

Plaintiff-Appellant,

v.

LUCENT TECHNOLOGIES, INC.
and AT&T COMPANY,

Defendants-Appellees,

and

UNITED STATES,

Defendant-Appellee.

---

DECIDED: September 7, 2005

---

Before NEWMAN, SCHALL, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Opinion concurring in part, dissenting in part filed by Circuit Judge NEWMAN.

SCHALL, Circuit Judge.

Crater Corporation ("Crater") sued Lucent Technologies, Inc. and AT&T Company (collectively, "Lucent") in the United States District Court for the Eastern District of Missouri, alleging that Lucent infringed Crater's U.S. Patent No. 5,286,129 (the "'129 patent"). The '129 patent is directed to an underwater coupling device (the

"Crater coupler"). Crater also asserted state law claims against Lucent for misappropriation of trade secrets and breach of contract.

In an earlier decision, we affirmed the district court's dismissal of Crater's patent infringement claim. See Crater Corp. v. Lucent Techs., Inc., No. 4:98CV00913 (E.D. Mo. Aug. 25, 1999) (order dismissing Crater's claims) ("Crater I"); Crater Corp. v. Lucent Techs., Inc., 255 F.3d 1361 (Fed. Cir. 2001) (affirming the dismissal of Crater's patent infringement claim) ("Crater II"). However, we vacated the court's dismissal of Crater's state law claims and remanded the case for further consideration of those claims. Crater II, 255 F.3d at 1371. On remand, the district court determined that the government's proper assertion of the Military and State Secrets privilege (the "state secrets privilege") made it impossible for Crater to engage in discovery or to make out a prima facie case of misappropriation of trade secrets or breach of contract. Crater Corp. v. Lucent Techs., Inc., No. 4:98CV00913 (E.D. Mo. Feb. 19, 2004) ("Crater III"). At the same time, the court held that the government's assertion of the privilege made it impossible for Lucent to defend against Crater's claims. Id., slip op. at 4-7. The court therefore dismissed Crater's remaining claims. Crater now appeals the district court's decision.

On appeal, Crater makes essentially two arguments. The first is that the district court erred in allowing the government to assert the state secrets privilege. The second is that, assuming the privilege was properly asserted, the court nonetheless misapplied the privilege in its discovery ruling and in its decision to dismiss the case. As far as the first issue is concerned, we see no error in the court's decision sustaining the government's assertion of the state secrets privilege. However, for the reasons set forth

below, we conclude that the district court did err in dismissing Crater's suit. We therefore reverse the court's decision and remand the case for further proceedings consistent with this opinion.

BACKGROUND

I.

The technology involved in this dispute relates to underwater connectors for fiber optics. The Crater coupler can be incorporated into an underwater fiber optic "wetmate." Crater describes a wetmate as essentially a device which connects and disconnects fiber optics beneath the sea.

In its complaint, Crater alleged the following facts, which, for purposes of this appeal, we accept as true: Lucent employees contacted the Crater inventors and asked them to provide technical data, drawings, and other information relating to the Crater coupler. The information and drawings are Crater's confidential trade secrets. Lucent expressly agreed not to reveal the information to third parties. It further agreed that Lucent would only use Crater's confidential information for further research and that it would not produce the Crater coupler until a license agreement was finalized. Lucent also agreed to produce and to provide Crater with copies of computer-aided design ("CAD") drawings and solid models of Crater technology. Lucent violated its agreement with Crater by producing an infringing coupler, by disseminating Crater's confidential information and trade secrets to third parties, and by failing to provide Crater with the requested CAD drawings and solid models.

II.

Crater filed suit against Lucent in the Eastern District of Missouri in May of 1998. Crater's first amended complaint alleged patent infringement and asserted state law claims of misappropriation of trade secrets and breach of contract. On March 11, 1999, the government moved to intervene in the case in order to assert the state secrets privilege. Specifically, the government sought to prohibit Crater "from conducting any discovery or serving any subpoena for information relating to the manufacture or use of [Crater's] coupling device, or any coupling device, by or on behalf of the United States." The government urged that disclosure of such information would gravely damage national security.

In support of its motion, the government submitted two declarations (one classified, one public) from Richard J. Danzig, then-Secretary of the Navy. Mr. Danzig's public declaration explained:

> 2. My statements in this Declaration are based on my personal knowledge, on information provided to me in my official capacity, and on my evaluation of that information.
>
> * * *
>
> 6. [P]laintiff's discovery in this case could be expected to cause extremely grave damage to national security. Requiring defendants and the private subpoena recipients to respond to plaintiff's discovery would, directly or indirectly, provide adversaries of the United States Government with information concerning the operations and programs described in my classified declaration. Those operations and programs are currently ongoing. It is therefore my opinion that disclosure of information concerning them would permit potential adversaries to adopt specific measures to defeat or otherwise impair the effectiveness of those operations and programs.
>
> * * *

> 7. Based on my personal consideration of the matter, requiring responses to plaintiff's discovery . . . reasonably could be expected to cause extremely grave damage to the vital national security interests of the United States. Accordingly, I formally invoke the military and state secrets privilege . . . .

Mr. Danzig also submitted a classified declaration to the district court for inspection in camera. On March 16, 1999, the district court granted the government's motion to intervene. Subsequently, on March 24, 1999, after reviewing Secretary Danzig's classified declaration, the court granted the government's request for a protective order. The court stated:

> Having reviewed the documents in the possession of the Government in camera, the Court concludes that the United States is entitled to assert the state secrets privilege in this case. The Court finds that exposure of the information sought by plaintiff's discovery requests would cause extremely grave damage to national security.

Accordingly, the court ordered that Crater was "prohibited from conducting any discovery or serving any subpoena for information relating to the manufacture or use of plaintiff's coupling device, or any coupling device, by or on behalf of the United States."

Subsequently, Lucent moved to dismiss Crater's suit, citing 28 U.S.C. § 1498(a) (2000).[1] Lucent argued that any potentially infringing use of Crater's device was

---

[1] That statute provides, in pertinent part:

> Whenever an invention described in and covered by a patent . . . is used or manufactured by or for the United States without license of the owner thereof . . . the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
>
> * * *
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent . . .

exclusively "for the United States," and that Crater's proper remedy was to sue the government in the United States Court of Federal Claims. Thus, Lucent argued that the district court lacked jurisdiction over Crater's patent infringement claim. In addition, Lucent argued that without federal question jurisdiction, the district court did not have jurisdiction over Crater's state law claims because the parties lacked diversity.

Ruling on Lucent's motion, the district court determined that it lacked jurisdiction over all of Crater's claims. See Crater I. On appeal, we affirmed the dismissal of Crater's patent infringement claims, although for a different reason. See Crater II, 255 F.3d at 1363. We held that 28 U.S.C. § 1498(a) provides a private party performing contract work for the government with an affirmative defense against patent infringement. As such, "dismissal of a lawsuit against a private party pursuant to § 1498(a) is a dismissal because of the successful assertion of an affirmative defense rather than a dismissal because of the district court's lack of subject matter jurisdiction over the patent infringement claim." Id. at 1364. We held that dismissal of Crater's patent infringement claim on summary judgment was proper because Lucent had successfully asserted section 1498(a) as an affirmative defense. Id. at 1369.

However, because the district court had original jurisdiction over Crater's patent infringement claim, the court had supplemental jurisdiction to adjudicate Crater's state law claims of misappropriation of trade secrets and breach of contract. We therefore vacated the dismissal of those claims and remanded the case for the district court to

(Cont'd. . . .)

> by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

consider, in its sound discretion, whether to exercise supplemental jurisdiction over those claims. Id. at 1370. Thus, our decision in Crater II did not reach the merits of Crater's state law claims, nor did it reach the issue of whether the government had properly invoked the state secrets privilege. See id.

III.

On remand, the district court chose to exercise supplemental jurisdiction. See Crater III, slip op. at 3. In due course, Crater moved for the court to dissolve the protective order entered on March 24, 1999. In its motion, Crater contended that the government had consented to disclosure of some of the information subject to the order. Id. Specifically, Crater argued that Lucent employees had testified in depositions that (i) the Crater coupler and the wetmate of which it was a part did not constitute a classified government secret; and (ii) the coupler/wetmate had been shown at internal company meetings to individuals without security clearances. Lucent responded that, to its knowledge, none of the incidents to which Crater referred involved the disclosure of information subject to the state secrets privilege.

At a November 2002 hearing, the district court ordered Crater to submit discovery requests to Lucent and the government. After reviewing the approximately 26,000 documents responsive to the requests, the government took the position that it could not satisfy any of Crater's discovery requests without jeopardizing national security. At another hearing in May of 2003, the district court agreed to conduct an in camera inspection of the 26,000 documents. Crater III, slip op. at 4. When the court completed its inspection, it ordered the government to disclose some of the documents to Crater. The government resisted, arguing that releasing even a small portion of the

documents would harm national security. Id. Following a hearing for the government to show cause why it should not be required to turn over the documents, the court reviewed the classified declarations of then Acting Secretary of the Navy Johnson and another government official.

Following its review of the classified material, the district court rendered its decision dismissing Crater's complaint. See Crater III. The court reasoned that, although Crater would not have to prove the particular use of its trade secrets in order to prevail on its misappropriation of trade secrets claim, it would have to show that Lucent somehow incorporated its design information in a classified government device. The court also determined that "all of Crater's breach claims except one require Crater to prove what the defendants did for the government." Id., slip op. at 6. With regard to the remaining claim—Crater's claim that defendants breached a promise to give Crater CAD drawings and solid models—that claim "accuses the defendants of failing to provide drawings and models of a device that the government has asserted is a state secret." Id. The court also noted that, in light of the government's proper invocation of the state secrets privilege, Lucent would not be able to adequately defend itself because it would not be able to disclose what it did or did not do for the government. Id., slip op. at 6-7. Crater timely appealed the district court's final decision. Although Crater's patent infringement claim has been dismissed with prejudice, we have jurisdiction over the pendant state law claims because the district court's original jurisdiction was based in part on 28 U.S.C. § 1338(a). See 28 U.S.C. § 1295(a)(1); Chamberlain Group, Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1190 (Fed. Cir. 2004).

DISCUSSION

In challenging the district court's dismissal of its complaint, Crater raises two issues, which we address in turn.

I.

Crater argues first that the government did not properly invoke the state secrets privilege. "The Military and State Secrets privilege allows the United States to block discovery in a lawsuit of any information that, if disclosed, would adversely affect national security." Crater II, 323 F.3d at 1021. Indeed, "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." United States v. Reynolds, 345 U.S. 1, 11 (1953); see also McDonnell Douglas Corp. v. United States, 323 F.3d 1006 (Fed. Cir. 2003); Ellsberg v. Mitchell, 709 F.2d 51, 57 (D.C. Cir. 1983). However, because of the "broad sweep" of the privilege, Ellsberg, 709 F.2d at 57, the Supreme Court has advised that the privilege "is not to be lightly invoked," Reynolds, 345 U.S. at 7. The privilege does not protect from discovery material that is not strictly necessary to prevent potential harm to national security. Ellsberg, 709 F.2d at 57.

For the privilege to be properly asserted, the head of the pertinent government department must formally invoke the privilege on behalf of the government. Then, after reviewing the declarations of government officials and the circumstances surrounding invocation of the privilege, the court must determine whether assertion of the privilege is appropriate. McDonnell Douglas, 323 F.3d at 1022.

Crater contends that "[t]he government failed to meet the threshold requirements for asserting the privilege because the government official charged with asserting the

privilege never reviewed the materials sought to be protected or made any attempt to disentangle the secret from the non-secret." (Br. of Appellant at 28.) The government responds that, in order to properly invoke the privilege, the department head is not required to have personal knowledge of the contents of every document at issue. The government urges that the privilege was properly invoked in this case.[2]

We agree with the government that Secretary Danzig and Acting Secretary Johnson were not required to personally review each and every one of the 26,000 documents at issue in order for the government to properly invoke the state secrets privilege. Although Reynolds requires that there be "actual personal consideration" by the head of the pertinent government department, 345 U.S. at 8, we think it sufficient that the Secretary of the Navy and later the Acting Secretary were informed of the nature and scope of the documents sought in discovery, and that each then made the ultimate policy determination, based on his personal knowledge, that disclosure of the material sought would jeopardize a legitimate state secret and would pose a threat to national security. See Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 400 (D.C. Cir. 1984) (holding that the state secrets privilege was properly invoked when the department head "stated that he had reviewed a representative sample of the documents as well as affidavits of staff members who had received all of the documents").

We have reviewed both the public and classified declarations submitted to the district court in connection with the government's invocation of the state secrets

[2] Lucent does not take a position on whether the government properly invoked the state secrets privilege. Lucent argues, however, that Crater's claims must be dismissed unless all of the evidence regarding Lucent's work for the United States is available, so that the parties may fully and fairly present their respective cases.

privilege. Having done so, we are satisfied that the government claims a legitimate state secret. We therefore agree with the district court that in this case "'there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.'" McDonnell Douglas, 323 F.3d at 1021 (quoting Reynolds, 345 U.S. at 10). Accordingly, we see no error in the district court's determination that the government has properly invoked the state secrets privilege.[3]

II.

The second issue on appeal is whether, in light of the government's proper invocation of the state secrets privilege, the district court correctly determined that none of Crater's claims could proceed without impinging upon the privilege. The district court dismissed Crater's complaint after it determined that in view of the assertion of the privilege, Crater would not be able to prove its state law claims. The court reached this determination because it concluded that the March 24th protective order prevented Crater from discovering any relevant evidence related to its state law claims. As far as Lucent was concerned, the court stated:

> [T]here is no question that if the case proceeds, the defendants will be unable to adequately defend themselves. The defendants may not disprove Crater's allegations by stating what work they did for the government, nor could they show that they did not benefit from any alleged misappropriation. In short, the defendants may not be able to disclose what they did for the government, nor will they be able to deny what they did not do for the government, with respect to Crater's coupler.

---

[3] Crater argues that the district court improperly communicated ex parte with government counsel and that, for this reason, the government's invocation of the state secrets privilege should be rejected. We rejected this argument in Crater II. See 255 F.3d at 1371 n.4.

Crater III, slip op. at 6.

Crater contends that the district court misapplied the state secrets privilege. Focusing upon the protective order, it argues that the order improperly shielded from discovery information and documents that were not secret, as well as documents that previously had been disclosed. Further, Crater urges, this error carried over to the court's dismissal of its complaint. Crater contends that much of the evidence the court determined could not be presented either was not secret in the first place or previously had been disclosed.

The government responds that although the patented Crater coupler obviously is not a state secret, the disclosure of information related to the manufacture or use, if any, of the coupler by or for the United States is a state secret. Lucent in turn argues that the assertion of the privilege hampers its ability to introduce adequate evidence to defend itself, for example, by showing what work it did do for the government.

III.

"Although harsh, the presence of a properly invoked state secrets privilege requires dismissal of [a] claim that cannot prevail without the privileged information." McDonnell Douglas, 323 F.3d at 1021. Resolution of whether any of Crater's claims can be adjudicated without privileged information turns on an analysis of the claims in light of the state secret that forms the basis for the government's assertion of the privilege. We think that, at this juncture, however, there is a fundamental obstacle to conducting that analysis. The obstacle lies, we believe, in the fact that the record as it pertains to Crater's state law claims is not adequately developed. As we see it, the problem boils down to this:

The two claims remaining in Crater's complaint after our decision in Crater II were (i) that Lucent misappropriated one or more of Crater's trade secrets; and (ii) that Lucent breached a contract that it had with Crater. Missouri law defines misappropriation of a trade secret as:

> (a) Acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of a person without express or implied consent by another person who:
>
> > a. Used improper means to acquire knowledge of the trade secret; or
> >
> > b. Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake; or
> >
> > c. At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:
> >
> > > i. Derived from or through a person who had utilized improper means to acquire it;
> > >
> > > ii. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> > >
> > > iii. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

Mo Rev. Stat. § 417.453(2). Clearly, existence of a trade secret is a prerequisite to a claim for misappropriation of trade secrets. Yet, as far as we can tell, it has not been established precisely what, if any, trade secrets exist in connection with the Crater coupler.[4] Indeed, it does not appear that Crater has even spelled out what trade

---

[4] Mo Rev. Stat. § 417.453(4) defines a "trade secret" as:

secrets it claims in connection with the coupler. In any event, if the preliminary requirement of the existence of a trade secret is not met, Lucent obviously could not be liable for misappropriation of trade secrets. It would not be necessary to reach the state secrets issue.

Turning to Crater's breach of contract claim, as far as we can tell, it has not been determined whether, under Missouri law, there was a contract between Crater and Lucent and, if there was a contract, what its terms were. Significantly, it appears that Lucent disputes the existence of a contract. (First Amended Complaint, Count 1 and Answer to First Amended Complaint ¶¶ 10-24; Lucent's Supplemental Answers and Objections to Crater's Interrogatories ¶ 12 ("Lucent states it is not aware of any 'contract' or 'agreement' in the sense of a written document formally entered into between Lucent and Crater.")) Obviously if there was no contract between Crater and Lucent, Lucent could not be liable for breach of contract. Again, it would not be necessary to reach the state secrets issue.

In short, we think that deciding the impact of the government's assertion of the state secrets privilege on Crater's state law claims without first determining what trade secrets exist and whether a contract existed between Crater and Lucent is akin to

---

(Cont'd. . . .)

> Information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique or process that:
>
> (a) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

putting the cart before the horse. If there are no alleged trade secrets and there was no contract, the issue of the state secrets privilege becomes moot. Alternatively, if there are trade secrets and/or there was a contract, an understanding of the precise nature of the trade secrets and the terms of the contract is essential to the analysis of whether Crater's misappropriation of trade secrets and breach of contract claims may proceed in the face of the assertion of the privilege. In other words, in order to adjudicate this case, there must be a determination of (i) the precise trade secrets that exist in connection with the Crater coupler; (ii) which of those trade secrets Crater alleges were misappropriated; (iii) whether a contract existed between Crater and Lucent; (iv) if a contract did exist, its terms; (v) which of the contract's terms Crater alleges were breached; and (vi) what constituted the alleged breach.

In sum, we conclude that the decision of the district court dismissing Crater's complaint must be reversed and the case remanded to the court for further proceedings. Although we agree that there is a state secret here that must be protected, we conclude that further proceedings are required because we do not believe the record in the case—as it relates to Crater's two state law claims—is sufficiently developed to enable a determination as to the effect of the government's assertion of the privilege on those claims, in terms of Crater's ability to assert the claims and Lucent's ability to defend against them. If Crater establishes that it has one or more trade secrets in connection with the Crater coupler, the district court will know precisely what the secrets are. The government can then provide an affidavit or declaration—or otherwise address—how the precise questions involved, such as whether a particular trade secret was incorporated in a government device, would impermissibly implicate the state secrets

privilege. Armed with that knowledge and with the knowledge of the state secret that must be protected, the court will be able to assess whether any misappropriation of trade secrets claim can go forward. As far as Crater's breach of contract claim is concerned, if the district court determines that a contract did exist between Crater and Lucent and what the terms of that contract were, the district court, again armed with its knowledge of the state secret that must be protected, will be able to determine which, if any, of Crater's breach of contract claims can proceed in the face of the government's assertion of the state secrets privilege. In making that determination, the court may require the government to supply particularized affidavits or declarations in order to resolve the discovery issue.

Finally, the question of whether the state secrets privilege would be implicated by the production of particular documents is not ripe for resolution, and our discussion should not be read as resolving that question. We have not reviewed any of the documents which are sought in discovery and which the district court reviewed in camera. On remand, after the district court determines the precise nature of Crater's state law claims, it will be for that court then to determine, in the first instance, which, if any, of the documents sought in discovery may be produced in the face of the government's assertion of the state secrets privilege.

CONCLUSION

We see no error in the district court's determination that the government has properly invoked the state secrets privilege and that a valid state secret exists in this case. However, for the reasons set forth above, we reverse the court's dismissal of

Crater's state law claims and remand the case to the court for further proceedings consistent with this opinion.[5]

COSTS

Each party shall bear its own costs.

REVERSED and REMANDED

[5] Contrary to the dissent's view, our opinion is not a blanket ratification of the state secrets claim. We have said that the government has properly invoked the state secrets privilege and that there is a valid state secret to be protected. We also have said, however, that further proceedings are necessary in order to determine the impact of the invocation of the privilege on discovery and on Crater's ability to assert its state law claims and Lucent's ability to defend against those claims.

# United States Court of Appeals for the Federal Circuit

04-1349

CRATER CORPORATION,

Plaintiff-Appellant,

v.

LUCENT TECHNOLOGIES, INC.
and AT&T COMPANY,

Defendants-Appellees,

and

UNITED STATES,

Defendant-Appellee.

NEWMAN, Circuit Judge, concurring in part, dissenting in part.

I agree that further proceedings are warranted, and to that extent I concur in the remand. However, this court has placed obstacles to those proceedings that may be insurmountable in view of the court's endorsement, without review, of the full scope of the claim of state secrecy. Our order that Crater must identify and establish the secret information that it provided to Lucent in connection with the Crater Coupler does not remove this information from the government's secrecy order.

The panel majority holds, without the review required by precedent, that "we see no error in the [district] court's decision sustaining the government's assertion of the state

secrets privilege," slip op. at 2, ante; that "the government has properly invoked the state secrets privilege and that a valid state secret exists in this case," id. at 16; and that "we agree that there is a state secret here that must be protected," id. at 15. None of us on this panel has inspected any of the information for which the claim is made, nonetheless ratifying the withholding of the 26,000 documents in the government's file, and ratifying the prohibitions on Lucent including disclosure of its use of Crater's information. It is far from clear that Crater can now place this information on the public record or otherwise implement this court's remand.

Thus there is a serious cloud on Crater's ability to describe the "trade secrets" that Crater provided to Lucent with the Crater Coupler, for the government has asserted that all information related to the Crater Coupler is a state secret. Indeed, if it is sensitive technology, that breadth of state secrecy may well be essential. The district court accepted the "state secrecy" of the 26,000 documents from the government's files, while remarking that they included such documents as pleadings that are in the public record. This court has seen only one of the 26,000 documents, which contains, as the majority opinion reports, only the general statement that (unidentified) documents were reviewed (by somebody unnamed) and claiming the state secret privilege without limitation. There was no compliance with the requirement that the official invoking the privilege "must set forth, with enough particularity for the court to make an informed decision, the nature of the material withheld and of the threat to the national security should it be revealed." Kinoy v. Mitchell, 67 F.R.D. 1, 8 (S.D.N.Y. 1975). If the claim is to be preserved in the breadth with which it is asserted, our appellate responsibility requires assuring ourselves of the scope and limits of the claim. Precedent has well clarified the requirements:

> [T]he privilege may not be used to shield any material not strictly necessary to prevent injury to national security; and whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter.

Ellsberg v. Mitchell, 709 F.2d 51, 57 (D.C. Cir. 1983). In particular, and critical to this case, a valid state secrets claim need not deprive Crater of necessary relief.

I agree that Crater should have the opportunity to establish that it had trade secrets and that they were disclosed by Lucent to the government without authorization. However, the claim of military/state secrecy appears to extend to the information that Crater provided to Lucent in connection with this project, for if that information was indeed used by Lucent, as Crater asserts and Lucent does not deny, it is covered by the secrecy order. Thus we appear to have devised a remedy impossible of performance.

The remedy the panel has fashioned was not suggested by any party. The district court, having reviewed the government's documents, observed that Crater can not make its case, and Lucent can not make a defense, without violation of the secrecy order. Although the majority opinion states that "the question of whether the state secrets privilege would be implicated by the production of particular documents is not ripe for resolution and our discussion should not be read as resolving that question," slip op. at 11, this statement is contradicted by the majority's blanket ratification of the state secret claim, adding confusion to risk.

This case raises important principles of law and procedure, for military and state secrets indeed warrant protection from the nation's enemies. At the same time, persons who serve the government must have a reasonable way of resolving disputes. It is neither in the nation's interest, nor can it be the nation's intention, to bar judicial relief when

disputes arise among persons who serve sensitive government business. The merits of the dispute between Crater and Lucent are not before us; the only question is whether the dispute can be adjudicated at all.

The judicial obligation is to enable resolution, with safeguards appropriate to the subject matter. Although there may be areas of such sensitivity that no judicial exposure can be countenanced -- such as, perhaps, the formation of the Manhattan Project -- there is no suggestion that the sensitive information concerning the Crater Coupler can not be protected by well-established judicial procedures for preserving the security of sensitive information. Persons who do business with the government should not readily be barred from access to judicial remedy, lest the government lose access to the talents of the private sector, and government reputation for fairness be diminished.

This case does not raise the constitutional debate about public trials; this is a commercial dispute, of interest only to the parties. It seems clear that the court's requested remand cannot be implemented without risk of violating the secrecy order, with possible penalty. This is the third judicial cycle of this simple dispute. We should remand this case for in camera proceedings that would protect the information from public disclosure, and allow this dispute to come to closure. Trials in camera of issues subject to secrecy restraints are not new, and such trial would be the appropriate procedure in this case.