# EXHIBIT 7

D4M

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, Plaintiff, | ) | No. 96-166C |
| v. | ) | Chief Judge Loren A. Smith |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S RESPONSE TO
ZOLTEK'S FIRST SET OF INTERROGATORIES

In accordance with paragraph 7 of Appendix G of the Rules of the United States Court of Federal Claims ("RCFC") and RCFC 33, defendant's responses to the interrogatories in Zoltek's First Set of Interrogatories to Defendant U.S.A. are set forth below.

Comments and General Objections

Several of the following responses refer to the "Response on Behalf of the Department of the Air Force to Plaintiff's First Set of Interrogatories to Defendant U.S.A." and the "Answers on Behalf of the Department of the Navy to Plaintiff's First Set of Interrogatories." The answers supplied by the Air Force and the Navy are being served concurrently with this paper, and are hereby incorporated herein by reference.

The identification of a document in response to an interrogatory is not an admission that the document is admissible at a hearing or trial of this action, e.g., as coming within an exception to the rule against hearsay.

The identification of a document in response to an interrogatory is not an admission that the document is free of information that is privileged or immune from discovery. Thus, by identifying a document or offering to produce a document, defendant does not waive its right to withhold any portion of the document that is privileged or immune from discovery.

The following general objections apply to the instructions and definitions preceding the interrogatories as well as the individual interrogatories in Plaintiff's First Set of Interrogatories to Defendant:

General Objection A

Defendant objects to any discovery request that calls for information or documents concerning events occurring outside the time limitations of the applicable statutes of limitations. Any such information or document is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

General Objection B

Defendant objects to any discovery request that calls for information or documents concerning the exploratory efforts of defendant's counsel in investigating plaintiff's claim and preparing this case for trial. See Massachusetts v. First Nat'l Supermarkets, Inc., 112 F.R.D. 149, 153 (D. Mass. 1986); Besly-Welles Corp. v. Balax, Inc., 43 F.R.D. 368, 370-71 (E.D. Wis. 1968). Such materials would tend to reveal counsel's mental impressions, conclusions, opinions, or legal theories.

Consequently, such information is beyond the ambit of discovery. See RCFC 26(b)(2).

General Objection C

Defendant objects to any discovery request that seeks the last known residential address of any individual. The Privacy Act, 5 U.S.C. § 552(a), prohibits the disclosure of such information.

General Objection D

Defendant objects to any discovery request that seeks classified information. Such information will not be provided except pursuant to established requirements for access to and retention of classified information.

General Objection E

Defendant objects to any discovery request that requires the disclosure of any proprietary information that was provided by a contractor or a potential contractor or supplied under a pledge of secrecy or confidentiality, unless the owner of the proprietary information agrees to a suitable protective order. The Trade Secrets Act, 18 U.S.C. § 1905, prohibits the disclosure of such proprietary information.

General Objection F

Defendant objects to the instructions in paragraph B of the Definitions and Instructions as being oppressive, overly broad, and unduly burdensome to the extent they purport to expand the requirement for supplementation of responses beyond that specified in RCFC 26(e).

General Objection G

Defendant objects to the definitions in paragraphs H-J of the Definitions and Instructions as being vague and ambiguous because the phrase "generally uniform controlled electrical surface resistivity" is undefined and unclear. Without waiving any objection, defendant will respond insofar as it is capable of understanding this phrase.

General Objection H

Defendant objects to the instructions in paragraphs P-T of the Definitions and Instructions as being oppressive, overly broad, and unduly burdensome. Much of the requested information is unnecessary for a satisfactory identification or description. Moreover, much of the requested information is obtainable from a source that is more convenient, less burdensome, or less expensive. Without waiving any objection, defendant will identify persons, organizations, documents, and things adequately for purposes of discovery.

Interrogatory No. 3

(a) Explain in detail how the U.S. first became aware of carbon fiber technology, as that term is defined in Sections H and I of the Definitions and Instructions herein.

(b) When did the U.S. first become aware of the carbon fiber technology referred to in subquestion (a) of this interrogatory?

(c) For each weapon, weapon system, object, or item employing Stealth technology, identify each supplier and the dates when each supplier began supplying each weapon, weapon system, item, or object to the U.S.

(d) Identify the three most knowledgeable individuals from each supplier with whom the U.S. interacted in procuring each and every weapon, weapon system, item, or object employing Stealth technology which was purchased, used, or sold by the U.S.

(e) Identify all documents relating to each subpart of this interrogatory.

Response to Interrogatory No. 3

See the general objections. Defendant also objects to this interrogatory as calling for speculation to the extent it seeks information about individuals employed by contractors or subcontractors, as opposed to Government employees. Without waiving any objection, defendant states that Jean Mercier, Patti Tisone, and Patricia Trezza may have information responsive to this interrogatory. These individuals work for Northrop Grumman Corp., 8900 East Washington Boulevard, Pico Rivera, California

90660. In addition, see the answers supplied by the Air Force and the Navy.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

VITO J. DiPIETRO
Director

Dated: October 11, 1996

Steven M. Amundson

STEVEN M. AMUNDSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0415

Of Counsel:

THOMAS J. BYRNES
Attorney
Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that on October 11, 1996, the foregoing "Defendant's Response to Zoltek's First Set of Interrogatories" was served on plaintiff, Zoltek Corporation, by mailing a true and correct copy, first class, postage prepaid, United States mail, to the following attorney of record for plaintiff:

Dean A. Monco, Esq.
Wood, Phillips, Van Santen,
Clark & Mortimer
500 West Madison Street
Suite 3800
Chicago, Illinois 60661-2511

Attorneys for Plaintiff

Steven M. Amundson
STEVEN M. AMUNDSON
Telephone: (202) 307-0415

# EXHIBIT 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 96-166C |
| v. | ) | |
| | ) | Chief Judge Loren A. Smith |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO ZOLTEK'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

In accordance with paragraph 7 of Appendix G of the Rules of the United States Court of Federal Claims ("RCFC") and RCFC 34, defendant's responses to the production requests in Zoltek's First Request for Production of Documents and Things to U.S.A. are set forth below.

The Comments and General Objections in Defendant's Response to Zoltek's First Set of Interrogatories, dated October 11, 1996, are hereby incorporated herein by reference.

Request for Production No. 1

Any document or thing identified in any of the U.S.'s responses to ZOLTEK's First Set of Interrogatories, and any document or thing the identification of which is requested in ZOLTEK's First Set of Interrogatories.

Response to Request No. 1

See the general objections. Defendant also objects to this production request as calling for material that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. For instance, the Air Force mentioned two contracts related to the B2 bomber, i.e., contract F33657-81-C-0067 and contract F33657-87-C-2000, and most of the information in these contracts has no bearing on any issue that is relevant to this lawsuit. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 2

All non-classified documents from 1984-present regarding Stealth technology.

Response to Request No. 2

See the general objections. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 3

All documents from 1984-present regarding the use of carbon fibers in Stealth technology.

Response to Request No. 3

See the general objections. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 4

All documents and things from 1984-present relating to the process or method of manufacturing carbon fibers used in Stealth technology.

Response to Request No. 4

See the general objections. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 5

All documents from 1984-present relating to carbon fibers from any suppliers of any weapon, weapon system, item, or object employing Stealth technology.

Response to Request No. 5

See the general objections. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 6

Any film, video tape, or other recording of any appearance from 1984-present by any individual by or on behalf of the U.S. before any committee or subcommittee of the United States Senate or United States House of Representatives regarding any weapon, weapon system, item, or object employing Stealth technology.

Response to Request No. 6

See the general objections. Defendant also objects to this production request as calling for material that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Statements made during appearances before committees would seem to have no bearing on any issue that is relevant to this lawsuit. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 7

Any film, video tape, or other recording from 1984-present of any statements made to, by, or on behalf of the United States regarding any weapon, weapon system, item, or object employing Stealth technology.

Response to Request No. 7

See the general objections. Defendant also objects to this production request as calling for material that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Statements as specified in this production request would seem to have no bearing on any issue that is relevant to this lawsuit. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 8

All documents from 1984-present relating to the patents-in-suit.

Response to Request No. 8

See the general objections. Without waiving any objection, defendant states that it has not located any responsive documents other than the prosecution histories of the patents in suit.

Request for Production No. 9

All documents from 1984-present relating to requirements and/or specifications for each and every weapon, weapon system, item, or object employing Stealth technology.

Response to Request No. 9

See the general objections. Defendant also objects to this production request as calling for material that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. A large number of specifications or requirements are generally associated with a weapon, such as an airplane, and most of the specifications or requirements have no bearing on any issue that is relevant to this lawsuit. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 10

All documents relating to the cost to the U.S. of each and every weapon, weapon system, item, or object employing Stealth technology for the years 1984-present.

Response to Request No. 10

See the general objections. Defendant also objects to this production request as calling for material that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The patents in suit are directed to carbon fiber sheets and methods for manufacturing such sheets. Even if the entire market value rule were applicable, which defendant denies, the compensation base would not include the cost of an entire weapons system, such as the B2 bomber. Without waiving any objection, defendant states that it will produce responsive documents.

Request for Production No. 11

Any and all documents relating to the anticipated purchase, procurement, use or sale of any weapon, weapon system, item, or object employing Stealth technology from the present to the year 2006.

Response to Request No. 11

See the general objections. Defendant also objects to this production request as calling for material that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See, e.g., Devex Corp. v. General Motors Corp., 275 F. Supp. 310, 313 (D. Del. 1967) (action for patent infringement); Cinema Amusements, Inc. v. Loew's, Inc., 7 F.R.D. 318, 320-21 (D. Del. 1947). The complaint is supposedly based on events occurring before it was filed. "It is axiomatic that plaintiff must prove that an act of infringement occurred prior to the filing of the complaint." Devex, 275 F. Supp. at 313 n.8. Thus, materials related to anticipated procurement are irrelevant. Without waiving any objection, defendant states that it will produce responsive documents.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

VITO J. DiPIETRO
Director

Dated: October 11, 1996

Steven M. Amundson

STEVEN M. AMUNDSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0415

Of Counsel:

THOMAS J. BYRNES
Attorney
Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that on October 11, 1996, the foregoing "Defendant's Response to Zoltek's First Set of Requests for Production of Documents and Things" was served on plaintiff, Zoltek Corporation, by mailing a true and correct copy, first class, postage prepaid, United States mail, to the following attorney of record for plaintiff:

Dean A. Monco, Esq.
Wood, Phillips, Van Santen,
Clark & Mortimer
500 West Madison Street
Suite 3800
Chicago, Illinois 60661-2511

Attorneys for Plaintiff

Steven M. Amundson

STEVEN M. AMUNDSON
Telephone: (202) 307-0415

# EXHIBIT 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ZOLTEK CORPORATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 96-166C<br>Chief Judge Loren A. Smith |

DEFENDANT'S RESPONSE TO
ZOLTEK'S SECOND SET OF INTERROGATORIES

In accordance with paragraph 7 of Appendix G of the Rules of the United States Court of Federal Claims ("RCFC") and RCFC 33, defendant's responses to the interrogatories in Zoltek's Second Set of Interrogatories to Defendant U.S.A. are set forth below.

The Comments and General Objections in Defendant's Response to Zoltek's First Set of Interrogatories, dated October 11, 1996, are hereby incorporated herein by reference.

Interrogatory No. 11

(a) Identify each and every basis, both factual and legal, for Defendant U.S.'s statement in Paragraph 10 of its Affirmative Defense in its Answer to ZOLTEK's Complaint that ZOLTEK U.S. Patent No. Re 34,162 is invalid for failure to satisfy the conditions for patentability set forth in 35 U.S.C. § 102 and/or § 103.

(b) Identify all witnesses having factual knowledge regarding Defendant U.S.'s answer to subpart 11(a) supra.

(c) Identify all documents, specifically including prior art references, supporting every factual and legal basis in 11(a) supra.

Response to Interrogatory No. 11

See the general objections. Defendant also objects to this interrogatory as being premature since substantial documentary and/or testimonial discovery needs to be completed before defendant may meaningfully respond to this interrogatory. For instance, defendant requested documents from plaintiff on July 5, 1996, and plaintiff indicated that it would provide responsive documents "upon entry of an appropriate Protective Order by the Court." Although the Stipulated Protective Order was entered on December 3, 1996, plaintiff has not produced any documents. In addition, defendant recently issued subpoenas for documents to Fortafil Fibers, Inc. and the inventor, and the subpoenaed documents should be helpful in responding to this interrogatory.

Defendant additionally objects to this interrogatory as improperly exceeding the scope of discovery. See, e.g., Wedding v. Tallant Transfer Co., 37 F.R.D. 8, 10 (N.D. Ohio 1963). Trial preparation is still at an early stage, and defendant has not yet decided who it will call as witnesses.

Furthermore, defendant objects to this interrogatory as calling for information protected by the attorney-client privilege and/or by work-product immunity. Plaintiff is asking that defendant's counsel analyze and interpret the patent claims as well as the prior art, speculate concerning the knowledge and understanding of a person having ordinary skill in the art, and then disclose the mental impressions, conclusions, opinions, and legal theories of counsel. In essence, plaintiff is requesting that defendant's counsel generate expert opinions for use by plaintiff's counsel.

Without waiving any objection, defendant states that at present it relies upon the prior art identified in Exhibit A. Defendant will supplement this response in a seasonable manner.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

VITO J. DiPIETRO
Director

Dated: April 14, 1997

Steven M. Amundson

STEVEN M. AMUNDSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0415

Of Counsel:

THOMAS J. BYRNES
Attorney
Department of Justice

EXHIBIT A

U.S. Patent No. 3,174,895 to D.W. Gibson et al., issue on March 23, 1965

U.S. Patent No. 3,265,557 to M.G. De Fries et al., issue on August 9, 1966

U.S. Patent No. 3,484,183 to A.D. Dickson et al., issue on December 16, 1969

U.S. Patent No. 3,682,595 to K. Okuda et al., issue on August 8, 1972

U.S. Patent No. 3,998,689 to T. Kitago, issue on December 21, 1976

U.S. Patent No. 4,080,413 to G.K. Layden et al., issue on March 21, 1978

U.S. Patent No. 4,162,496 to D.N. Downen et al., issue on July 24, 1979

U.S. Patent No. 4,215,161 to R.W. Seibold et al., issue on July 29, 1980

U.S. Patent No. 4,336,022 to C.E. Lynch et al., issue on June 22, 1982

U.S. Patent No. 4,364,916 to I.L. Kalnin et al., issue on December 21, 1982

U.S. Patent No. 4,490,201 to D.H. Leeds, issue on December 25, 1984

U.S. Patent No. 4,526,770 to R.T. Pepper et al., issue on July 2, 1985

U.S. Patent No. 4,619,796 to Y. Awata et al., issue on October 28, 1986

U.S. Patent No. 4,825,049 to S.F. Rickborn, issue on April 25, 1989

U.S.S.R. Patent No. 717,204

British Patent No. 1,535,440

Japanese Patent No. 125,616

"On the Carbon Fiber from the Molten Pyrolysis Products," by Sugio Otani, from Carbon, volume 3, pages 31-38 (1965)

"Zur Elektrischen Beschreibung des Karbonisierungsprozesses von Polyacrylnitrilfasern," by Ludwig Brehmer, Manfred Pinnow, and Jurgen Ludwig, from Plaste und Kautschuk, pages 309-313 (June 1980)

"Conductive Fiber Mats as EMI Shield for SMC," by James R. Quick and Zoltan Mate, from Modern Plastics, volume 59, number 5, pages 68-71 (May 1982)

Synthetic Fibers Papermaking, edited by O.A. Battista, published by John Wiley & Sons, Inc. (1964)

CERTIFICATE OF SERVICE

I hereby certify that on April 14, 1997, the foregoing "Defendant's Response to Zoltek's Second Set of Interrogatories" was served on plaintiff, Zoltek Corporation, by mailing a true and correct copy, first class, postage prepaid, United States mail, to the following attorney of record for plaintiff:

Dean A. Monco, Esq.
Wood, Phillips, Van Santen,
Clark & Mortimer
500 West Madison Street
Suite 3800
Chicago, Illinois 60661-2511

Attorneys for Plaintiff

Steven M. Amundson
STEVEN M. AMUNDSON
Telephone: (202) 307-0415

# EXHIBIT 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ZOLTEK CORPORATION, )
Plaintiff, )
v. ) No. 96-166C
THE UNITED STATES, ) Chief Judge Loren A. Smith
Defendant. )

DEFENDANT'S RESPONSE TO ZOLTEK'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

In accordance with paragraph 7 of Appendix G of the Rules of the United States Court of Federal Claims ("RCFC") and RCFC 34, defendant's response to the production request in Zoltek's Second Request for Production of Documents and Things to U.S.A. is set forth below.

The Comments and General Objections in Defendant's Response to Zoltek's First Set of Interrogatories, dated October 11, 1996, are hereby incorporated herein by reference.

Request for Production No. 12

Any and all documents and/or things identified in any of the U.S.'s responses to ZOLTEK's Second Set of Interrogatories or used to prepare responses to Zoltek's Second Set of Interrogatories, and any document or thing the identification of which is requested in ZOLTEK's Second Set of Interrogatories, served simultaneously herewith.

Response to Request No. 12

See the general objections. Defendant also objects to this production request as improperly requesting information regarding the exploratory efforts of defendant's counsel in investigating plaintiff's claim and preparing this case for trial. See Massachusetts v. First Nat'l Supermarkets, Inc., 112 F.R.D. 149, 153 (D. Mass. 1986); Besly-Welles Corp. v. Balax, Inc., 43 F.R.D. 368, 370-71 (E.D. Wis. 1968). Defendant further objects to this production request as calling for documents protected by the attorney-client privilege and/or by work-product immunity. Without waiving any objection, defendant states that it will produce responsive documents.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

VITO J. DiPIETRO
Director

Dated: April 14, 1997

Steven M. Amundson

STEVEN M. AMUNDSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0415

Of Counsel:

THOMAS J. BYRNES
Attorney
Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that on April 14, 1997, the foregoing "Defendant's Response to Zoltek's Second Set of Requests for Production of Documents and Things" was served on plaintiff, Zoltek Corporation, by mailing a true and correct copy, first class, postage prepaid, United States mail, to the following attorney of record for plaintiff:

Dean A. Monco, Esq.
Wood, Phillips, Van Santen,
Clark & Mortimer
500 West Madison Street
Suite 3800
Chicago, Illinois 60661-2511

Attorneys for Plaintiff

Steven M. Amundson
STEVEN M. AMUNDSON
Telephone: (202) 307-0415

# EXHIBIT 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ZOLTEK CORPORATION,**<br>a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 96-166 C<br><br>Chief Judge Edward J. Damich |

## ZOLTEK'S OPPOSITION TO THE UNITED STATES' REQUEST FOR ADDITIONAL EXAMINATION OF GEORGE P. BOYD

Plaintiff Zoltek Corporation ("ZOLTEK") respectfully submits this Memorandum in Opposition to the United States' ("U.S.") request under Rule 30(a)(2)(B), Rules of the Court of Federal Claims, for additional examination of George P. Boyd.

## I. FACTUAL BACKGROUND

On December 5-6, 2001, the U.S. took the deposition of George P. Boyd, the named inventor of the ZOLTEK U.S. Patent No. RE34,162 ("`162 patent"). The deposition concluded at approximately 1:30 p.m. with the U.S. stating that it had no further questions of the witnesses. On November 4, 2002, the U.S. forwarded a letter dated September 20, 2002 to ZOLTEK requesting that the deposition of Mr. Boyd be resumed for the same reasons stated in the U.S.' pending request, i.e. that it has become necessary

> ". . . as a result of information that I have discovered since the prior deposition that seems to contradict some of his previous responses. I would like to give him the opportunity to explain his responses and, if necessary, correct the record. (Ex. 1).

ZOLTEK specifically requested the U.S. to identify the "additional information" that came to light since Mr. Boyd's earlier deposition that required that his deposition be resumed in order to allow ZOLTEK to ascertain whether there was a legitimate reason to reopen Mr. Boyd's deposition. The U.S. refused. In response, ZOLTEK informed the U.S. that barring such disclosure, it would not produce Mr. Boyd for deposition noting that Rule 30(a)(2)(B) of this Court otherwise requires the U.S. to obtain permission of the Court in order to reopen the deposition of Mr. Boyd (Ex. 2).

In the same correspondence, ZOLTEK reminded the U.S. that ZOLTEK had served the U.S. with a second set of interrogatories and document requests in 1997, specifically asking the U.S. to identify all documents and information which support the U.S.' counterclaims filed in its Amended Answer to ZOLTEK's Amended Complaint (Ex. 2). Based on the limited information given by the U.S. to ZOLTEK, it appears that this "additional information" is within the scope of ZOLTEK's discovery requests and should have been produced to ZOLTEK before seeking reopening of Mr. Boyd's deposition. ZOLTEK also reminded the U.S. of its ongoing duty to supplement the interrogatories under Rule 26(e) Rules of the Court of Federal Claims. (Ex. 2) The U.S. informed ZOLTEK that it was withdrawing its deposition subpeona, and would be moving the Court for permission to resume the deposition of Mr. Boyd.

## II. THE U.S. HAS MADE NO SHOWING AS TO WHY MR. BOYD'S DEPOSITION SHOULD BE RESUMED

Under the plain language of Rule 30(a)(2)(B), absent written stipulation Boyd's deposition the U.S. must carry the burden of demonstrating why Mr. Boyd's deposition should be resumed. Furthermore, the U.S. should be ordered to disclose the information which

allegedly forms the basis of the U.S.' request to reopen the deposition before the Court rules on the pending Motion. "Trial by ambush" is not sanctioned by the Rules of this Court.

Instead, the U.S. offers vague references to a new investigation which has produced information

> . . ."that suggest[s] that Mr. Boyd's answers to some questions during the previous deposition were incomplete, inaccurate or that they he may have forgotten information. In general, the additional examination will involve information contained in two exhibits admitted during the prior deposition and the activities of Mr. Boyd in the 1982-84 time frame, i.e. the time immediately proceeding and during which he developed the process claimed in the patent-in-suit. (Request, P.1)"

This does not satisfy the rules of this Court regarding either providing a clear reason why Mr. Boyd's deposition should be resumed, or providing ZOLTEK with the information requested in its second set of interrogatories and document requests, both of which the U.S. has failed to do.

This is not the first time that the U.S. has wrongfully withheld information from ZOLTEK. On October 17, 2001, ZOLTEK took the deposition of Jozef Venner, an employee of BASF, which was a supplier of stabilized partially carbonized fibers to Northrup Grumman Corporation. During the deposition, the U.S. questioned Mr. Venner regarding documents in the U.S.' possession and within the scope of ZOLTEK's earlier discovery requests which had not been previously produced to ZOLTEK. When ZOLTEK asked the source of the documents and an explanation as to why they were not produced, the U.S. declined to identify the source of Venner Exhibit 6, 7 and 8, claiming that they were attorney-client and attorney work product subject information that was never requested (Ex. 3). At that time, ZOLTEK stated that it would raise the issue of failure to produce evidence

responsive to ZOLTEK's discovery requests with this Court at the appropriate time. This appears to be the appropriate time.

The U.S. is not permitted to reopen the deposition of Mr. Boyd under the guise of trying to clarify Mr. Boyd's testimony. Further, the government is not permitted to conceal information from ZOLTEK regarding its affirmative defenses to which Mr. Boyd's deposition obviously pertains. In its request to this Court, the U.S. states:

> Counsel for ZOLTEK (who also represents Mr. Boyd) have requested that the government first disclose the information that the Government has obtained through its investigation. The government objects to such procedure because it provides counsel with the opportunity to coach Mr. Boyd regarding its responses to Government counsel's questions. (U.S. Request, P.2).

As the U.S. correctly notes, ZOLTEK's counsel represents both ZOLTEK and Mr. Boyd. Further, a purpose of discovery is to avoid springing previously requested documents upon ZOLTEK's witness for the first time during questioning at deposition. If this additional information which came to the U.S.' attention pertains to any of the U.S.' affirmative defenses, the information should have been produced to ZOLTEK on a timely basis long prior to the U.S.' request to this Court to resume Mr. Boyd's deposition. It was not. As a consequence, the request to reopen Mr. Boyd's deposition should be denied.

The only case the U.S. cited which discusses Rule 30(a)(2)(B) is directly contrary to the position the U.S. is taking. Specifically, the First Circuit Court of Appeals in *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.* 244 F. 3rd 189 (1st Cir. 2001) affirmed the District Court ruling denying the Defendant the right to re-depose witnesses who had previously been deposed. 244 F. 3rd at 192.

The U.S. deposed Mr. Boyd more than five and one-half years after suit had been filed. ZOLTEK was fully prepared to make Mr. Boyd available at any time for deposition during

that five and one-half year period. That is more than ample time for the U.S. to prepare for Mr. Boyd's deposition. The U.S. should not be permitted to reopen Mr. Boyd's deposition based on some undisclosed "new information" that came to the U.S.' attention under unexplained circumstances. The U.S. has simply not met its burden.

**CONCLUSION**

For the above-stated reasons, ZOLTEK respectfully request that the U.S.' Petition to Reopen the Deposition of George P. Boyd be denied.

Respectfully submitted,

Dated: November 27, 2002

Dean A. Monco

Dean A. Monco, Esq.
John S. Mortimer, Esq.
WOOD, PHILLIPS, KATZ,
CLARK & MORTIMER
500 West Madison Street, Suite 3800
Chicago, Illinois 60661-2511
Tel.: (312) 876-1800

Of Counsel:

James F. Davis
HOWREY, SIMON, ARNOLD & WHITE
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2402
Tel.: (202) 783-0800

# EXHIBIT 12

Volume III
Pages 200 to 214
Exhibits (None)

IN THE UNITED STATES COURT
OF FEDERAL CLAIMS

- - - - - - - - - - - - - - -x
ZOLTEK CORPORATION, :
Missouri Corporation, :
Plaintiff, :
: No. 96-166C
vs. : Judge Edward Damich
:
THE UNITED STATES, :
Defendant. :
- - - - - - - - - - - - - - -x

CONTINUED DEPOSITION OF PHIL P. BOYD, JR.
Wednesday, October 26, 2005
1:12 p.m.
at
Holiday Inn
31 Hampshire Street
Manchester, Massachusetts

Reporter: Kathleen M. Madden

APPEARANCES:

WOOD, PHILLIPS, KATZ, CLARK & MORTIMER
By Dean A. Monco, Esq. and
John S. Mortimer, Esq.
500 W. Madison Street, Suite 3800
Chicago, IL 60661-4592
312-876-1800
On behalf of the Plaintiff

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
By Gary L. Hausken, Esq.
1100 L Street, NW
Washington, DC 20005
202-307-0342
On behalf of the Defendant



INDEX

EXAMINATION OF:
PHIL P. BOYD, JR.

DIRECT
By Mr. Hausken 203

* * * * *

EXHIBITS
NO. PAGE

(None)



PROCEEDINGS
PHIL P. BOYD, JR.,
a witness called for examination by counsel for the Plaintiff, having first been satisfactorily identified and duly resworn by the Notary Public, was examined and testified as follows:
DIRECT EXAMINATION
BY MR. HAUSKEN:
Q. Mr. Boyd, let me just ask you a couple quick questions here for the record. You are the same George Philip Boyd, Jr., who provided testimony in this case during December 5th and 6th of 2001?
A. That's correct.
Q. And you are the same George Philip Boyd, Jr., who is the named inventor on United States Patent No. 4,728,395, which I will hand you as Exhibit 1.
A. This is also correct, too.
Q. That was Exhibit 1 from your prior deposition?
A. Yes.
Q. Mr. Boyd, I want to take you back to another exhibit at your prior deposition, which I will hand you now. It's Exhibit 2. And specifically to the



entry toward the bottom of the page for CAAP Milford, Connecticut, do you see that?
A. Yes.
Q. Mr. Boyd, do you know a gentleman by the name of James Moraveck?
A. I believe he was the owner of CAAP.
Q. And that's C-A-A-P, CAAP?
A. Right.
Q. Was Mr. Moraveck the person who placed the order on February 3rd of 1982?
A. I don't recall who placed the order.
Q. Do you recall talking to Mr. Moraveck about that order at some point in time?
A. We most likely discussed what kind of fiber he was looking for.
*Q. Do you recall how he explained what kind of fiber he was looking for?
A. More than likely he would --
MR. MONCO: I would just caution the witness, he's asking for your recollection of what type of fiber may or may not have been ordered. That's the question.
A. Could you repeat the question, please.
MR. HAUSKEN: Could you read it back for





A175

us, please.
*(Question read)
A. I would say yes.
Q. And how did he explain it to you? Again, to the best of your recollection at this point.
A. I think there were probably two elements. One would be the cut length and the volume resistivity of the fiber.
Q. Do you recall at that point in time whether he knew what the volume resistivity of the fiber was, or did he explain it in some other manner -- way?
A. I can't recall. I can't recall that.
Q. Do you know how Mr. Moraveck came to seek out Stackpole for that type of fiber?
A. My best recall, it may have been word of mouth.
Q. Do you know who it would have been that suggested or gave the word of mouth that Stackpole would be a source?
A. No, I don't recall that.
Q. Are you familiar with Avco Systems Division, or were you at that time?
A. Yes, I was.



MR. HAUSKEN: A-v-c-o, Avco Systems Division.
MR. MORTIMER: Avco, A-v-c-o.
Q. You were familiar with Avco Systems Division at that time?
A. Correct.
Q. Were they in fact located in the same industrial park as Stackpole Fibers?
A. No.
Q. Were they close by?
A. They were within a half a mile.
Q. Did you have any contact with Avco Systems Division at or around the 1976 to 1982 time frame?
A. Can I back up?
Q. Certainly.
A. On the Avco Systems, there was a division that was -- I think it was called Avco Specialty Materials, I believe. That was located about a half mile away in Lowell, but they also had another division over in Wilmington, Mass.
Q. The one in Wilmington, was that the Systems Division?
A. No. The one in Wilmington was the Systems Division.



Q. Okay. And the one in Lowell was --
A. Specialty Materials.
Q. Did you have any contact with the Specialty Materials Division?
A. No.
Q. Did you have any contact with the Systems Division?
A. There was contact from time to time, but I don't know the time frame.
Q. Do you recall at any time talking to Mr. Moraveck in regard to Avco?
A. None whatsoever.
Q. Did you have any recollection -- do you have today any recollection of how Mr. Moraveck came to contact Stackpole other than just by word of mouth? Do you have any recollection of that at all?
MR. MONCO: I'm going to object and say it's been asked and answered, but you can answer it again.
A. I don't have any specific recall on how that occurred.
Q. Do you have any general recall of how it occurred?
A. I don't have a clue right now.



Q. Okay. Let me hand you another exhibit from your prior deposition, Exhibit No. 7. Do you recall how this document would have come into the possession of Stackpole?
MR. MONCO: Could you repeat the question, please.
THE WITNESS: I understand the question.
MR. MONCO: All right.
A. It's just a point of clarification. This is Avco Corporation. They call it the Systems Division which -- it's in Lowell. So it may have been part of their Systems Group over there with the Specialty Materials, but I wasn't really that familiar with them. I thought most of my work was with Wilmington. But to answer your question, I believe, in this case, we supplied some yarns, and I believe they may have been spun yarns versus continuous filament, and what they did is they did these measurements.
Q. Do you know whether that had anything to do with Mr. Moraveck?
A. I'm going to say I don't believe there was any connection.
Q. At least to your knowledge there was none,





A174

your knowledge today?
A. Even then.
Q. Even then. Okay. Let's go back to the fibers that are mentioned in Exhibit 2 for the CAAP. It says "Chop Fiber." Would that have been from a continuous filament?
A. Correct.
Q. Would that fiber have been carbonized or partially carbonized at a temperature of less than 1300 degrees?
A. Yes.
*Q. Was there a specific temperature that either you were informed of by Mr. Moraveck or that you determined on your own?
MR. MONCO: Could I have that last question read back, please.
*(Question read)
Q. For the carbonization process.
A. We never divulged the temperature regimes that we were working in. In this case, they would probably specify volume resistivity of the fiber.
Q. The client would?
A. Yes.
Q. And then you would internally develop the



temperature?
A. Correct.
Q. And you kept that as a trade secret?
MR. MONCO: Objection. That's a legal term. You can --
MR. HAUSKEN: I'll withdraw the question. I'll ask the question in another manner.
Q. You indicated that Stackpole, then, would not divulge the temperature. I would take that to mean that you would not divulge it even to the client?
A. Correct.
Q. Have you since 1982 had further contact with Mr. Moraveck or CAAP?
A. Since 1982?
Q. Yes.
A. I really can't answer that question. I mean, I don't have any specific recall on my conversations with him.
Q. Nothing since 1982 -- you don't recall having any conversations with him since 1982?
MR. MONCO: Let me just back up. I think the witness, if my notes are correct, said he was not sure if he spoke to Mr. Moraveck about this



particular order. So I object because of lack of foundation.
MR. HAUSKEN: Let's clarify that.
Q. Did you speak with Mr. Moraveck about the order, whether on February 3rd or at some other time or about that time?
MR. MONCO: You're talking about the order now on Exhibit Boyd 2?
MR. HAUSKEN: Yes.
A. I honestly can't recall whether there was any communication between he and I at that time.
Q. Do you recall ever having a conversation or communication with Mr. Moraveck?
A. We did communicate either by telephone or by a visitation to his facility.
Q. When would that have been?
A. My best recall, you would have to look at my trip reports.
Q. Would it have been sometime around the first part of 1982, first quarter of 1982?
A. I really can't recall.
Q. The fibers that were used to fill the CAAP order that's listed there on Exhibit 2, would those have been made by a continuous carbonization



process?
A. That's correct.
Q. And it would not have been made by a batch process?
A. No.
Q. I will represent to you that in your prior testimony you indicated that your knowledge of what CAAP Company did with those fibers was limited, but that you believed that they made it into a spray-on type of RAM material. Do you recall that?
A. Yes, that's correct. That was my understanding.
Q. Do you ever recall having a conversation with anybody from CAAP as to specifically how they made that material?
A. No. I think they considered that proprietary.
MR. HAUSKEN: That is all the questions I have.
(Brief recess taken)
MR. MONCO: We have no questions of this witness.
(Whereupon, the deposition was concluded at 1:33 p.m.)



 A177

ERRATA SHEET

Case Name: Zoltek Corporation vs. The United States
Witness Name: Phil P. Boyd, Jr.
Deposition Date: October 26, 2005

Page No.Line No. Change

I do hereby acknowledge I have read and examined the foregoing pages of testimony, and the same is a true, correct and complete transcription of the testimony given by me, and any changes and/or corrections, if any, appear in the attached errata sheet signed under the pains and penalties of perjury by me.

Philip P. Boyd, Jr. Date



CERTIFICATE

I, Kathleen M. Madden, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing transcript was duly sworn by me; that the testimony of said witness was taken by me in stenotype and thereafter reduced to typewritten form by me or under my direction; that the foregoing transcript is a true record of the testimony given to the best of my understanding and ability.

I FURTHER CERTIFY that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; nor financially or otherwise interested in the outcome of this action.

Kathleen M. Madden
Notary Public in and for
The Commonwealth of Massachusetts

My commission expires:
9/12/2008

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2005, a copy of the foregoing document entitled Zoltek's Motion for Sanctions Under Rule 37 (c), together with Exhibits 1-5 and 7-12 were filed electronically. Notice of this filing will be sent to the following party by operation of the Court's electronic filing system. Parties may access this filing through the Court's System. A copy was also sent by Federal Express, next day delivery, to:

Gary L. Hausken, Esq.
United States Department of Justice
Commercial Litigation Branch - Civil Division
1100 L Street, N.W.
Room 11114
Washington, D.C. 20005

/s/ Dean A. Monco
Dean A. Monco
John S. Mortimer
Counsel for Plaintiff
Zoltek Corporation
Tel: 312-876-1800
Fax: 312-876-2020