IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, | ) | |
| v. | ) | No. 96-166C |
| THE UNITED STATES, Defendant. | ) | Chief Judge Edward J. Damich |

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO ZOLTEK'S MOTION FOR SANCTIONS**

The United States requested this sur-reply in order to respond to new allegations raised for the first time in Zoltek's Reply Brief in Support of its Motion for Sanctions Under Rule 37 (as revised and resubmitted on January 31, 2006) ("Zoltek's Reply"). The court granted the Government's request on February 2, 2006. Order [Docket No. 314].

Zoltek's Reply raises two new allegations. Most significantly, Zoltek alleges that "the Government has withheld responsive documents before." Zoltek's Reply at 15. Zoltek also alleges for the first time that it has been harmed because "Zoltek may now be required to take the deposition of its own inventor, Mr. Boyd, which it did not intend to do." Zoltek Reply at 14. Both of these allegations lack merit and neither provides a basis for granting Zoltek's motion.

## I. Zoltek Has Failed to Demonstrate Any Misconduct on the Part of Government Counsel with Respect to the Alleged Earlier Episode

Zoltek states for the first time that "the Government has withheld responsive documents before." Zoltek's Reply at 15. In support of this contention, Zoltek presents 25 pages of new exhibits and almost two pages of argument. *Id.* at 15-16, Exhibits 13-16 at A179-204. The gist of Zoltek's contention is that Government counsel improperly withheld information at some time prior to October 17, 2001 and that the withholding came to light on that date. Zoltek's Reply at 15. Zoltek did not raise this contention in its opening brief, even though the allegations arose over four years earlier. Now, after the Government has responded to the motion, Zoltek raises this new allegation of misconduct for the first time.

Zoltek contention relates to three documents (collectively, the "Venner exhibits") that Government counsel presented to Joseph Venner during his deposition on October 17, 2001. *See* Zoltek's Reply at 15. The first and third were "specification sheets" for BASF's Celect® fibers. Zoltek's Reply at 15; Pl. Exs. 13, 15 and 16 at A197 & A199-A200. The second is a handout for a presentation made by BASF's marketing group. Zoltek's Reply at 15; Pl. Ex. 14. Significantly, none of the three documents discusses carbon fiber sheet products or the Government use thereof. And all three documents were produced solely by BASF for its own commercial purposes, namely attempting to sell its Celect® brand fibers.

During the deposition of Mr. Venner, Mr. Monco and Government counsel engaged in the the following colloquies:

> Mr. Monco: …. Were these [three exhibits] supplied by BASF or are they from another source?

Mr. Hausken: They are from another source.

….

[Mr. Monco:] As far as I know I have never seen Venner Exhibits 6, 7 and 8 before, and I would ask where these documents came from and when they were obtained by the government.

Mr. Hausken: That is both attorney-client and attorney work product subject information, or at least some of it is one or the other, and to the best of my knowledge, plaintiff has not requested that information, so –

Mr. Monco: I believe that our document request called for any documents in the government's possession talking about controlled electrical resistivity fibers as far back 1996, and so –

Mr. Hausken: I disagree with your interpretation of your interrogatories, requests for documents.

Pl. Ex. 16 at A198, A202-03.

**A. Zoltek's Claim is Meritless**

Although Zoltek contends that "[q]uite obviously, these documents clearly fall within Zoltek's initial document requests" (Zoltek's Reply at 16), Zoltek's statement fails to specifically identify the request or requests to which these documents are responsive. The only indication of the basis for Zoltek's claim is found in a parenthetical citation to "Ex. 8, A146-149" of its appendix. Pages A146 through A149 contain Zoltek's Requests for Production Nos. 2 through 5. For purposes of this sur-reply, the Government will treat Zoltek's reference to Requests for

Production Nos. 2-5 as limiting Zoltek's contention to those four document requests.[1] As is shown below, the Venner exhibits are not responsive to any of Requests for Production Nos. 2-5.

Zoltek's Request No. 2 seeks "[a]ll non-classified documents … regarding Stealth technology." Pl. Ex. 8 at A146. Zoltek specially defined "Stealth technology" in its requests. Def. Ex. B at 3-4; *see also* Zoltek's Mot. for Sanction Under Rule 37(c) (hereinafter Zoltek's Mot.) at 4 nn. 2 & 3.[2] And "regard" is defined as "[t]o relate, concern, or refer to." *American Heritage Dictionary* 1040 (2d College ed. 1985).

To be responsive to Zoltek's Request No. 2, a document must relate, concern or refer to "Stealth technology," which is "any weapon …or object comprising in whole or in part carbon fibers [having generally uniform, controlled electrical surface resistivity] or carbon fiber products

---

[1] Zoltek's Reply is unclear as to whether Zoltek intended the parenthetical reference to be limiting or merely representative. By failing to adequate identify the bases for its assertion, Zoltek fails to provide the Government with full and fair notice of plaintiff's allegations. Such methodology should not be countenanced. For purposes of this sur-reply, the government will treat the parenthetical reference as limiting the scope of Zoltek's contention. .

[2] The definitions state:

> H. The term "carbon fibers" refers to any carbon fibers having generally uniform, controlled electrical surface resistivity.
>
> I. The term "carbon fiber products" or "carbon fiber technology" includes any product, weapon, weapons system, object, or any other item having as part of its structure or composition carbon fibers having generally uniform controlled electrical surface resistivity.
>
> J. The term "Stealth" or "Stealth technology" refers to and includes any weapon, weapon system, item, or object comprising in whole or in part carbon fibers or carbon fiber products as defined in H and I, supra, so as to render the weapon, weapon system, item, or object, in whole or in part, radar absorbing for purposes of avoiding detection.

Def. Ex. B at 3-4; *see also* Zoltek's Mot. at 4 nn. 2 & 3.

… so as to render the weapon, weapon system, item, or object, in whole or in part, radar absorbing for purposes of avoiding detection." The Venner exhibits are not responsive to this request because they do not, in any way, "relate concern, or refer to" *any uses* of the carbon fibers, whether for radar absorption or otherwise. The Venner exhibits describe only characteristics of the fiber: they do not relate, concern or refer to products into which the fibers may be incorporated. Further, the use of carbon fibers in the accused aircraft do not "render [the aircraft], in whole or in part, radar absorbing for the purposes of avoiding detection."

Similarly, the Venner exhibits are not responsive to Zoltek Request No. 3, which seeks "[a]ll documents …regard the use of carbon fibers in Stealth technology." Pl. Ex. 8 at A147. Again, since the Venner exhibits do not relate, concern or refer to the use of carbon fibers having generally uniform, controlled electrical surface resistivity in a "weapon … or object comprising in whole or in part carbon fibers or carbon fiber products … so as to render the … or object, in whole or in part, radar absorbing for purposes of avoiding detection," they cannot be responsive to Request No. 3. The Venner exhibits discuss only the fibers, not the *uses* made of the fibers. The exhibits do not relate, concern or refer to objects that are manufactured using the products, only to the fibers themselves.

Likewise, the Venner exhibits are not responsive to Zoltek's Request No. 4, which requests "[a]ll documents … relating to the process or method of *manufacturing* carbon fibers used in Stealth technology" (emphasis added). Pl. Ex. 8 at A148. The Venner exhibits are not responsive to this request for two independent reasons. First, none of the three exhibits "relates" to the "process or method of manufacturing" the fibers. Rather, the Venner exhibits are merely sales information, describing the characteristics of the fibers *after* they have been manufactured.

Second, the exhibits are not "relating to" (which is more limited than "regarding") "any weapon … or object comprising in whole or in part carbon fibers [having generally uniform, controlled electrical surface resistivity] or carbon fiber products … so as to render the … object, in whole or in part, radar absorbing for purposes of avoiding detection." Here, again, the Venner exhibits simply do not related to *uses* of the fibers, only to the fibers themselves.

Finally, the Venner exhibits are not responsive to Zoltek's Request No. 5, which seeks "[a]ll documents … relating to carbon fibers *from any supplier of any weapon, weapon system, item, or object employing Stealth Technology*" (emphasis added). Pl. Ex. 8 at A148. Zoltek has not contended that BASF makes weapons, weapons systems, items or objects employing stealth technology. Zoltek only contends that BASF's fibers make those products better, *i.e.*, radar absorbing. Zoltek's allegations in the pending motion recognizes that, at most and if proven, BASF would only have been a supplier of fiber, not a supplier weapons, weapons systems, items or objects employing stealth technology.

As shown above, the Venner exhibits are not responsive to any of Zoltek's asserted requests for production. Zoltek has failed to demonstrate that the Government engaged in sanctionable conduct or, at the very least, that the Government's conduct was substantially justified under its reading of the discovery requests.

**B. The Alleged Misconduct was Harmless**

Having waited over four years before raising the alleged misconduct, Zoltek should not be heard to complain. Its failure to promptly bring the alleged conduct to the court's attention demonstrates that Zoltek was not harmed by the alleged misconduct.

"Harm," in context of Rule 37 implies an interference with or impairment of the ability to prepare or present one's case. *See Ingalls Shipbuilding Inc. v. United States*, 857 F.2d 1448, 1452 (Fed. Cir. 1988) (citing, *inter alia*, *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977) (finding sanctions inappropriate where the charging party "never indicated how [the charged party's] delay in answering the interrogatories has prejudiced the preparation of their counter claim for trial") and *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 996 (8th Cir. 1975) (the charged parties "failed to point out what specific evidence was not obtained in their disclosure proceedings or the absence of such evidence would impair their ability to establish their case")).

Although Zoltek admits that it became aware of the alleged misconduct in October 2001, Zoltek did not raise any issue regarding the alleged misconduct until January 2006, over four years later. This alone demonstrates that Zoltek suffered no harm from the alleged failure to disclose. Further, Zoltek admits that it has used Venner Exhibit 6 in support of two motions.[3] Zoltek's Reply at 16. Thus, far from suffering harm, Zoltek has affirmatively used the information gained through disclosure of the Venner exhibits to its advantage. Having done so, without complaint, Zoltek is hardly in a position to claim now that it has been harmed.

[3] Zoltek submitted Venner Exhibit 6 to the Court as an exhibit to its "Motion to Show Cause Why Third Party Northrop Grumman Corporation Should Not Be Held in Contempt of Court" [Docket No. 272], at Exhibit 11, and to its "Motion to Modify the Court's Order of April 13, 2004" [Docket No. 283], at Exhibit 11.

## II. ZOLTEK'S ALLEGATION OF HARM WITH RESPECT TO THE MORAVECK DECLARATION LACKS MERIT

Zoltek also alleges for the first time that it has been harmed because "Zoltek may now be required to take the deposition of its own inventor, Mr. Boyd, which it did not intend to do." Zoltek Reply at 14. Zoltek's alleged harm lacks merit.

First, Zoltek is not even certain that it has been harmed. Notably, Zoltek only asserts that it "may *now* be required to take the deposition of its own inventor" (emphasis added). As this statement indicates, Zoltek does not even know whether it has been harmed, and apparently will not know until it determines whether it must "take the deposition of its own inventor."

Second, Zoltek fails to explain why it would be "required" to take the deposition of Mr. Boyd. Simply put, if Zoltek takes the deposition of Mr. Boyd, it is because the deposition will provide some benefit to Zoltek. Nor does Zoltek explain what information Mr. Boyd could possibly provide. As demonstrated by the first and second depositions of Mr. Boyd, he had very little recollection of Mr. Moraveck, CAAP Company, or CAAP's product. *See* Pl. Ex. 12 at A174-A178. And documents provided as exhibits to the declaration are CAAP Company documents, which Mr. Boyd, from his former testimony, would have been unlikely to have encountered in his brief contacts with Mr. Moraveck. *See* Pl. Ex. 12 at A177 (Mr. Boyd thought that CAAP Co. considered the process for making its product proprietary). Indeed, that is the substance of Mr. Boyd's second deposition.

Finally, any harm that Zoltek has suffered is not from the withholding of the Moraveck declaration, but from its production. If Zoltek does take the deposition of Mr. Boyd, it will be to counter the statements made by Mr. Moraveck. It is the existence of facts in the declaration, now

exposed, that would force Zoltek to take Mr. Boyd's deposition. Any harm is not from the withholding, but from the disclosure.

## III. CONCLUSION

For the reasons stated above, Zoltek has failed to demonstrate that it has been harmed by production of the Moraveck declaration. Further, Zoltek has failed to demonstrate that counsel for the United States engaged in misconduct by failing to produce the Venner exhibits in a timely manner. As demonstrated, herein, the Venner exhibits were not responsive to the documents requests that Zoltek has identified in its reply brief.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

s/ *Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

February 9, 2006

Attorneys for the United States