IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, | ) | |
| Plaintiff, | ) | No. 96-166C |
| v. | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**REPLY TO ZOLTEK'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR RECOVERY OF COSTS AND ATTORNEY'S FEES [DOCKET NO. 321]**

The United States herein offers its reply to Zoltek's Memorandum in Opposition to Defendant's Motion for Recovery of Costs and Attorneys' Fees [Docket No. 321] (hereinafter "Zoltek's Opposition"). Zoltek provides a defense of its actions that is largely self-serving [1] and unsupported, and therefore should be discounted.

The gist of Zoltek's argument is that the cancellation of flights out of O'Hare airport was an unforseeable event that warrants the Government bearing the cost of sending its counsel to Knoxville for a deposition that did not occur at the scheduled time. Yet, Zoltek's own argument belies its claim of unforeseen circumstances. As Zoltek states:

[1] Zoltek's footnote 1 and the accompanying text appear to be arguing its view of the facts and suggest that Mr. Sharpe's testimony established that infringing fibers were sold to Northrop Grumman. The latter suggestion is contrary to Mr. Sharpe's testimony, which specifically stated that the company for which he worked (Fortafil Fibers) never made a carbon fiber with controlled electrical resistivity and that he did not think that such a fiber was practical to manufacture. In any event, the Government's motion for costs did not question the propriety of the deposition. Accordingly, Zoltek's contentions as to the purpose and substance of the deposition are unwarranted by the issues being addressed and irrelevant.

> Because Zoltek's counsel was aware of previous air traffic control problems at O'Hare airport in the very recent past, departure on next day was speculative.

Zoltek's Opp. at 2. First, the acknowledgment that Zoltek's counsel was aware of air traffic control "problems" at O'Hare demonstrates that the cancellation of counsel's flight was foreseeable. According to Zoltek, departures from O'Hare only became "speculative" after counsel's flight was cancelled, despite counsel's knowledge that similar "problems" had occurred prior to March 28. Zoltek does not explain why departure on March 28 was not also "speculative," given those same "problems." It appears that Zoltek's counsel, with full knowledge of previous air traffic control problems, assumed the risk that those problems would be rectified before March 28 and did not adequately plan for continuing problems.

Nor does Zoltek's attitude toward such cancellations help it. Zoltek's Opp. at 5-6 n.2 ("when circumstances beyond the control of the attorneys occur, cancellation of scheduled proceedings is simply a fact of life in litigation"). While cancellations of proceedings may be unavoidable in some circumstances, cancelling after one would reasonably expect that opposing counsel is traveling should not be cavalierly dismissed.

Further, it is unclear as to when Zoltek's counsel first attempted to contact Government counsel. Zoltek only asserts that it was while counsel was waiting in line. Zoltek's assertion includes a substantial period of time: 12:30 p.m. (45 minutes prior to departure) to at least 2:30 p.m. (two hours from the announcement).

Zoltek's citation to *Ellis v. Bombardier Corp.*, 1997 WL 695593, 1997 U.S. Dist. LEXIS 17787 (D. Kan. 1997) does not assist it. The magistrate's opinion contains few facts: the deposition was scheduled of June 25 in Montreal, both counsel were scheduled to travel on June 24; defendant's counsel made the trip; plaintiff's counsel's flight from Wichita was cancelled;

plaintiff's counsel had another commitment on June 26 in Kansas; and plaintiff's counsel could not get to Montreal until the afternoon of June 25. Notably missing from the opinion are the reasons for the flight cancellation, the anticipated length of the deposition and nature of counsel's June 26 "commitment."[2] In any event, that decision merely stands for the proposition that the determination as to when to award costs is purely in the Court's discretion, a proposition which the Government has always acknowledged.

Finally, Zoltek complains that the Government did not raise the attorney's fees issue until after the Court granted sanctions against the Government. While that statement is true, it is also irrelevant. Since Zoltek had notified the Government of its intent to reschedule, it was clearly appropriate for the Government to wait until the deposition occurred and, therefore, its costs were certain. Given that Zoltek had cancelled the deposition on March 29, it was not unreasonable to wait until the deposition occurred, to determine whether any additional costs were incurred, before bringing the motion.

Nor was the delay temporally unreasonable: The cancellation occurred on March 28, 2006; the deposition was finally completed on May 3, 2006 and the Government's motion was filed on June 13, 2006. Thus, the Government's motion was filed 75 days after the costs were incurred and 41 days after the costs became certain. The Government did not unduly delay in bringing the motion.

[2] Knowledge of the other commitment may be particularly informative. From the bare reported facts, it appears that plaintiff's counsel would have had difficulty attending both the deposition and the appointment in Kansas even without flight delays, given the short time two-day time frame.

For the reasons stated, the Court should allow the Government an offset of $1402.06 against any sanction awarded by the Court pursuant to its Order, Docket No. 318.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

*s/Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

July 5, 2006

Attorneys for the United States