IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, | ) | No. 96-166C |
| v. | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S MOTION TO STRIKE OR, IN THE ALTERNATIVE, FOR A SUR-REPLY TO ZOLTEK'S COMBINED REPLY BRIEF IN SUPPORT OF ITS SECOND MOTION FOR AN ORDER TO SHOW CAUSE AND TO COMPEL PRODUCTION OF DOCUMENTS**

Zoltek again raises new arguments for the first time in Zoltek's Combined Reply Brief in Support of its Second Motion for an Order to Show Cause Against Northrop Grumman Corporation and to Compel Production of Non-Classified Documents, Docket No. 331 (hereinafter Zoltek Reply). The Court has previously warned Zoltek that it is not permitted to raise new arguments for the first time in its reply:

> This is the second time that Plaintiff has attempted to raise new arguments in a reply to Defendant's response to Plaintiff's motion. At the oral argument held on September 21, 2005, Plaintiff was admonished by the Court for raising new arguments in its reply to Defendant's response to Plaintiff's Motion to Modify the Court's Order of April 13, 2004. In the future, if Plaintiff presents new arguments in its reply, the Court will strike the reply from the record.

Order, Docket No. 314 (Feb. 1, 2006). Accordingly, the Court should strike Zoltek's Reply or, in the alternative grant the United States and Northrop Grumman an opportunity to respond.

As cited above, the Court has cautioned Zoltek that future papers would be striken if Zoltek raised new arguments for the first time in its reply. Order of February 1, 2006, Docket No. 314. In that instance, Zoltek argued for the first time that "the Government has withheld responsive documents before" and presented 25 pages of new exhibits and almost two pages of argument. *See* Zoltek's Reply Brief in Support of Its Motion for Sanctions Under Rule 37, Docket No. 312, at 15 and Exhibits 13-16 at A179-204.

Now, Zoltek once again uses its reply to continue its campaign of slander and unsupported allegation. Zoltek opens with a claim that a product by WLS Coatings, Inc., infringes. Zoltek's original motion seeks a finding that Northrop is in contempt of the Court's prior orders (one of which is not even addressed to Northrop). *See* Docket No. 327. Zoltek's only reference to alleged infringement by the WLS Coatings product was a passing reference to why it asked Northrop for certain documents:

> Zoltek expanded its requests to include invoices and purchase orders from Northrop to/from WLS Coatings, Inc. ("WLS") a supplier of coating material containing partially carbonized fibers from Fortafil and specified by Northrop to have specific surface resistivities.

Zoltek Mot., Docket No. 327, at 3. Now in a three-page section entitled "The Evidence Regarding WLS Coatings' Product Confirms the Government's Infringement," Zoltek for the first time addresses why it believes that it can prove infringement by the WLS Coatings product.[1] And Zoltek supports is arguments with *seven* new exhibits. Zoltek Reply at 10-13.

---

[1] The Government contends that Zoltek's analysis of infringement by the WLS Coatings ignores the limitations of the claims and is fundamentally flawed. Nonetheless, the Government will not argue the merits of the Zoltek's allegation in this motion. The allegations address that allegation by a separate motion for summary judgment.

Of greater significance, however, Zoltek then proceeds to accuse Northrop and the Government of being untruthful on at least nine occasions, and it asserts that "Zoltek, having completed the deposition of Gordon Sharpe … has now made *prima facia* showing that both the Government and Northrop have filed what appear to be materially inaccurate and or misleading statements with this Court regarding the most substantive issue in the litigation …." Zoltek Reply at 14. In alleged support of its argument, Zoltek presents an additional *four* new exhibits and cites five cases which it had not cited in its initial brief (albeit for unremarkable and largely irrelevant propositions). In short, Zoltek repeats the conduct that caused this Court to issue the February 1, 2006 warning.

That Zoltek again saves its vituperative conduct for its reply is not surprising: its comments cannot withstand scrutiny because they lack a fundamental basis in fact, as well as any logical connection to issues presently before the Court. For example, at page 13 of its Reply, Zoltek accuses the Government of "submitting multiple documents … denying the use of partially carbonized fibers in any carbon fiber sheets/mats/coating used on the B-2 Bomber." Zoltek's Reply at 13. The first document that is alleged to contain such a statement is the Government's amended interrogatory answer. Zoltek Reply, Ex. 28. Zoltek specifically cites to pages A166-67 and A169 of its Reply Appendix. A review of those pages fails to educe any statement by the Air Force where it denied (or even discussed) the use of "partially carbonized fibers." The interrogatory answers address the use of "carbon fiber technology" and "Stealth

Technology," as those two terms were specifically defined in Sections H, I, and J of the instructions that accompanied the interrogatories.[2]

Zoltek's second accusation is that Mr. Urig denied "the use of partially carbonized fibers in any carbon fiber sheets/mats/coating used on the B-2 Bomber." Zoltek's Reply at 13-14. Zoltek specifically cites to pages A188-189 of the declaration, which is Zoltek's Reply Exhibit 29. Here, again, review of the document simply does not support Zoltek's accusation. Mr. Urig talks at length about the use of carbon fibers in the B-2 aircraft, but he never addresses the term "partially carbonized fibers,"[3] the use of that term in the patent or the presence (or lack) of such

---

[2] The definitions read:

> H. The term "carbon fibers" refers to any carbon fibers having generally uniform, controlled electrical surface resistivity.
>
> I. The terms "carbon fiber products"[] or "carbon fiber technology" include any product, weapon, weapons system, object, or any other item having as part of its structure or composition carbon fibers having generally uniform controlled electrical surface resistivity.
>
> J. The term "Stealth" or "Stealth technology" refers to and includes any weapon, weapon system, item, or object comprising in whole or in part carbon fibers or carbon fiber products as defined in Sections H and I, supra, so as to render the weapon, weapon system, item or object, in whole or in part, radar absorbing for purposes of avoiding detection.

Zoltek's First Set of Interrog. to Def. U.S.A. at 2-3, *reproduced in* Def .'s Opp. to Zoltek's Mot. to Compel Production of Docs. & Order Def. to Permit Depositions Regarding Alleged Infringing Subject Matter, Docket No. 45, at 3 & Exhibit A (Dec. 1998). As can be readily seen, these definitions do not use the term "partially carbonized fibers." Thus, the Government never answered with respect to the term "partially carbonized fibers." Rather, the Government's answer only addresses "carbon fiber technology," and "Stealth Technology" as specifically defined in the interrogatory requests.

[3] In any event, "partial carbonization" is not the only limitation of the claims at issue; thus under any definition, "partial carbonization" cannot equate to infringement.

fibers in the aircraft. While, from his other statements, one would conclude that Northrop makes no effort to control the resistivity of the fibers, Mr. Urig does not address whether the temperature used in the carbonization process is within, or above, the partial carbonization range.

The remaining seven "documents" which allegedly contain denials of "the use of partially carbonized fibers in any carbon fiber sheets/mats/coating used on the B-2 Bomber" are matters of record before this Court. But, Zoltek provides no internal citations (nor copies of the documents), leaving the Court and counsel to search for the alleged denials in over 100 pages of material. Indeed, the last two documents on the list are the Government's and Northrop's oppositions to which Zoltek was replying. Zoltek's Reply at 14 (list entries numbered 8 [Docket No. 329] and 9 [Docket No. 330]). Yet, Zoltek failed to provide specific page cites for even those documents.

The undersigned counsel of record has reviewed its own brief (Docket No. 330) by electronically searching for the word "partial" (which creates "hits" for both "partial" and "partially"). That search did not find any "denial" of "the use of partially carbonized fibers in any carbon fiber sheets/mats/coating used on the B-2 Bomber." What the Government denied was that Zoltek had *any evidence* that "either BASF or Fortafil supplied '*partially carbonized fibers with specified volume resistivity*' to Northrop." Gov's Statement, Docket No. 330, at 9-10 (emphasis added). As the remainder of that brief indicates the gist of the denial is clearly directed to the *lack of specified volume resistivity*.[4]

---

[4]To be sure, the Government does not know the temperature at which the fibers are carbonized (other than through deposition testimony of the fiber manufacturers). Further, on present information and belief, the fibers procured for use in the manufacture of the B-2 were intermediate modulus fibers and were staple articles in commerce. And the Government submits that there is no evidence of any effort by Northrop or its suppliers to control the volume

In summary, Zoltek's conduct in presenting the instant reply is the very conduct that caused this Court to caution Zoltek's counsel in the Court's February 1, 2006 Order. Zoltek has not learned from its earlier missteps and should be sanctioned. The reply should be stricken. But if the Court is not so inclined, then the Government and Northrop should at least be permitted to address the scurrilous allegations leveled by Zoltek.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

s/ *Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

September 12, 2006

Attorneys for the United States

resistivity of the fiber for the purpose of controlling the surface resistivity of any sheet made from the fiber. We also submit that it has been known since at least the 1960s that resistivity of the fiber varies inversely to the modulus, and therefore the resistivity of an intermediate modulus fiber is an inherent by-product of the process of controlling the modulus.