IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, | ) | No. 96-166C |
| v. | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES, Defendant. | ) | |

**STATEMENT OF THE UNITED STATES TRANSMITTING**

**THE INVOCATION OF THE MILITARY & STATE SECRET PRIVILEGE**

**BY THE SECRETARY OF THE AIR FORCE**

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

May 15, 2007

Attorneys for the United States

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *ii*

TABLE OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *iv*

I. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. THE SECRETARY HAS SATISIFIED THE FORMAL REQUIREMENTS FOR INVOCATION OF THE MILITARY AND STATE SECRETS PRIVILEGE . . . . . . . . . . 4

B. THE SECRETARY HAS PROPERLY DETERMINED THAT THE SUBJECT MATTER COVERED BY THE INVOCATION CONSTITUTES A MILITARY SECRET . . . . . . . . . . . 5

C. EFFECT OF INVOCATION OF THE PRIVILEGE ON THIS LITIGATION . . . . . . . . . . . . . 7

II. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

CASES

*Crater Corp. v. Lucent Tech., Inc.*,
423 F.3d 1260 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 9

*El-Masri v. United States*,
479 F. 3d 296 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6, 8

*Farnsworth Cannon, Inc. v. Grimes*,
635 F.2d 268 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Halkin v. Helms*,
598 F.2d 1 (D.C. Cir.1978) (*Halkin I*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Halkin v. Helms*,
690 F.2d 977 (D.C. Cir. 1982) (*Halkin II*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Under Seal*,
945 F.2d 1285 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*Kasza v. Browner*,
133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McDonnell Douglas Corp. v. United States*,
323 F.3d 1006 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 8

*Molerio v. Federal Bureau of Investigation*,
749 F.2d 815 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Northrop Corp. v. McDonnell Douglas Corp.*,
751 F.2d 395 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Sterling v. Tenet*,
416 F.3d 338 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Tilden v. Tenet*,
140 F. Supp.2d 623 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Totten v. United States*,
92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Nixon*,
418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Reynolds*,
345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 7, 8

*Zuckerbraun v. Gen. Dynamics Corp.*,
935 F.2d 544 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STATUTES

28 U.S.C. § 1498 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## TABLE OF EXHIBITS

Exhibit Declaration of the Secretary of the Air Force . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, | ) | |
| v. | ) | No. 96-166C |
| THE UNITED STATES, Defendant. | ) | Chief Judge Edward J. Damich |

**STATEMENT OF THE UNITED STATES TRANSMITTING THE INVOCATION OF THE MILITARY & STATE SECRET PRIVILEGE BY THE SECRETARY OF THE AIR FORCE**

The United States (the "Government") provides this statement as its response to the court's request for a report on the status of the applications by plaintiff's counsel for access to classified information regarding the B-2 aircraft in order that Zoltek Corporation ("Zoltek") may pursue its claim for compensation pursuant to 28 U.S.C. § 1498. The Secretary of the Air Force has invoked the Military and State Secrets Privilege (hereinafter the state secrets privilege) and the requests of Zoltek's counsel for access have been denied.

In order to facilitate the maintenance of the court's records, this statement and the accompanying Declaration of the Secretary of the Air Force have been prepared for inclusion in the records of the court. Classified information that supports the Secretary's invocation is included in the Declaration of William A. Davidson, Administrative Assistant to the Secretary of the Air Force, which will be made available to this court and any reviewing court for *in camera* review, upon request, and in accordance with the security procedures required by law.

## I. DISCUSSION

In the attached Declaration of Secretary Wynne, the Secretary invokes the military and state secrets privilege with respect to classified information relating to the B-2 aircraft[1] in the following categories:

a. carbon fibers: information pertaining to the relationship or lack thereof between the electrical characteristics of the B-2 aircraft and the carbon fibers used in its construction; and information relating to any experiments, testing, studies or other developmental activities by Northrop Grumman Corporation relating to the material characteristics of carbon fibers or carbon fiber material used or considered for use on the B-2.

b. "stealth": information relating to the B-2 aircraft's emission and reflection of energy in any spectra; information relating to tests, studies, experiments and any other development activities that relate to [] Northrop Grumman's efforts to control emission or reflection of energy in any spectra.

Exhibit at A8. The Secretary defined "carbon fiber material" as used in his invocation as including both carbon fibers and products made from such fibers. *Id.* The Secretary further explains that "stealth," as used in the Declaration, is the result of controlling the emission and reflection of energy in all spectra. Exhibit at A8. For the reasons discussed below, the Secretary's declaration properly invokes the state secrets privilege and the information subject to the Secretary's invocation is entitled to protection.

[1] The issues with respect to the YF-22 aircraft and, if remanded, the F-22 are factually different and no requests for discovery are pending regarding those aircraft. Accordingly, the attached invocation of the military and state secrets privilege addresses only the B-2 program.

The military and state secrets privilege allows the United States to block discovery of any information that, if disclosed, would adversely affect national security. *Crater Corp. v. Lucent Tech., Inc.*, 423 F.3d 1260, 1266 (Fed. Cir. 2005); *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1021 (Fed. Cir. 2003). The existence of the privilege for military and state secrets to protect information vital to the nation's security or diplomatic relations "is well established in the law of evidence." *United States v. Reynolds*, 345 U.S. 1, 6-7 & n.11 (1953); *In re Under Seal*, 945 F.2d 1285, 1287 n.2 (4th Cir. 1991) ("The common law recognizes a privilege for military and state secrets"). Assertion of the privilege is a policy decision made at the highest level of the department involved that disclosure of the information at issue would be harmful to national security. *Halkin v. Helms*, 690 F.2d 977, 996 (D.C. Cir. 1982) ("*Halkin II*")

In *Reynolds*, 345 U.S. at 7-8, the Supreme Court defined contours of the state secrets privilege:

> The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect. The latter requirement is the only one which presents real difficulty.

(footnotes omitted). Recently, the Court of Appeals for the Fourth Circuit distilled the requirements of *Reynolds* into a tripartite analytical process:

> At the outset, the court must ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied. Second, the court must decide whether the information sought to be protected qualifies as privileged under the state secrets doctrine. Finally, if the subject information is determined to be privileged, the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim.

*El-Masri v. United States*, 479 F.3d 296, 304 (4th Cir. 2007); *McDonnell Douglas*, 323 F.3d at 1021-24 (explicitly recognizing the first and second analytical steps, and inherently applying the third step).

Once the state secrets privilege is invoked, "the role of the court is a limited one," *Tilden v. Tenet*, 140 F. Supp.2d 623, 626 (E.D. Va. 2000). "[C]ourts should accord the 'utmost deference' to executive assertions of privilege upon grounds of military or diplomatic secrets." *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978) (*Halkin I*).

### A. THE SECRETARY HAS SATISFIED THE FORMAL REQUIREMENTS FOR INVOCATION OF THE MILITARY AND STATE SECRETS PRIVILEGE

*Reynolds* requires that the privilege be invoked by (1) a formal claim of privilege, (2) lodged by the head of the department of having control over the matter (3) after personal consideration. 345 U.S. at 7-8; *McDonnell Douglas*, 323 F.3d at 1022. These constraints are designed to insure that "the privilege is not lightly invoked." *Reynolds*, 345 U.S. at 7. The requirement for "personal consideration" does not require the Secretary to personally consider whether each document at issue, individually, must be withheld. *Crater Corp.*, 423 F.3d at 1266. It is sufficient that the Secretary is informed of the nature and scope of the information sought through discovery, and then makes the "ultimate policy determination, based on his personal knowledge, that disclosure of the information sought would jeopardize a legitimate state secret and would pose a threat to national security." *Crater Corp.*, 423 F.3d at 1266 (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 400 (D.C. Cir. 1984)).

Here the unclassified Declaration of the Secretary of the Air Force (Exhibit 1), demonstrates that the Secretary fully complied with the procedural requirements of *Reynolds*.

The declaration demonstrates that Secretary Wynne, through his declaration, formally lodged the claim of privilege. Exhibit ¶¶ 1, 16, 17. The Declaration also demonstrates that Secretary Wynne is the head of the agency having control over the subject matter over which the privilege is claimed. Exhibit ¶¶ 1, 2. Finally, the Declaration demonstrates that Secretary Wynne personally considered whether to interpose state secret privilege and that, after such consideration, he personally invoked the privilege. Exhibit ¶¶ 15-17.

Accordingly, the Court should find that the formal requirements for invocation of the privilege have been met.

### B. THE SECRETARY HAS PROPERLY DETERMINED THAT THE SUBJECT MATTER COVERED BY THE INVOCATION CONSTITUTES A MILITARY SECRET

Invocation of the privilege is appropriate at a substantive level as well because it is clear "from all the circumstances of the case, there is a reasonable danger that the compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10 ; *see also Northrop Corp.*, 751 F.2d at 402.

While the privilege is not to be lightly invoked – *Reynolds*, 345 U.S. at 7, 11 – the court must take care to insure that it does not force disclosure of "the very thing the privilege is designed to protect." *Reynolds*, 345 U.S. at 5; *El-Masri*, 479 F.3d at 305. The court may satisfy its inquiry by review of the declaration of the department head (and, if necessary, any supporting declarations). *El-Masri*, 479 F.3d at 305; *see also Reynolds*, 345 U.S. at 5 (accepting affidavits from the Air Force Secretary and Judge Advocate General); *Crater Corp.*, 423 F.3d at 1265-66 (declarations from Secretary and Acting Secretary of the Navy); *Sterling v. Tenet*, 416 F.3d 338, 345 (4th Cir. 2005) (unclassified and classified declaration of the CIA Director); *McDonnell*

*Douglas*, 323 F.3d 1022 (classified and unclassified declarations of the Secretary of the Air Force).

Further, in evaluating the necessity of maintaining secrecy over the subject matter, the court must accord the "utmost deference" to those duties that are charged to the Executive Branch. *United States v. Nixon*, 418 U.S. 683, 710 (1974); *El-Masri*, 479 F.3d at 303-04, 305. Such deference is appropriate because the privilege is based in the President's Article II responsibility for regulation of the military and foreign affairs. *Nixon*, 418 U.S. at 710; *El-Masri*, 479 F.3d at 303-05. The court therefore must also take care to insure that it does not impinge upon the authority reserved to the President by the Constitution.

Deference to the Executive Branch has a practical dimension as well. The determination of the potential harm that could result from release of national security information is a matter which would require significant time and education to analyze. *El-Masri*, 479 F.3d at 305. Courts are ill-equipped to perform this task in the context of ongoing litigation. *Id.*

Here the Declaration of Secretary Wynne demonstrates that requirements of privilege have been met and the information covered by the Secretary's invocation of the state secret privilege qualifies for protection. As the Declaration demonstrates, the Secretary concluded that the carbon fiber and stealth technology information described in his declaration constitutes a valuable military secret. Exhibit ¶¶ 11, 15.

The Secretary's determination is entitled to deference. *El-Masri*, 479 F.3d at 305. But even looking beyond the deference to which it is entitled, the Secretary's Declaration clearly articulates the secret nature of the information and why the national security would be harmed by disclosure of the information. The Secretary's Declaration demonstrates that the information would reasonably be expected to harm the national security because it relates to the stealth

characteristics of the B-2. Exhibit ¶¶ 9-11. The stealth characteristics in turn provide a military advantage to the aircraft. Exhibit ¶ 10. Further, the Secretary has determined that the information sought would be useful to foreign governments, who could use such knowledge to counter the advantages provided by the aircraft's stealth technology. Exhibit ¶ 9, 11. The Secretary also describes the potential harm to be expected from disclosure: loss of military advantage, risk to U.S. military personnel and the nation's security, as well as the burden of finding new and more effective technologies. Exhibit ¶ 9.

In addition to the unclassified Declaration of Secretary Wynne, the Secretary has made available to the court the Declaration of William A. Davidson, on which the Secretary relied. The latter declaration more fully sets forth the nature of the information sought to be protected, why that information is important to this nation's security, and the harm expected from any disclosure. The Declaration of William A. Davidson further elaborates as to why the information is considered a sensitive military secret and the potential harm to the nation's security should that information be disclosed.

Finally, in this case, the Secretary also considered the alternative of granting access to the attorneys, their staff and assistants for purposes of trial in this case. He concluded that such procedure posed an unacceptable risk to the security of the secrets at issue. Exhibit ¶ 13.

Secretary Wynne properly determined that the information relating to carbon fibers and stealth addressed in his declaration constitute military secrets that are subject to the privilege.

### C. EFFECT OF INVOCATION OF THE PRIVILEGE ON THIS LITIGATION

Invocation "renders the information unavailable regardless of the other party's need in furtherance of the action." *In re Under Seal*, 945 F.2d at 1287 n.2; *see also Reynolds*, 345 U.S.

at 11 ("even the most compelling necessity cannot overcome the claim of [state secrets] privilege if the court is ultimately satisfied that military secrets are at stake"); *Northrop*, 751 F.2d at 399 (privilege "cannot be compromised by *any* showing of need on the part of the party seeking the information") (emphasis supplied).

Having demonstrated that the state secrets privilege has been invoked both properly and under appropriate circumstances, the only remaining question is the effect of the invocation upon the litigation. Ordinarily, where the information is the "very subject matter of the action" or "central" to the causes of action at issue, dismissal is appropriate on the theory that the suit is categorically barred as against public policy. *Totten v. United States*, 92 U.S. 105, 107 (1875) ("public policy forbids the maintenance of any suit …, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated"); *Reynolds,* 345 U.S. at 11 n.26 (citing *Totten*); *McDonnell Douglas*, 323 F.3d at 102 (citing *Totten*); *El-Masri*, 479 F.3d at 306 (citing *Totten*); *Sterling v. Tenet*, 416 F.3d at 346; *Kasza v. Browner*, 133 F.3d 1159, 1170 (9th Cir. 1998); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir. 1980). And dismissal is appropriate where the invocation prevents the Government from asserting a defense. *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991) (summary judgment granted); *Molerio v. Federal Bureau of Investigation*, 749 F.2d 815, 825 (1984) (court affirmed dismissal of one count on alternative theory where classified declarations demonstrated that Government had an affirmative defense that could not be raised, and allowing the count to go forward, while precluding defense, would have resulted in a "mockery of justice").

When viewed in light of Zoltek's allegations of infringement by the B-2 program in this litigation, it is unclear whether the invocation of the privilege will affect Zoltek's ability to

litigate its assertions. For example, Zoltek's allegations of infringement in Zoltek's Reply Brief in Support of Its Second Motion for an Order to Show Cause Against Northrop Grumman Corp. and to Compel Production of Non-Classified Documents, Docket No. 331 (Sept. 11, 2006) (hereinafter Docket No. 331) provided the first allegation of infringement where Zoltek identified both a specific carbon fiber product (product made in accordance with MS-419/MS-419B) and alleged how that product infringed. Prior to that time, Zoltek had only vaguely alleged infringement by unspecified products and had not disclosed how those products infringe.

In alleging infringement in Docket No. 331, Zoltek asserts that the actions of Northrop Grumman employees were instrumental in determining the appropriate temperature to be used in the alleged partial carbonization process. But Northrop's employees knowledge relating to the electrical characteristics of carbon fibers used on the aircraft is within the scope of the privilege invoked by the Secretary. To the extent that these allegations make Northrop Grumman employee's knowledge and actions central to Zoltek's proof of its claims or the Government's denial of those claims, the case cannot go forward; it would have to be dismissed. *See Crater Corp.*, 423 F.3d 1267 (whether claims can be adjudicated turns on an analysis of the claims in light of the state secret that forms a basis for the assertion of the privilege). Accordingly, Zoltek should be presented the opportunity to carry its burden of demonstrating whether this case can proceed without the information covered by the privilege.

## II. CONCLUSION

For the reasons stated above, and after consideration of the Declaration of the Secretary of the Air Force and the Declaration of Michael A. Davidson, the Government requests that the court find that the state secrets privilege has been properly and appropriately invoked, and that the matter protected by the privilege is therefore excluded from this suit.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

*s/ Gary L. Hausken*

GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345
Attorneys for the United States

May 15, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 96-166C<br><br>Chief Judge Edward J. Damich |

**STATEMENT OF THE UNITED STATES TRANSMITTING**

**THE INVOCATION OF THE MILITARY & STATE SECRET PRIVILEGE**

**BY THE SECRETARY OF THE AIR FORCE**

# EXHIBIT

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ZOLTEK CORPORATION, a Missouri Corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 96-166C<br><br>Chief Judge Damich |

**DECLARATION OF THE SECRETARY OF THE AIR FORCE MICHAEL W. WYNNE**

I, Michael W. Wynne, declare the following to be true and correct:

1. I am the Secretary and head of the Department of the Air Force. I am responsible for, and have authority to conduct all affairs of the Department of the Air Force. Subject to the authority, direction, and control of the Department of Defense, I am also responsible for the formulation of policies and programs of the Department of the Air Force that are fully consistent with the national security objectives and policies established by the President and the Secretary of Defense.

2. In my capacity as Secretary of the Air Force, I possess original Top Secret classification authority and am authorized by the President under Executive Order 12958 (as amended by Executive Order 13292, March 25, 2003), to determine the proper classification of information and to safeguard against the unauthorized disclosure of militarily sensitive information.

3. The purpose of this public declaration is to formally invoke the military and state secrets privilege in order to protect the national security of the United States with respect to certain aspects of carbon fiber and stealth technologies relating to the B-2 aircraft as is more fully set forth below. Because a more detailed public description of certain matters is not possible for reasons of national security, the Air Force is also submitting the classified, *ex parte, in camera* declaration of William A. Davidson, Administrative Assistant to the Secretary of the Air Force (hereinafter "*in camera* declaration") to the Court which provides an explanation of the need to invoke the military and state secrets privilege and which explanation I hereby adopt as part of this declaration. I have reviewed Mr. Davidson's declaration and have reason to believe it is a true and accurate statement as to the identity of the military and state secrets that are subject to the privilege.

4. I have become aware of the above-captioned litigation through the course of my official duties as Secretary and head of the Department of the Air Force. The statements in this declaration are based upon my personal review and consideration of the matters raised by this litigation and information provided to me by Air Force employees in the course of their official duties, or at my request or direction.

5. I have been informed by the Air Force General Counsel and by Air Force security officials that, in an effort to resolve disputes related to the discovery of classified information regarding the B-2 program, Chief Judge Damich, Court of Federal Claims, met *in camera* with Air Force security officials, counsel for the United States, and attorneys of the Office of the General Counsel on December 20, 2005. As a result of that meeting, the Court provided to Zoltek's counsel the following statement:

> The court, having met with representatives of the United States in camera, concludes that it would be useful to plaintiff if its counsel applied for eligibility to access national security information. Such access, if granted by the Department of Defense and the Air Force, would permit the plaintiff's counsel greater opportunity to pursue discovery. For example, if access is granted, counsel would be free to attend and pose questions to Messrs. Michael Capoccia and George Rogers at deposition, assuming the witnesses' answers are within the scope of counsel's approved access. Further, the United States could provide greater information regarding the use of carbon fiber in the B-2 than would be permissible if counsel are not cleared for access to such information.

I have further been informed that Air Force security officials have received requests that they determine the eligibility of plaintiff's counsel for access to B-2 information that is maintained within a Special Access program.

6. The General Counsel of the Air Force informs me that Zoltek's counsel contends that its United States Patent No. Re. 34,162 (generally relating to methods for making carbon fiber sheet products) was used in the manufacture of carbon fiber materials used in the B-2 aircraft; and, Zoltek contends that employees of Northrop Grumman, the manufacturer of the B-2, performed a critical step in the methods that are at issue in this litigation. Further, Zoltek contends and seeks proof that, in whole or in part, the "stealth" characteristics of the B-2 aircraft result from the use of Zoltek's patented methods. More specifically, I am informed that Zoltek's counsel has contended that the carbon fiber materials are used in the B-2 to absorb radar. In order to prove these contentions, Zoltek has sought depositions of Northrop Grumman employees and demanded that Northrop Grumman produce documents related to the B-2 aircraft. The General Counsel further informs me that Government counsel and Northrop Grumman have denied the use of the claimed inventions in manufacturing carbon fiber material for use in the B-2. The General Counsel informs me that at least the information contained

in the *in camera* declaration is central to the disputed contention and access to that information would be necessary to resolve the dispute.

7. Carbon fiber reinforced epoxy composites are extensively used in the B-2 design. The Air Force has previously made available documents relating to each of the carbon fiber materials approved for use on the B-2. And I am informed that Zoltek has taken the depositions of employees of the companies who manufactured the carbon fibers approved for use on the aircraft and the materials made from those fibers.

8. I have concluded that any further response by the Air Force or Northrop Grumman will require the disclosure to Zoltek's counsel of information regarding the construction, manufacture and operation of the B-2 aircraft (as opposed to the manufacture of materials used in its construction). That information would include at least information described in the *in camera* Declaration of William A. Davidson.

9. I conclude that the Air Force cannot provide the information that would be necessary to either prove or disprove that Zoltek's contention that carbon fiber materials relate to the 'stealth" capabilities of the B-2 or the information that would be necessary to permit the Government to counter Zoltek's assertion. The disclosure of such information would be reasonably expected to unduly harm the national security. The information contained in the *in camera* declaration, if known to foreign intelligence organizations, would assist foreign governments to develop measures to counter the advantages of the B-2 stealth technology. That would, in turn, put U.S. military personal, and the nation's security in jeopardy. Further, the information, if known, would allow foreign military services to develop their own technologies, and therefore, increase the burden on our military services to counter those new technologies.

10. The B-2 is often referred to as a "stealth" aircraft. "Stealth" is achieved by controlling the emission and reflection of energy in all spectra. Spectral control affects virtually every aspect of the aircraft's design and construction. Aircraft with stealth characteristics are difficult to detect until the aircraft is at close range. This provides a significant military advantage. The information provided in the *in camera* declaration is within the definition of stealth technology provided here.

11. How "stealth" is achieved in the B-2 is considered one of the Air Force's most valuable secrets. As noted above, the "stealth" characteristics influence every aspect of the aircraft's design, as is more fully discussed in the *in camera* declaration. Zoltek's requests for depositions and documents – and more accurately, the information that would be necessary to support and explain the Air Force's and Northrop Grumman's responses to those requests – would require that Northrop Grumman employees describe not only the design and construction of the aircraft, but potentially describe the thought processes that resulted in various design choices. That information, disclosed, would prove extremely valuable to foreign governments, as it provides insight into the capabilities and vulnerabilities of the B-2, and therefore suggests methods and technologies that may be useful in countering the B-2's advantages.

12. Even if the parties and Court took all conceivable precautions, I conclude that the national security would be threatened by the increased risk of disclosure that would be created by the production and use of the privileged information detailed in the *in camera* declaration in this litigation. Conducting depositions relating to that information would require not only granting access to the information to Zoltek's counsel, but would also require granting access to one or more court reporters for the

purpose of creating transcripts of the depositions. And once the depositions transcripts were prepared multiple copies of those transcripts would be required for use in the litigation by the counsel for Zoltek and the Government, as well as copies for the court. In addition to the number of copies required, those copies would need to be maintained at various locations to accommodate the needs of the parties and the court, adding to the risk of disclosure. Further, the use of the information in litigation increases the risk of accidental disclosure to unauthorized persons. Even as to documents, the need to produce multiple copies of the necessary documents and store them at various locations would pose an unacceptable risk that the valuable Air Force secrets that are disclosed within the documents could be compromised.

13. In reaching this conclusion, I have also considered whether the restrictions on access to and handling of classified information would provide adequate safeguards for the information, if access were granted to the Zoltek's counsel, their staff and assistants. I conclude that those disclosures would be contrary to the purpose and goals of the Special Access program. One of the primary goals of Special Access programs is to provide security by strictly limiting the number of people who have knowledge of the protected information. Indeed, the purpose of Special Access programs is to provide enhanced security that cannot be accomplished through the use of classification alone. Accordingly, I have determined that the protections afforded the information in the Special Access program would be diminished or defeated by granting the requests for access in this case.

14. In this instance, I have determined that denial of the requests for access would be tantamount to invocation of the military and state secrets privilege because such

denial would foreclose Zoltek's access to discovery of information that is the subject matter of the dispute, and the Government's ability to defend itself with respect to that same subject matter would also be foreclosed. Accordingly, I have treated this case as calling for a determination of whether invocation of the military and state secrets privilege is proper, and my personal determination follows. I have determined that Zoltek's counsel does not have a need-to-know the specific classified information described in the *in camera* declaration. In addition to that need-to-know determination, I have concluded that it is appropriate to invoke the military and state secrets privilege in this litigation, to prevent disclosure of the information described in the *in camera* declaration.

15. After personal consideration of the matter, it is my judgment that the information described in the *in camera* declaration constitutes military and state secrets. Based on my understanding of this case and my personal consideration of the matter, I have concluded that disclosure of the information described in the *in camera* declaration would reasonably be expected to harm the national security interests of the United States, the degree of such harm also being described in the *in camera* declaration.

16. Accordingly, I have concluded that my duty to protect the national security requires that I invoke the extraordinary measure of asserting the military and state secrets privilege. I have personally determined that claiming the privilege which I now assert in this declaration is appropriate under the circumstances. I invoke the military and state secrets privilege with respect to the following classified information relating to the B-2 aircraft:

a. carbon fibers: information pertaining to the relationship or lack thereof between the electrical characteristics of the B-2 aircraft and the carbon fibers used in its construction; and information relating to any experiments, testing, studies or other developmental activities by Northrop Grumman Corporation relating to the material characteristics of carbon fibers or carbon fiber material used or considered for use on the B-2.

b. "stealth": information relating to the B-2 aircraft's emission and reflection of energy in any spectra; and, information relating to tests, studies, experiments and any other development activities that relate to the Northrop Grumman's efforts to control emission or reflection of energy in any spectra.

As used above, "carbon fiber material" shall include both carbon fibers and products made from such fibers.

17. Having determined disclosure would reasonably be expected to harm the national security, I have invoked the military and state secrets privilege. I have also determined that Zoltek's counsel do not have a need-to-know the information at issue here.

I declare under penalty of perjury that foregoing is true and correct.

Executed on April 19, 2007

[signature]
MICHAEL W. WYNNE