IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, | No. 96-166C |
| v. | Chief Judge Edward J. Damich |
| THE UNITED STATES, Defendant. | |

**DEFENDANT'S OPPOSITION TO ZOLTEK'S MOTION [DOCKET NO. 363]**

**TO STRIKE THE GOVERNMENT'S SUMMARY JUDGMENT MOTION**

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN FARGO
Director

GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

January 4, 2008

Attorneys for the United States

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *iii*

TABLE OF EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *vii*

I. STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. ZOLTEK SHOULD BE REQUIRED TO RESPOND IN ACCORDANCE WITH RCFC 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. ZOLTEK FAILS TO COMPREHEND EFFECT OF THE MILITARY AND STATE SECRETS PRIVILEGE ON THE PRESENT LITIGATION. . . . . . . . . . . . . . . . . 7

A. THE FEDERAL CIRCUIT HAS PREVIOUSLY REJECTED ZOLTEK'S PRIVILEGE AGAINST SELF-INCRIMINATION AND DUE PROCESS ARGUMENTS. . . . . . . . . . . . . . 7

B. *REYNOLDS* AND *MOLERIO* DO NOT SUPPORT ZOLTEK'S CONTENTIONS. . . . . . . . . . 9

C. OTHER FEDERAL CIRCUIT PRECEDENT ALSO MILITATES AGAINST ACCEPTANCE OF ZOLTEK'S ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D. ZOLTEK'S RELIANCE ON THE PRIVILEGE AGAINST SELF-INCRIMINATION AND COMMON LAW PRIVILEGES IS MISPLACED. . . . . . . . . . . . . . . . . . . . . . . . . . 14

*1. Use of a privilege is "offensive" when the party affirmatively asserts a claim or defense that is inconsistent with maintenance of the privilege* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*2. "Offensive use" is determined by the claim or defense being made.* . . . . . 18

*3. Zoltek's citations are to cases involving waiver of the privilege.* . . . . . . . 18

*4. Zoltek is precluded from arguing waiver here..* . . . . . . . . . . . . . . . . . . . . . 20

E. IF ZOLTEK WERE CORRECT, THE CASE STILL MUST BE DISMISSED . . . . . . . . . . . 21

IV. ZOLTEK'S APPROACH TO OBVIOUSNESS IS UNAVAILING. . . . . . . . . . . . . . . . . 24

V. GOVERNMENT'S RESPONSE'S TO THE COURT'S QUESTIONS. . . . . . . . . . . . . . . 28

1. WHERE THE GOVERNMENT IS A DEFENDANT IN A PATENT INFRINGEMENT SUIT, CAN THE GOVERNMENT FILE A MOTION CHALLENGING THE VALIDITY OF THE PLAINTIFF'S PATENT WHEN THE PLAINTIFF ASSERTS THAT IT CANNOT ADEQUATELY OPPOSE THE MOTION WITHOUT THE ABILITY TO DISCOVER INFORMATION WITHHELD FROM IT ON THE BASIS OF A PROPER ASSERTION OF THE STATE SECRETS PRIVILEGE?. . . . . . . . . . . . . . . . . . . . . . . . . . 28

a. *Why would the rule concerning the invocation of the state secrets privilege in criminal proceedings, e.g. as discussed in Reynolds, 345 U.S. at 12, apply in a civil suit where the government is bringing an "offensive" motion?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

b. *What should be the result if the withheld information were merely supportive of a defense, rather than constituting a complete defense? Would it make a difference if the defending party could raise at least some kind of defense without the withheld information? What if the "defense" were an opposition to an "offensive" motion?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

2. DOES THE SCOPE OF THE GOVERNMENT'S ASSERTION OF THE STATE SECRETS PRIVILEGE IN THIS CASE NECESSARILY ALSO COVER ALL EVIDENCE OF SECONDARY CONSIDERATIONS?. . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

a. *In the context of the motion that Plaintiff wants the Court to strike in this case, is it appropriate for the Court to examine the propriety of the invocation of the state secrets privilege on an item-by-item basis to determine whether evidence of secondary considerations of non-obviousness is being improperly withheld?*. . . . . . . . . . . . . . . . . . 33

b. *In the context of Plaintiff's motion to strike in this case, why would discovery other than* [*by*] *depositions, such as interrogatories, not be adequate for the Plaintiff to discover evidence of secondary considerations of non-obviousness? Would the Government likely decline to answer each interrogatory based on the state secrets privilege?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

3. CAN THE COURT RULE ON OBVIOUSNESS WITHOUT HEARING ALL EVIDENCE OF SECONDARY CONSIDERATIONS? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

a. *In this case, does Plaintiff have any other evidence of secondary considerations of non-obviousness?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*b.* *How can a party opposing a motion for summary judgment of invalidity prove that a genuine issue of material fact exists where such opposing party is not aware of all of the facts because some are being withheld by the moving party because of a proper assertion of the state secrets privilege?* . . . . . . . . . . . . . . . . . . . . . . . . . 37

*c.* *If a patent's validity is challenged on the basis of obviousness, can a court examine privileged information pertaining to secondary considerations of nonobviousness in camera in order to determine whether a genuine issue of material fact exists as to obviousness?*. . . . . 37

4. EXPLAIN THE RELEVANCE OF RCFC 56(F) IN A SITUATION WHERE A BROAD ASSERTION OF THE STATE SECRETS PRIVILEGE HAS BEEN MADE.. . . . . . . . . . . . . . 38

VI. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## TABLE OF AUTHORITIES

CASES

*Al-Haramain Islamic Found. v. Bush*,
___ F.3d ___, 2007 WL 3407182 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 30, 31, 34

*Al-Haramain Islamic Found. v. Bush*,
451 F. Supp. 2d 1215 (D. Or. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bond v. District Court*,
682 P.2d 33 (Colo. 1984) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bramble v. Kleindeinst*,
357 F. Supp. 1028 (D. Colo. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chevron U.S.A. Inc. v. United States*,
72 Fed. Cl. 817 (2006) (Damich, C.J.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 28

*Crater Corp. v. Lucent Tech., Inc.*,
423 F.3d 1260 (Fed. Cir. 2005) (*Crater II*). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 23

*Department of the Navy v. Egan*,
484 U.S. 518 (1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . 4, 14, 20, 21, 27, 28, 32, 33, 35-37

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
442 F.3d 1301 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Farnsworth Cannon, Inc. v. Grimes*,
635 F.2d 268 (4th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 38

*Fisherman's Harvest, Inc. v. United States*,
74 Fed. Cl. 681 (2006) (Damich, C.J.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fitzgerald v. Penthouse Int'l, Ltd.*,
776 F.2d 1236 (4th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Flowers v. United States*,
75 Fed. Cl. 615 (2007) (Sweeny, J.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fort James Corp. v. Solo Cup Co.*,
412 F.3d 1340 (Fed. Cir. 2005) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ginsberg v. Fifth Court of Appeals*,
686 S.W. 2d 105 (Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Graham v. John Deere Co.*,
383 U.S. 1 (1966).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

*In re Echostar Comm. Corp.*,
448 F.3d 1294 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17-20

*In re Rhone-Poulenc Rorer, Inc.*,
1998 WL 968489 (Fed. Cir. 1998) (unpub.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In Re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Independent Productions Corp. v. Loews, Inc.*,
22 F.R.D. 266 (S.D.N.Y. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kinoy v. Mitchell*, 67 F.R.D. 1
(S.D.N.Y.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Kistling v. Westchester Fire Ins. Co.*,
290 F. Supp. 141 (W.D. Wisc. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. , 127 S. Ct. 1727 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Laverne v. Incorporated Village of Laurel Hollow*,
219 N.E.2d 294 (N.Y. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*,
485 F.3d 1157 (Fed. Cir. 2007) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lyons v. Johnson*,
415 F.2d 540 (9th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McDonnell Douglas Corp. v. United States*,
323 F.3d 1006 (Fed. Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 23, 29, 32, 33, 35, 36

*Molerio v. Federal Bureau of Investigation*,
769 F2d 815 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 23, 30

*Monarch Assurance P.L.C. v. United States*,
244 F.3d 1356 (Fed. Cir. 2001) (per curiam).. . . . . . . . . . . . . . 12-14, 21, 24, 28, 30-32, 35

*Mull v. String*,
448 So.2d 952 (Ala. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Newell Cos. v. Kenney Mfg. Co.*,
864 F.2d 757 (Fed. Cir. 1988) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Optivus Technology, Inc. v. Ion Beam Applications S.A.*,
469 F.3d 978 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ormco Corp. v. Align Tech. Inc.*,
463 F.3d 1299 (Fed. Cir. 2007) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pavlinko v. Yale-New Haven Hospital*,
470 A.2d 246 (Conn. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007),
*rehearing en banc denied*, 488 F.3d 1377 (Fed. Cir. 2007),
*cert. denied*, 552 U.S. ___, 128 S. Ct. 110 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ruiz v. A.B. Chance Co.*,
234 F.3d 654 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*SCM Corp. v. United States*,
473 F. Supp. 791 ( Cust. Ct. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Theisen Vending Co. v. United States,*
58 Fed. Cl. 194 (2003) (Lettow, J.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Totten v. United States*,
92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Beekman*,
155 F.2d 580 (2d Cir. 1946).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*United States v. Reynolds*,
345 U.S. 1 (1953).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8-11, 23, 29, 31, 33-35

*United States v. Rylander*,
460 U.S. 752 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-20

*Vu Doc Guong v. United States*,
860 F.2d 1063 (Fed. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*XYZ Corp. v. United States* (*In re Keeper of the Records*),
348 F.3d 16 (1st Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

## CONSTITUTION, STATUES & RULES

Contract Disputes Act,
41 U.S.C. § 609(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

RCFC 12(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

RCFC 33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

RCFC 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 28

RCFC 56(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

RCFC 56(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 27, 28, 38

U.S. Constitution, Amendment I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

U.S. Constitution, Amendment V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14, 19, 20

## OTHER AUTHORITIES

*McCormick's Handbook of the Law of Evidence* 233 (E. Cleary ed. 1972).. . . . . . . . . . . . . . . . . 21

## TABLE OF EXHIBITS

1 Letter from Gary L. Hausken, Attorney, Department of Justice, to Dean A. Monco, Esq., Wood Phillips Van Santen Clark and Mortimer, dated May 15, 2001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A2

2 Letter from Dean A. Monco, Esq., to Gary L. Hausken, Attorney, dated Nov. 6, 2001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, | ) | |
| v. | ) | No. 96-166C |
| THE UNITED STATES, Defendant. | ) | Chief Judge Edward J. Damich |

**DEFENDANT'S OPPOSITION TO ZOLTEK'S MOTION [DOCKET NO. 363] TO STRIKE THE GOVERNMENT'S SUMMARY JUDGMENT MOTION**

Zoltek now asks the court to strike the government's motion for summary judgment of patent invalidity due to obviousness. Zoltek's Mot. to Strike the Gov.'s Mot. for Summ. J. of Invalidity Based on Obviousness, Docket No. 363 (Pl. Mot.). Zoltek's motion to strike finds no support in this court's Rules of Practice and Procedure (RCFC), and Zoltek provides no authority or rationale for its unprecedented motion. Indeed, Zoltek's motion simply seeks to avoid answering the government's motion rather than responding to it, as is required by RCFC 56(f).

Similarly, Zoltek's recitation of the law of obviousness is flawed. Secondary considerations need be considered only when available and presented. Here, Zoltek merely asserts that some evidence of secondary considerations is unavailable. Zoltek provides no basis to believe that further discovery, even absent assertion of the privilege, would prove fruitful. To be sure, Zoltek does not assert that it has ever seen or heard such information, nor does it assert that others have informed it of such information. Zoltek's showing is thus insufficient to demonstrate harm or to provide a basis for other relief under RCFC 56(f).

Further, Zoltek's own motion demonstrates that it has at least some evidence of alleged secondary considerations available to it. Zoltek points to several documents and other evidence that it claims evidence favorable secondary considerations of nonobviousness. Each of the documents to which Zoltek refers in support of its assertion is not privileged and can be used in support of Zoltek's response. Zoltek has not shown that it has been denied any ability to defend against the government's proof of obviousness.

In any event, even if Zoltek is correct that it is being denied the ability to defend against the government's summary judgment motion, then the unambiguous precedent of the Supreme Court and the Federal Circuit requires that this case be dismissed.

## I. STATEMENT OF THE CASE

On April 19, 2007, the Secretary invoked the military and state secrets privilege (state secrets privilege or the privilege). Statement of the United States Transmitting Invocation of Military & State Secret Privilege By Secretary of Air Force, Docket No. 339 (May 15, 2007). The Secretary invoked the privilege with respect to classified information relating to the B-2 aircraft in the following categories:

> a. carbon fibers: information pertaining to the relationship or lack thereof between the electrical characteristics of the B-2 aircraft and the carbon fibers used in its construction; and information relating to any experiments, testing, studies or other developmental activities by Northrop Grumman Corporation relating to the material characteristics of carbon fibers or carbon fiber material used or considered for use on the B-2.
>
> b. "stealth": information relating to the B-2 aircraft's emission and reflection of energy in any spectra; information relating to tests, studies, experiments and any other development activities that relate to [] Northrop Grumman's efforts to control emission or reflection of energy in any spectra.

Docket No. 339, Exhibit at 7-8, ¶ 16.

After discussions during a status conference on July 17, 2007, the government requested permission to file a motion for summary judgment of patent invalidity for obviousness. *See* Scheduling Order, Docket No. 346. The government was given until September 4, 2007 to file its motion, and Zoltek was to file a status report by September 10, 2007 "discussing any additional fact discovery that it believes may be necessary in order to respond to Defendant's motion for summary judgment." *Id.*

In accordance with the Order, the government filed Defendant's Motion for Summary Judgement That Claims 1-22 and 33-38 of Patent No. Re 34,162 Are Obvious, Docket No. 350, on September 4, 2007. Zoltek filed a status report on September 7, 2007. But, rather than discussing "additional fact discovery" as required by the court's Order, Zoltek requested that the "Court defer consideration of any additional discovery Zoltek might require to respond to the defendant's motion." Zoltek's Status Report Submitted in Response To Court's Order of July 17, 2007, Docket No. 352. The court ordered Zoltek to provide further explanation and Zoltek responded on September 14, 2007. Order, Docket No. 353 (Sept. 11, 2007); Zoltek's Updated Status Report Submitted in Response To Court's Order of Sept. 11, 2007, Docket No. 356. Thereafter, the court granted Zoltek's request that it be allowed to file the instant motion. The court has subsequently directed that the following matters and conditions were to be assumed for purposes of the present motion and response:

1 The Government has properly invoked the state secrets privilege according to the procedural requirements set forth in *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953).

2. The Court has determined that the Government demonstrated the existence of a reasonable danger from disclosure of the withheld information,

> balanced that danger against Plaintiff's need for the information, and reviewed declarations from Government officials *in camera*. Based on the review, the Court has upheld the Government's invocation of the state secrets privilege. Therefore, arguments solely concerning Plaintiff's need for information or the potential danger of disclosing such information are no longer pertinent. *See Ellsberg v. Mitchell*, 709 F.2d 51, 58-59 (D.C. Cir. 1982).
>
> 3. [T]hat waiver of the state secrets privilege will not be an issue in the motion to strike the Government's motion for summary judgment.

Order, Docket No. 361 (Oct. 19, 2007).

## II. ZOLTEK SHOULD BE REQUIRED TO RESPOND IN ACCORDANCE WITH RCFC 56

Rule 56 provides, in pertinent part, that "[a] party against whom a claim or counterclaim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." This provision is a favored mechanism for disposing of unsupported claims. RCFC 56(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Where, as here, the defendant bears the burden of establishing a defense, its motion for summary judgment must provide sufficient evidence to establish a *prima facie* case, if unopposed. *Optivus Technology, Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 990 (Fed. Cir. 2006). In order to defeat a properly supported motion, the plaintiff must then identify specific facts that raise a genuine issue for trial and produce sufficient evidence in support of those facts that a reasonable court could find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985).

The court's Rules provide only one exception to this procedure. Where the party opposing summary judgment files affidavits which establish that the party cannot "for reasons stated present … facts essential to justify the party's opposition, the court may refuse the application for judgment or … may make such other order as is just." RCFC 56(f). Thus, faced with a motion for summary judgment, the non-moving party has three options for opposing the motion: first, it can attack whether the motion is properly supported; second, it can respond and oppose the motion on the merits; and third, it can *by affidavit* establish why it is unable to respond and seek relief from the court. *See Flowers v. United States*, 75 Fed. Cl. 615, 625 (2007) (Sweeny, J.).

When a party chooses the third course, it must state with particularity the facts that the party hopes to obtain through discovery and how those facts will raise a genuine issue of fact. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1310 (Fed. Cir. 2006). Further, in *Chevron U.S.A. Inc. v. United States*, 72 Fed. Cl. 817, 819 (2006) (Damich, C.J.), this court adopted a five part test first announced in *Theisen Vending Co. v. United States,* 58 Fed.Cl. 194, 197 (2003) (Lettow, J.). Under that test:

> [T]he non-movant must by affidavit and supporting papers: (1) specify the particular factual discovery being sought, (2) explain how the results of the discovery are reasonably expected to engender a genuine issue of material fact, (3) provide an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue, (4) recite the efforts previously made to obtain those facts, and (5) show good grounds for the failure to have discovered the essential facts sooner.

*Chevron*, 72 Fed. Cl. at 819. Based upon the showing made, the court may then judge the reasonableness of the non-moving party's claim and its diligence in seeking discovery, before deciding whether to grant relief.

Here, Zoltek seeks to avoid the court's rules by moving to strike, rather than responding in accordance with RCFC 56(f). The court's rules do not provide for "striking" a motion.[1] Indeed, the document for which striking is specifically provided is a pleading (e.g., complaint or answer). RCFC 12(f). As this court has previously recognized:

> RCFC 12(f) provides in relevant part: "Upon motion made by a party … the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts view motions to strike with disfavor and rarely grant them. A motion to strike must be directed to a "pleading," which term has been construed narrowly by the courts. Other court documents may not be attacked by a motion to strike. In particular, a motion to strike may not be used to strike another motion. Instead, courts may regard a motion to strike a motion simply as a response to that motion.

*Fisherman's Harvest, Inc. v. United States*, 74 Fed. Cl. 681, 690 (2006) (Damich, C.J.) (citations omitted). Thus, it is well established that Zoltek cannot avoid answering the motion by moving to "strike" the motion for summary judgment. Zoltek should be ordered to respond and, in light of the substantial time it has already had to prepare an answer, should be given a shortened time to respond.

[1] We recognize that the court has the inherent power to strike motions and other papers as a sanction for violations of the court's rules or orders. Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). Zoltek does not claim that the government's motion was improperly filed.

## III. ZOLTEK FAILS TO COMPREHEND EFFECT OF THE MILITARY AND STATE SECRETS PRIVILEGE ON THE PRESENT LITIGATION

Relying on cases defining the privilege against self-incrimination and the attorney client privilege, Zoltek argues that allowing the government to assert the state secret privilege, while also seeking summary judgment of invalidity, would constitute an improper "offensive" use of the privilege. Pl. Mot. at 4-10. As a result, Zoltek ignores controlling precedent and misconstrues the effect of the Secretary's invocation on the present litigation.

### A. THE FEDERAL CIRCUIT HAS PREVIOUSLY REJECTED ZOLTEK'S PRIVILEGE AGAINST SELF-INCRIMINATION AND DUE PROCESS ARGUMENTS

In *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1021 (Fed. Cir. 2003), the Federal Circuit specifically addressed substantially the same arguments that Zoltek raises in the present motion. 323 F.3d at 1021-22. *McDonnell Douglas* arose from the Navy's default termination of a contract for a carrier-based stealth aircraft and request for return of $1.35 billion in progress payments. 323 F.3d at 1010-11. The contract was terminated after the contractors failed to make one of the contract milestones, delivery of the first aircraft. *Id*. The contractors brought suit under the Contract Disputes Act, 41 U.S.C. § 609(a), appealing the contracting officer's termination. 323 F.3d at 1011. The contractors argued, *inter alia*, that they should not be held in default, or forced to return the progress payments, because the government had breached a duty to disclose critical information that was necessary to prevent the contractors from pursuing a ruinous course of action (the "superior knowledge" defense). 323 F.3d at 1020.

The Secretary of the Air Force invoked the state secrets privilege with respect to certain information regarding the B-2 and F-117 aircraft. 323 F.3d at 1020, 1022. The trial court

determined the contractors could not pursue the superior knowledge defense because doing so would entail extensive discovery of the privileged information and ultimately require divulging the privileged information at trial. 323 F.3d at 1022.

Before the Federal Circuit, the contractors argued that the Due Process Clause of the Fifth Amendment gave them a right to present all defenses. 323 F.3d at 1022-23. Like Zoltek here, the contractors relied on criminal cases to argue that the Fifth Amendment requires the government to elect either to fully disclose the privileged information, in which the litigation could continue, or to stand on the privilege, in which case the government could not pursue the default termination. 323 F.3d at 1023.

The Federal Circuit rejected the contractor's argument, noting that in the argument the contractors "essentially conflate rules governing criminal and civil proceedings, elevating this civil contract dispute into the constitutional territory of a criminal prosecution. 323 F.3d at 1023. The Federal Circuit then noted that, in *Reynolds*, the Supreme Court had rejected the very argument made by the contractors. 323 F.3d at 1023. In doing so, the Court quoted the very language in *Reynolds* upon which Zoltek relies. *Compare McDonnell Douglas*, 323 F.3d at 1023 *with* Pl. Mot. at 5. Zoltek's argument – which fails to even acknowledge that *McDonnell Douglas* and *Reynolds* are controlling precedent – simply seeks to have this court ignore settled law.

And, as the Federal Circuit went on to state, "well-established precedent demonstrates that, when a properly invoked claim of State Secrets privilege undercuts a civil litigant's opportunity to prove its case, the interests favoring the protection of the state secret always prevail." *McDonnell Douglas*, 323 F.3d at 1024 (citing, *inter alia*, *Reynolds*, 345 U.S. at 11-12).

Finding no reason to deviate from settled law, the court affirmed the dismissal of the contractor's "superior knowledge" claims. *McDonnell Douglas*, 323 F.3d at 1024.

### B. *Reynolds* and *Molerio* Do Not Support Zoltek's Contentions

Citing to *Reynolds*, 345 U.S. at 11, *Molerio v. Federal Bureau of Investigation*, 769 F2d 815, 825 (D.C. Cir. 1984) (Scalia, J), and *United States v. Beekman*, 155 F.2d 580 (2d Cir. 1946), Zoltek asserts that "to permit a privilege holder to assert the privilege to preclude the party against whom the privilege is asserted from defending against a claim brought by the privilege holder would be a gross violation of due process and equal protection of the law," resulting in a "mockery of justice," using the language of the *Molerio* court. Pl. Mot. at 4. Plaintiff distorts the holdings of the cases it cites and fails to recognize the contrary binding precedent of the Federal Circuit. Indeed, the partial quote from *Molerio* is so twisted as to take on a meaning completely removed from the context of the opinion.

*Molerio* involved an unsuccessful applicant for employment as an agent of the Federal Bureau of Investigation (FBI), who claimed, *inter alia*, that the FBI refused to hire him because of his Cuban-American heritage and because of his father's political activities, thereby denying him due process and violating his and his father's First Amendment right of freedom of association. 769 F2d at 819. He sued for monetary damages and injunctive relief. *Id.*

The court concluded that the FBI had properly invoked the state secrets privilege to prevent discovery of the precise reasons why Mr. Molerio had been denied employment. 769 F2d at 820-22. The court then addressed plaintiff's contention that the denial of employment

was improperly based, at least in part, on the political beliefs of plaintiff's father. 749 F.2d at 824. Responding to this argument, the court found:

> It seems to us … that the effect of our determination with regard to the state secrets privilege is to prevent this issue from proceeding. As noted earlier, we honored the invocation of that privilege because we satisfied ourselves that the in camera affidavit set forth the genuine reason for denial of employment, and that that reason could not be disclosed without risking impairment of the national security. … [T]he reason Daniel Molerio was not hired had nothing to do with Dagoberto Molerio's assertion of First Amendment rights. Although there may be enough circumstantial evidence to permit a jury to come to that erroneous conclusion, it would be a mockery of justice for the court – knowing the erroneousness – to participate in that exercise. … [W]e know that further activity in this case would involve an attempt, however well intentioned, to convince the jury of a falsehood.

749 F.2d at 825.

Zoltek claims that a "mockery of justice" would occur because the "party against whom the privilege is being asserted" would be denied due process and equal protection of the laws. Pl. Mot. at 4. As the foregoing passage makes clear, however, the court was not concerned with any supposed violation of due process. The court's comments expressed concern that, absent any way to defend itself, the government would suffer a "mockery of justice" because plaintiff's proofs would attempt to establish what the court would know to be a "falsehood," but to which neither the court nor the government could respond. 749 F.2d at 825. Thus, contrary to Zoltek's assertion, the "mockery of justice" would not be suffered by the party against whom the privilege was asserted, but rather by the government, which could not adequately defend against plaintiff's misguided assertions.

Zoltek similarly misquotes *Reynolds*. Zoltek cites to the following paragraph as supporting its case:

> Respondents have cited us to those cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free. The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. Such rationale has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented.

345 U.S. at 12. But Zoltek misperceives the substance of the Court's statement. From the quote, Zoltek suggests that the phrase "where the Government is not the moving party" means where the government has not brought a *motion*. Pl. Mot. at 16-17. The Supreme Court, however, was not concerned with the procedural mechanism or timing, but with who brought the suit in the first instance. The Court merely states that the rationale in criminal cases that the government cannot seek to proceed against the defendant while refusing to produce relevant evidence is not applicable in civil cases. The comparison is inapposite, according to the Court, because the government is the party bringing the suit in criminal prosecutions, whereas in civil actions, the government is the defendant, having agreed to be sued on terms to which it consented. *Reynolds* does not address whether an "offensive motion" is distinct from a "defense motion."[2]

Finally, Zoltek states that *United States v. Beekman* supports its argument. But the argument Zoltek attempts to make using *Beekman* was rejected by the Supreme Court in *Reynolds*. 345 U.S. at 12 & n. 27.

[2] As we will address later, we disagree with the court's definition of an "offensive motion."

### C. OTHER FEDERAL CIRCUIT PRECEDENT ALSO MILITATES AGAINST ACCEPTANCE OF ZOLTEK'S ARGUMENT

The Federal Circuit has previously warned trial courts that "there are strong policy reasons why courts should generally refrain from deciding whether the ultimate merits issues (*i.e.*, liability and defenses) can be proven based on the information provided in the government's state secret declaration or the underlying privileged documents. *Monarch Assurance P.L.C. v. United States*, 244 F.3d 1356, 1364 (Fed. Cir. 2001) (per curiam). As the court stated:

> To do so, risks the appearance of impropriety because plaintiffs are unable to participate in the decision. Furthermore, such a merits review risks compromising the secret, since it may suggest that the Government has a particular defense to this suit, whereas in other cases an opposite result may suggest otherwise.

*Id.* And the court has confirmed that where the merits of the controversy are "inextricably intertwined with privileged matters," the case must be dismissed. *Vu Doc Guong v. United States*, 860 F.2d 1063, 1066-67 (Fed. Cir. 1988).

The Federal Circuit's decision in *Crater Corp. v. Lucent Tech., Inc.*, 423 F.3d 1260, 1266 (Fed. Cir. 2005) (*Crater II*), is also instructive. That case involved a disputed unauthorized use of intellectual property related to underwater fiber optic couplers. 423 F.3d at 1262. Claims of patent infringement had previously been dismissed, and all that remained were state law claims of trade secret misappropriation and breach of contract. 423 F.3d at 1262, 1264.

Early in the litigation, the government intervened in the case and asserted the state secret privilege with respect to discovery relating to whether the coupling devices were manufactured or used by or on behalf of the United States. 423 F.3d at 1263. The trial court – and, subsequently, the Federal Circuit – concluded that the privilege was properly invoked. 423 F.3d at 1263, 1266.

The trial court then determined that in light of the invocation, Crater would not be able to prove its state law claims. 423 F.3d at 1266. The Federal Circuit reversed. 423 F.3d at 1267-68. The Federal Circuit noted that the trial court had not established what trade secrets were allegedly misappropriated and had not established that a contract existed. 423 F.3d at 1268. The court concluded:

> we think that deciding the [i]mpact of the government's assertion of the state secrets privilege on Crater's state law claims without first determining what trade secrets exist and whether a contract existed between Crater and Lucent is akin to putting the cart before the horse. If there are no alleged trade secrets and there was no contract, the issue of the state secrets privilege becomes moot. Alternatively, if there are trade secrets and/or there was a contract, an understanding of the precise nature of the trade secrets and the terms of the contract is essential to the analysis of whether Crater's misappropriation of trade secrets and breach of contract claims may proceed in the face of the assertion of the privilege.

423 F.3d at 1268. The Federal Circuit counsels that, to the extent that the case can be resolved on grounds unrelated to the privileged material, the court should do so. Similarly, the court has also made clear that "the trial court is not expected to, nor should it, simply allow plaintiffs to embark on a wide-ranging fishing expedition in hopes that there may be gold out there somewhere, or worse, in hopes that the Government will get tired of litigating and settle an otherwise unprovable case." *Monarch Assurance*, 244 F.3d at 1365. However, where a plaintiff cannot demonstrate a triable issue of fact because of the invocation of the state secret privilege, then summary judgment is appropriate. 244 F.3d at 1361.

Here, the government has agreed that the "very subject matter of the dispute" in this case is not a secret, thus the only question is whether privileged information is so "central" to the dispute, or "inextricably intertwined" with privileged matter, as to render the case untriable. If the privileged information is not so central or intertwined, then the parties must proceed as best

they can without the privileged information. *Monarch Assurance*, 244 F.3d at 1365; *accord Ellsberg*, 709 F.2d at 64-65. If the privileged matter is central or inextricably intertwined, then the case must be dismissed. *Guong* 860 F.2d at 1066-67 ; *accord Ellsberg*, 709 F.2d at 64-65.

### D. Zoltek's Reliance on The Privilege Against Self-Incrimination and Common Law Privileges Is Misplaced

Citing a variety of cases involving the privilege against self-incrimination, the attorney-client privilege and the physician-patient privilege (including psycotherapists), Zoltek argues that privileges, in general, cannot be used offensively. Pl. Mot. 4-5.

Before proceeding, however, we note that court has defined an "offensive motion," as one that, "if granted,would defeat or extinguish a property right of the non-moving party." Order, Docket No. 361 at 2 n.1 (Oct. 19, 2007). We disagree. The proper question is not whether the *motion* is offensive, but whether the assertion of privilege is offensive. In *In re Echostar Comm. Corp.*, 448 F.3d 1294, 1298-99 (Fed. Cir. 2006), the Federal Circuit discussed the defense of reliance on counsel's advice in response to a charge of willful infringement. The court's conclusion that once asserting such a defense, the party cannot claim that any opinions relating to that subject matter are privileged. *Id.* In reaching that conclusion, it was immaterial to the court's reasoning whether the disputed assertion of privilege occurred in response a summary judgment motion brought by plaintiff or occurred in the course of plaintiff's attempts at discovery of the defendant's trial strategy, *see also Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) (withholding documents in discovery), or of an assertion at trial. The Federal Circuit was concerned with the impact on the truth-seeking process, not the mechanics of how the claim is raised. *Echostar*, 448 F.3d at 1301 ("selective waiver of the privilege may lead

to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice").

With respect to the state secrets privilege, "the technicality of who is plaintiff and who is defendant should not matter." *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 272-73 (4th Cir. 1980). Rather, an evenhanded approach requires "that neither party be preferred, that neither be given an advantage because of inaccessibility of evidence on privilege grounds," and that both parties "proceed as if the evidence did not exist." *Id.* The *Farnsworth Cannon* court went on to point out that "the neutral rule … would still allow the nominal defendant to press a counterclaim so long as it had sufficient admissible evidence to make out a prima facie case" even if the plaintiff could not litigate its claim due to invocation of the privilege. *Id.* To the extent that cases distinguish between "offensive" and "defensive" use of other privileges, Zoltek misunderstands what constitutes an "offensive" use of a privilege and the effect of such use.

#### *1. Use of a privilege is "offensive" when the party affirmatively asserts a claim or defense that is inconsistent with maintenance of the privilege*

In determining whether the assertion of a privilege is "offensive," the focus is on the substance of the claim or defense raised by the privilege-holder, not on the procedural vehicle used to raise the claim or defense. The cases cited by Zoltek make this principle clear. For example, in *Echostar*, the court stated: "[o]nce a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived." 448 F.3d at 1298-99. Similarly, "conduct can serve to waive the attorney-client privilege." *XYZ Corp. v. United States* (*In re Keeper of the Records*), 348 F.3d 16, 22-23

(1st Cir. 2003); *accord Lyons v. Johnson*, 415 F.2d 540, 541-42 (9th Cir. 1969) ("[t]he scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim"). The other cases cited by Zoltek are also in accord. *See In re Rhone-Poulenc Rorer, Inc.*, 1998 WL 968489 at *2 (Fed. Cir. 1998) (unpub.) ("a litigant implicitly waives the attorney client privilege when 'assert[ing] a claim that in fairness requires examination of protected communications'" (citation omitted)); *Kistling v. Westchester Fire Ins. Co.*, 290 F. Supp. 141, 149 (W.D. Wisc. 1968) ("[a] plaintiff in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have his complaint dismissed upon timely motion"); *Ginsberg v. Fifth Court of Appeals*, 686 S.W. 2d 105, 107 (Tex. 1985) (plaintiff may be forced to elect between asserting a privilege and abandoning his claim); *Mull v. String*, 448 So.2d 952, 954 (Ala. 1984) ("Mull effectively relegated his own privacy interest in non-disclosure in favor of the public's interest in full disclosure when he *initiated litigation* against the hospital which directly concerned the physical condition subsequently disclosed to the defendant hospital" (emphasis in original)); *Laverne v. Incorporated Village of Laurel Hollow*, 219 N.E.2d 294 (N.Y. 1966) ("the court properly dismissed the complaint – in the sound exercise of its judicial discretion – because of plaintiff's willful failure to purge himself of his disobedience of prior court orders compelling disclosure on matters relevant to his causes of action and defenses thereto"); *Pavlinko v. Yale-New Haven Hospital*, 470 A.2d 246 (Conn. 1984) ("[a] plaintiff who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved in a civil action risks having his complaint dismissed upon timely motion"); *Bond v. District Court*, 682

P.2d 33, 38 (Colo. 1984) (en banc) ("The rationale for waiver in the context of a lawsuit is that it is inconsistent for the patient-litigant to base a claim upon his/her mental condition and then use the physician or psychologist privilege to prevent the opposing party from obtaining and presenting any conflicting evidence pertaining to that condition.").

In those cases where "offensive" use of a privilege has been found, it is because privilege-holder's affirmative acts in raising the claim or defense are either inconsistent with maintenance of the privilege or maintenance of the privilege causes the claim or defense to fail. In particular, a party cannot *selectively* release privileged information, such as by claiming advice of counsel in response to a claim of willful infringement (*see, e.g., Echostar*, 448 F.3d at 1298-99), and then refuse to produce unfavorable information by claiming the information is privileged. Similarly, where a party maintains the privilege and thereby fails to provide evidence necessary to its claim or defense, the claim or defense necessarily fails. *United States v. Rylander*, 460 U.S. 752, 760-61 (1983) (in a contempt hearing, where the respondent bears the burden of showing compliance with the court's order, failure to waive the privilege against self incrimination may result in no evidence being presented and, therefore, the respondent found in contempt); *Bramble v. Kleindeinst*, 357 F. Supp. 1028, 1032-36 (D. Colo. 1973) (plaintiff cannot assert privilege against self-incrimination to avoid discovery of bases for his claim for remission of forfeiture); *Independent Productions Corp. v. Loews, Inc.*, 22 F.R.D. 266, 276-77 (S.D.N.Y. 1958) ("[p]lain justice dictates the view that … plaintiffs must be deemed to have waived their assumed privilege by bringing this action"). Here, the government's assertion of the privilege is not inconsistent with its motion for a judgment of patent invalidity since the motion does not rely on

information protected by the privilege, nor does maintenance of the privilege cause the government's obviousness defense to fail for lack of evidence.

### *2. "Offensive use" is determined by the claim or defense being made*

Whether the use of a privilege is "offensive" is also unrelated to whether a "property right" is at issue. The Federal Circuit has focused on the effect of such "offense use" on justice and the truth-seeking process. *Echostar*, 448 F.3d at 1301. Another example is *Rylander*, where the claim also directly implicated a property interest as the underlying suit was brought to collect internal revenue tax. 460 U.S. at 753; *see also Bramble*, 357 F. Supp. at 1032-36 (Privilege against self incrimination invoked during proceeding on remission of forfeiture). Yet, the court's review did not focus on the property interest, but on Rylander's inconsistency in trying to defend against contempt by claiming advice of counsel, while simultaneously claiming that the advice he received was privileged. There is no reason to believe that either the Supreme Court or the Federal Circuit would create a separate rule for "property interests" as opposed to garden variety claims or defenses.

### *3. Zoltek's citations are to cases involving waiver of the privilege*

Zoltek then attempts to transmogrify its argument from one of "waiver" to one of the "preclusion." But, none of the cases cite by Zoltek *precluded* the privilege holder from asserting the attorney-client privilege. Rather, in those cases the courts recognized the privilege holder has a choice: maintain the privilege and risk the inability to prove necessary facts or waive the

privilege and prove the necessary facts. *See, e.g., Echostar Comm.*, 448 F.3d at 1298-99, 1301. In each of those cases, the waiver rule prevents the privilege holder's *selective* reliance on privileged information: once the privilege holder chooses to open the door by relying on privileged information, then the privilege is waived for all related communications. *Id.*

For example, in *Rylander*, the defendant was charged with contempt for failing to produce records of a corporation of which he was president in response to an IRS summons. 460 U.S. at 754-55. At the hearing, Rylander confirmed a statement in which he swore that he did not have the records being sought and had not disposed of them to others. *Id.* He then refused to submit to cross-examination by the government, asserting the privilege against self incrimination. *Id.* The trial court found contempt, stating that the Rylander had failed to carry his burden to produce evidence, "categorically and in detail," that demonstrated why he could not comply. 460 U.S. at 755.

On appeal, the Ninth Circuit held that Rylander need not meet his burden of producing evidence once he asserted the privilege against self incrimination. 460 U.S. at 755-56. The Supreme Court disagreed. 460 U.S. at 756-58. The Court noted that the trial court was entirely justified in ignoring Rylander's sworn statement and direct testimony since he refused to submit to cross-examination. 460 U.S. at 757-61. The Court then pointed out that the invocation of the privilege against self incrimination is not a substitute for relevant evidence. 460 U.S. at 761. Since Rylander bore the burden of producing evidence of his inability to comply with the court's order, his invocation of the privilege against self incrimination meant that he produced no evidence and, therefore, could not meet his burden.

The result in *Rylander* is consistent with the application of the state secret privilege. Once the privilege is properly invoked, the privileged information is simply not available and is treated as if it does not exist. *Ellsberg*, 709 F.2d at 64, *see also Monarch Assurance*, 244 F.3d 1359, 1361 (where the privilege is invoked, no adverse inference arises against the government and plaintiff must make a prima facie case without the privileged matter). Thus, to the extent that either party requires proof of the privileged information to carry its burden, it cannot meet that burden. If the plaintiff cannot prove its cause of action absent the privileged information, then summary judgement in favor of the defendant is generally appropriate. *Ellsberg*, 709 F.2d at 64. On the other hand, if the defendant cannot establish a defense without the privileged information, dismissal is generally the proper remedy. *Id.*

None of Zoltek's citations, however, support its argument that the remedy for "offensive" use of the attorney-client privilege and privilege against self-incrimination is preclusion of the motion. Its preclusion argument therefore carries no force when Zoltek attempts to extend that same argument to the state secrets privilege.

#### *4. Zoltek is precluded from arguing waiver here*

As demonstrated by Zoltek's cases, an attempt to offensively assert the privilege against self-incrimination and common law privileges can result in waiver of the privilege. *Echostar*, 448 F.3d at 1298-99 (common law privileges); *XYZ Corp.*, 348 F.3d at 22-23 (Privilege against self incrimination). In this instance, however, Zoltek is precluded from raising any waiver argument by this court's order. Order, Docket No. 361 (Oct. 19, 2007) ("waiver of the state secrets privilege will not be an issue in the motion to strike the Government's motion for

summary judgment"). And, in any event, waivers of executive privileges must be explicit and "should not be lightly inferred." *In Re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (quoting *SCM Corp. v. United States*, 473 F. Supp. 791, 796 (Cust. Ct. 1979)). Any waiver would be strictly limited to the information specifically released, and the privilege would not be waived with respect to related information. *Sealed Case*, 121 F.3d at 741 (waiver of executive privilege only waives the privilege as to the documents specifically released and not to related information). And waivers must be established by a clear, unequivocal statement of a person having authority and at the appropriate time. *Sealed Case*, 121 F.3d at 741; *see also Monarch Assurance*, 244 F.3d at 1362 (no waiver of state secrets privilege resulting from conversations between plaintiff's attorney and CIA officials). No waiver has been shown in this case.

### E. IF ZOLTEK WERE CORRECT, THE CASE STILL MUST BE DISMISSED

If Zoltek were correct in its analysis that the filing of the instant motion constitutes an impermissible "offensive use" of the state secret privilege, the result is dismissal of the infringement claims. Once the state secret privilege is successfully invoked, the privileged evidence is completely removed from the case. *Ellsberg*, 709 F.2d at 65. The result is simply to treat the evidence as being unavailable, as if the witness had died, and "the case will proceed accordingly, with no consequences save those resulting from the loss of the evidence." *Id.*, 709 F.2d at 64 (quoting *McCormick's Handbook of the Law of Evidence* 233 (E. Cleary ed. 1972)). Where the government is a party, "notions of sovereign immunity preclude any further adverse consequence to the government, such as alteration of procedural or substantive rules." *Id.*, 709 F.2d at 64-65.

In its motion to strike, Zoltek claims that invocation of the privilege would deny Zoltek the ability to defend against the government's assertion of invalidity. Pl. Mot. at 2-3 & 15. Zoltek only vaguely alludes to the allegedly denied information and identifies broad categories of inquiry which it asserts it would be denied, including "the use of partially carbonized sheets/mats/coatings on the B-2 Bomber"[3] and whether "anyone provided products produced by a non-infringing process to Northorp for use on the B-2 Bomber."[4] Pl. Mot. at 20. And Zoltek further asserts that it is precluded from inquiring, *inter alia*, "whether anyone in the government was surprised and/or delighted by the results obtained from the products that were used on the B-2 Bomber produced by the Zoltek's patented process."[5] Pl. Mot. at 20.

Zoltek's allegations that infringing material was used by Northrop in the B-2 and that the allegedly infringing material somehow relates to the characteristics of the B-2, make the Northrop employee's knowledge and actions central to the Zoltek's proof of its claims (*see* Pl. Mot. at 20 (reciting areas that Zoltek claims are barred from discovery)) and the Government's denial of those allegations.[6] Thus, according to Zoltek, the information is the "very subject

[3] The government has denied any infringing use in the manufacture of the B-2.

[4] We note that the government has provided copies of the Northrop specifications and Qualified Product Lists (which contain the names and addresses of approved manufacturers) for all carbon fibers and carbon fiber products known to have been approved for use on the aircraft. Def. Exhibit 1; Def's Opp. to Zoltek's 2d Mot. to Compel Prod. of Docs. & Things, Docket No. 78 at Exhibits 44-63, 71, 72 (July 26, 1999). Samples of such materials have also been made available for non-destructive testing. *See* Def's Response to the Ct's Ord. of Mar. 16, 2001, Docket No. 158 (May 15, 2001). Plaintiff has not established infringement for any of those products. *See* note 6 *infra*.

[5] If there was no infringing use in the manufacture of the B-2, as the government claims, there could be no evidence of "surprise or delight" since the lack of use of infringing processes would leave nothing about which to be surprised or delighted.

[6] The Government has denied the claim of infringement and produced the specifications for each of the carbon fiber materials approved for use on the aircraft. The government also

matter of the action" or "central" to the causes of action at issue and, therefore, dismissal is appropriate on theory that the suit is categorically barred as against public policy. *Totten v. United States*, 92 U.S. 105, 107 (1875) ("public policy forbids the maintenance of any suit …, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated"); *Reynolds* 345 U.S. at 11 n.26 (citing *Totten*); *McDonnell Douglas*, 323 F.3d at 102 (citing *Totten*).

According to Zoltek's motion and allegations, the testimony of Northrop employees as to the use (Zoltek's claim) or lack of use (the government's position) would be central to resolving the dispute. It is fair to say that, whatever the actual testimony of Northrop's employees would be, that testimony is as necessary to Zoltek's success in proving infringement as it is the government's success in defending against the claim. *See Crater*, 423 F.3d at 1267 ("the defendants may not be able to disclose what they did for the government, nor will they be able to deny what they did not do for the government, with respect to Crater's coupler"). And, assuming that Zoltek could somehow cobble together a prima facie case (which does not appear to be likely), the government would certainly be denied the testimony that even Zoltek admits is central to the case. *Molerio*, 749 F.2d at 825 (allowing the cause of action to go forward, while precluding government's defense, would have resulted in a "mockery of justice"). Accordingly, dismissal of Zoltek's allegation of infringement with respect to use of the claimed methods in the manufacture of the B-2 aircraft would be appropriate.

---

contends that Zoltek cannot establish that Northrop Grumman employees in fact performed the step of "preselect[ing]" the volume resistivity of the carbon fibers used in the B-2 and/or "preselect[ing]" the surface resistivity of sheet materials.

But, with respect to the present motion, which addresses only the validity of the patent, Zoltek can defend against the motion and, therefore, the motion can proceed. The patent is not secret nor is the process. And Zoltek is only precluded from seeking evidence that is within the privilege. Zoltek can still seek its evidence of secondary considerations from any other source, such as its own employees and agents, others in the field, or any other publicly available source. *Monarch Assurance*, 244 F.3d at 1364 (to maintain balance between the parties "required the court to give a fair amount of leeway to plaintiffs in building their case from non-government sources").

## IV. ZOLTEK'S APPROACH TO OBVIOUSNESS IS UNAVAILING

Zoltek misstates the law of obviousness and therefore reaches the wrong conclusion regarding the ability of the court hear and to decide the present motion. It is beyond cavil that the test for obviousness is that stated in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Under the *Graham* test

> the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., *might* be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries *may* have relevancy.

*Id.* (emphasis added). As is evident from the court's wording, the first three criteria (scope and content of prior art, difference between prior art and claims, and the level of ordinary skill in the art) are mandatory considerations in every case. *Id.* The secondary considerations, however, are only to be considered if present and if relevant. *Id.* This analytical structure was recently

reaffirmed in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. ___, ___, 127 S. Ct. 1727, 1739 (2007), in which the Supreme Court reiterated that, "where appropriate, [courts should] look at any secondary considerations that would prove instructive."

Secondary considerations are only to be considered where relevant evidence of such considerations are presented to the court. *Ormco Corp. v. Align Tech. Inc.*, 463 F.3d 1299, 1312-13 (Fed. Cir. 2007) (rejecting evidence offered as proof of secondary considerations because the alleged beneficial characteristics that were the subject of the evidence did not result from the claimed and novel features of the invention but from other attributes of the commercial embodiment). And, even when taken into account, secondary considerations "do not necessarily control the obviousness conclusion." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007) (citing *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988) (the argument that the court should draw an inference of nonobviousness from strong evidence of secondary considerations was "unpersuasive to the trial court and [is] unpersuasive to us")), *rehearing en banc denied*, 488 F.3d 1377 (Fed. Cir. 2007), *cert. denied*, 552 U.S. ___, 128 S. Ct. 110 (2007) . A strong case of obviousness may overcome even a strong showing of secondary considerations. *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (agreeing that "the district court explicitly stated in its opinion that Leapfrog had provided substantial evidence of commercial success, praise, and long-felt need, but [], given the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion that [the] claim would have been obvious").

In its motion (Pl. Mot at 11-15), Zoltek points to six documents[7] that it claims evidence the non-obviousousness of the invention. At the proper time, the government will dispute the merits of these alleged "secondary considerations" and whether the alleged evidence arises from the claimed and novel features of Zoltek's patented invention. But for now it sufficient to demonstrate that Zoltek proves too much.

With respect to the current motion, Zoltek asserts that the it cannot defend against the motion absent evidence of the alleged secondary considerations. But, it is not precluded from seeking evidence from any source other those that are privileged.

As Zoltek correctly states, Pl. Mot. at 11, the "secondary considerations" include such evidence as commercial success of the invention, long-felt but unresolved need for the invention, failure of others to make the invention, copying of the invention by others, and unexpected results achieved by the invention. *Graham*, 381 U.S. at 14; *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000). By their very nature, one would understand that evidence of all secondary considerations would not be likely be available in every case. As their nature also indicates, for the most part, the evidence is likely to be found with the inventor, inventor's competitors and with experts in the field of endeavor to which the invention relates. Thus, evidence of secondary considerations may come from a variety of sources, not merely from the defendant in litigation.

[7] Zoltek also points to the Air Force's interrogatory answers, prior to the final amendment as evidencing "use of the product produced by the Zoltek's patented process." Pl. Mot. at 13. This is wrong because the interrogatory answers do not establish use of the patented processes. Neither the interrogatories nor the answers include the time or temperature limitations of the process claims, and the answers do not require that the fiber's volume electrical resistivity was preselected to correspond to surface resistivity of a specific product. *See* Pl. Ex. 1 at A8-10.

Here, Zoltek is not completely precluded from obtaining evidence of secondary considerations. The privilege only makes unavailable whatever evidence of secondary considerations – if any – may exist within the scope of its invocation. *Ellsberg*, 709 F.2d at 64-65. Zoltek is free to obtain evidence of secondary considerations from other sources, such as experts and other participants in the carbon fiber manufacturing industry.

Zoltek's argument establishes that it has evidence which it believes supports a conclusion of nonobviousness based on secondary considerations. In its motion, at 13-15, it argues that the documents in the public domain and testimony obtained from competitor's employees are evidence of secondary considerations.[8] Zoltek is free to argue the validity of the patent based on that evidence. More importantly, Zoltek has not demonstrated that it has been *denied any evidence* of secondary considerations by invocation of the state secrets privilege. While summarily stating that invocation of the privilege has prevented Zoltek from "developing the evidence," it fails to state what evidence it has been denied, or to even suggest what evidence it believes it could have developed. As a result, Zoltek has failed to carry its burden of demonstrating that it is entitled to relief. *See* RCFC 56(f).

[8] Other than the Rogers letter, Zoltek fails to tie the identified documents and testimony to any specific secondary consideration. Pl. Mot. at 13-15. With respect to the Rogers letter, Zoltek baldly states that the letter is evidence of commercial success and long-felt unsatisfied need, but does not explain how the letter evidences those considerations. Pl. Mot. at 13. As to the remaining documents and testimony, Zoltek does not specifically connect the putative evidence to any secondary consideration.

## V. GOVERNMENT'S RESPONSE'S TO THE COURT'S QUESTIONS

In its Order of October 19, 2007, the court also set forth four questions and seven subquestions that were to be answered by this round of briefing. For simplicity we adopt the numbering in the court's Order.

### 1. WHERE THE GOVERNMENT IS A DEFENDANT IN A PATENT INFRINGEMENT SUIT, CAN THE GOVERNMENT FILE A MOTION CHALLENGING THE VALIDITY OF THE PLAINTIFF'S PATENT WHEN THE PLAINTIFF ASSERTS THAT IT CANNOT ADEQUATELY OPPOSE THE MOTION WITHOUT THE ABILITY TO DISCOVER INFORMATION WITHHELD FROM IT ON THE BASIS OF A PROPER ASSERTION OF THE STATE SECRETS PRIVILEGE?

Yes, a defendant can file such a motion in accordance with RCFC 56. *See Monarch Assurance*, 244 F.3d at 1361 (affirming summary judgment in favor of the government after invocation of the state secret privilege).

The more significant issue, however, is how must the non-moving party respond? In accordance with RCFC 56, the non-moving party has three options: (1) to contest whether the summary judgment motion presents a prima facie case; (2) to demonstrate a genuine issue of material fact; or (3) to seek discovery or other relief under RCFC 56(f). *Chevron*, 72 Fed. Cl. at 819. If the non-moving party chooses the latter, then the court must determine whether to "refuse the application for judgment or … make such other order as is just." RCFC 56(f).

And in this instance, the privileged information is not central to the motion, nor does it preclude Zoltek from seeking evidence from other sources. *Ellsberg*, 709 F.2d at 64-65. Zoltek's ability to adequately oppose the motion is not foreclosed or even substantially harmed by the invocation.

***a. Why would the rule concerning the invocation of the state secrets privilege in criminal proceedings, e.g. as discussed in Reynolds, 345 U.S. at 12, apply in a civil suit where the government is bringing an "offensive" motion?***

The rule concerning the invocation of the state secrets privilege in criminal proceedings does not apply in a civil suit. *See Reynolds*, 345 U.S. at 12 (the rationale of the criminal cases, "has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented"); *McDonnell Douglas*, 323 F.3d at 1023 (same, quoting *Reynolds*).

***b. What should be the result if the withheld information were merely supportive of a defense, rather than constituting a complete defense? Would it make a difference if the defending party could raise at least some kind of defense without the withheld information? What if the "defense" were an opposition to an "offensive" motion?***

(***i***) *Whether the withheld information is merely supportive of a defense or constitutes a complete defense, the court must evaluate the effect of the privilege in the same manner.* But that is not to say that the result will always be the same: the likelihood of dismissal due to invocation of the state secret privilege may be greater where the withheld information forms a complete defense rather than merely supportive of a defense.

In accordance with well-established case law, the state secret privilege generally operates just as any other privilege: it protects information from discovery in the same manner as does the attorney-client privilege, the marital privilege and physician-patient privilege. Information that is subject to the privilege is simply not available for use in the litigation. *Ellsberg*, 709 F.2d at 64-65. As a result, once the state secrets privilege has been properly invoked, only one question

remains for the court to answer: can the litigation proceed in light of the invocation? *See Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1241-43 (4th Cir. 1985) (discussing "the parties' ability to prove the truth or falsity of the alleged libel without disclosing state secrets"). The answer to that inquiry, in turn, requires two subordinate inquiries. First, can the plaintiff establish a prima facie case without the privileged information? *Monarch Assurance,* 244 F.3d at 1359. And, if so, will the defendant be denied the ability to defend itself by virtue of the absence of the information? *Molerio*,749 F.2d at 825. The court's question focuses on the latter of these two inquiries.

In determining whether the denial of a defense precludes the case from proceedings, courts have generally looked to the effect of the invocation on the truth-seeking process. For example, as discussed in *Molerio*, the court would engage in a "mockery of justice" by allowing the plaintiff to proceed, knowing that the defendant will be denied a defense. *Molerio*,749 F.2d at 825. Rather than seeking truth, the court would be permitting the plaintiff to proceed unchallenged and the court would thus risk that its decision is not based on truth, but on inaccurate information. *Molerio*,749 F.2d at 825.

*Al-Haramain Islamic Found. v. Bush*, ___ F.3d ___, 2007 WL 3407182 (9th Cir. 2007), is also instructive. One issue in that case involved a document (the "Sealed Document") that had been inadvertently produced to the Foundation's counsel. *Al-Haramain Found.*, 2007 WL 3407182 at *3-4. In its order, the trial court permitted the Foundation to proceed "if plaintiffs are able to prove the general point that they were subject to surveillance as revealed in the Sealed Document, without publicly disclosing any other information contained in the Sealed Document." *Al-Haramain Islamic Found. v. Bush*, 451 F. Supp. 2d 1215, 1224 (D. Or. 2006).

The court's order further permitted the plaintiffs to file sealed declarations "attesting to the contents of the document from their memories." 451 F. Supp. 2d at 1229.

The Ninth Circuit rejected the trial court's approach, noting the trial court's approach "suffers from a worst of both world's deficiency: either the memory is wholly accurate, in which case the approach is tantamount to release of the document itself, or the memory is inaccurate, in which case the court is not well-served …." ___ F.3d ___, 2007 WL 3407182 at *13. The reference to the court not being "well-served" highlights the court's concern with the truth-seeking process. Even if well meaning, inaccurate memory would likely lead to an inaccurate result. This is so, as noted above, where the defendant would be prevented from correcting an inaccuracy in the plaintiff's case as a result of the invocation of the privilege, and therefore the court would be making a determination based only on the inaccurate representations of one party.

(***ii***) *It <u>does</u> make a difference whether the defending party can raise at least some kind of defense without the withheld information.* For example in *Reynolds*, the Court noted that the Air Force had offered to allow the deposition of the surviving crew members as an alternative source to the accident investigation report:

> [I]t should be possible for respondents to adduce the essential facts as to causation without resort to material touching upon military secrets. Respondents were given a[] reasonable opportunity to do just that, when petitioner formally offered to make the surviving crew members available for examination. We think that offer should have been accepted.

*Reynolds*, 345 U.S. at 11. But, the court must determine whether the case can proceed in the absence of the privileged information, or whether the case must be dismissed. *Monarch Assurance*, 244 F.3d at 1365; *Fitzgerald*, 776 F.2d at 1241-43.

And as the District of Columbia Circuit noted in *Ellsberg*, the effect of invoking the privilege is simply to make the evidence unavailable and thereby to leave each party to put together its case or defense as best it can. 709 F.2d at 64-65. The same is true here. Zoltek has other sources where it may seek evidence of secondary considerations. And, as noted above, secondary considerations need not always be present.

(***iii***) *Finally, the procedural posture of the case is less significant than the effect on the court's ability to decide the issues.* The ultimate question to be answered by the court before proceeding is whether the privileged matter is the "very subject matter of the action," thereby preventing trial in the absence the privileged evidence. *McDonnell Douglas*, 323 F.3d 1026. If it cannot be tried, then the case must be dismissed. If it can, then the privilege merely blocks the use of the evidence. *Monarch Assurance*, 244 F.3d at 1364.

### 2. DOES THE SCOPE OF THE GOVERNMENT'S ASSERTION OF THE STATE SECRETS PRIVILEGE IN THIS CASE NECESSARILY ALSO COVER ALL EVIDENCE OF SECONDARY CONSIDERATIONS?

No, the scope of the state secret privilege does not preclude presentation of evidence of secondary considerations from any publicly available source. The commonly identified secondary considerations ("commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results") may be found in a variety of sources, such as experts in the field, competitors, publications and Zoltek itself (for example, Zoltek should be aware of its invention's commercial success).[9] Zotlek has focused on only one source: Northrop. The

[9] Part of the difficulty for Zoltek, however, is that Zoltek's own records fail to support a conclusion of non-obviousness. *See* Def. Exhibit 2. Zoltek apparently has never manufactured commercial quantities of carbon fibers by the claimed process. *Id.* Thus, Zoltek, cannot claim commercial success based on Zoltek's or Stackpole's own activities and, apparently, is left with

discovery it seeks, however, is unavailable, as if the witness has died. *Ellsberg*, 709 F.2d at 64-65. But the loss of this discovery does not mean that the patent owner has lost all evidence of secondary considerations.

***a. In the context of the motion that Plaintiff wants the Court to strike in this case, is it appropriate for the Court to examine the propriety of the invocation of the state secrets privilege on an item-by-item basis to determine whether evidence of secondary considerations of non-obviousness is being improperly withheld?***

No, an item-by-item review would violate the Supreme Court's admonition that trial court's "should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." *Reynolds*, 345 U.S. at 10.

First, the court misstates the inquiry. Once the privilege is properly invoked as we are to assume in this brief (*see* Order, Docket No. 361 (Oct. 19, 2007)), the information within the scope of the privilege cannot be "improperly withheld." Rather, it is properly withheld as being within the scope of the properly asserted privilege, even if it would be helpful to plaintiff. In this respect, the state secrets privilege is no different than any other privilege: the effect of any privilege is to deny otherwise relevant and probative evidence to the opposing party.

Second, as the Federal Circuit has stated, the court need "only be satisfied that, under the particular circumstances of the case, 'there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.'" *McDonnell Douglas*, 323 F.3d at 1021 (quoting *Reynolds*, 345 U.S. at 10). Once the

---

hoping to find evidence of secondary considerations through the efforts of others.

court is satisfied that there is reasonable danger of disclosure, the inquiry into the propriety of the invocation is complete and "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *Reynolds*, 345 U.S. at 11; *McDonnell Douglas*, 323 F.3d at 1021. At that point, the only question for the court is whether the case can proceed.

Third, the court's suggestion is impractical in this instance. The court's suggested procedure would only be practical if the privilege had been asserted to a small number of discretely identifiable documents. Here, the Secretary has invoked the privilege with respect to two categories of information. The number of documents within those categories may be extensive. Thus, the court would be required to review all items within the Secretary's privileged categories looking for evidence that matches plaintiff's desires, and then to make individual judgments regarding the relevance of each document to plaintiff's case and the potential harm to national security that may be result from disclosure. The last inquiry in particular would be problematic in light of *Reynolds*. And even if potential evidence was found, the court may not be able to inform Zoltek since the information may be classified.[10] Thus, if the court did conduct such an inquiry it may still be left with a difficult conundrum. *Cf. Al-Haramain Found.*, 2007 WL 3407182 at *13 (discussing how allowing witnesses "attest[]to the contents of the document from their memories" suffered "from a worst of both world's deficiency"); *Molerio*, 769 F.2d at 825 ("Although there may be enough circumstantial evidence to permit a jury to come to that

[10] In this case, the information that is within the scope of Secretary's invocation is also classified. *See* Pl. Mot., Exhibit 2 at A 32-34, ¶¶ 14, 16 & 17. The Secretary also determined that the plaintiff's counsel did not have an "need to know" the information and therefore denied them access to the special access program involving the B-2. That determination is not reviewable. *See Department of the Navy v. Egan*, 484 U.S. 518, 529 (1988) ("the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it").

erroneous conclusion, it would be a mockery of justice for the court – knowing the erroneousness – to participate in that exercise").

***b. In the context of Plaintiff's motion to strike in this case, why would discovery other than [by] depositions, such as interrogatories, not be adequate for the Plaintiff to discover evidence of secondary considerations of non-obviousness? Would the Government likely decline to answer each interrogatory based on the state secrets privilege?***

(***i***) *Other means of discovery are not adequate because the state secrets privilege is absolute*. *McDonnell Douglas*, 323 F.3d at 1021 (citing *Ellsberg*, 709 F.2d at 57). Once properly invoked, it not subject to exception. *McDonnell Douglas*, 323 F.3d at 1021 (quoting *Reynolds*, 345 U.S. at 11). At this point the Secretary's invocation must be honored and cannot be avoided. To the extent that information is available that is not covered by the state secrets privilege, Zoltek may still seek it by any available means. *See Monarch Assurance*, 244 F.3d at 1364.

(***ii***) *In the abstract, the government cannot state whether it would be "likely to decline" answering an interrogatory*. We note, however, that Zoltek's infringement argument seems to contend that Northrop must somehow have performed the "preselecting" steps in the process claims. Zoltek's Combined Reply Br. in Support of 2d Mot. for an Ord. to Show Cause Against Northrop Grumman Corp. & to Compel Prod. of Non-Classified Docs., Docket No. 331, at 10-13 (Sept. 11, 2006).[11] Assuming that Zoltek would be seeking such "preselecting" information from Northrop, the information sought would appear likely to be "information pertaining to the

[11] The cited material was subsequently stricken by the court for violation of the court's rules and prior order. Order, Docket No. 336, at 2 (Oct. 24, 2006). Nevertheless, the information stated there is helpful to the current inquiry in that it explains Zoltek's claimed need for discovery from Northrop.

relationship or lack thereof between the electrical characteristics of the B-2 aircraft and the carbon fibers used in its construction" or "information relating to any experiments, testing, studies or other developmental activities by Northrop Grumman Corporation relating to the material characteristics of carbon fibers or carbon fiber material used … on the B-2" as set forth in the Secretary's invocation. Thus, if Zoltek were to attempt to seek such information from the government,[12] the government would "likely decline to answer each interrogatory based on the state secrets privilege."

### 3. CAN THE COURT RULE ON OBVIOUSNESS WITHOUT HEARING ALL EVIDENCE OF SECONDARY CONSIDERATIONS?

Yes. The effect of the privilege is simply to remove the evidence from consideration, as if the witness had died. *Ellsberg*, 709 F.2d at 64-65. So long as the court can conduct a trial without risking the very secrets that the privilege is meant to protect, the case can proceed. *McDonnell Douglas*, 323 F.3d at 1026.

#### ***a. In this case, does Plaintiff have any other evidence of secondary considerations of non-obviousness?***

Zoltek claims it has at least the seven documents and witnesses identified at pages 13-15 of its Motion. While the government may dispute the interpretation and weight to be given to the putative evidence, the authenticity of the documents has not been questioned, and the witnesses testimony has been properly recorded (although the parties dispute the import and meaning of the testimony). And none of the documents and testimony cited in Zoltek's brief are within the

[12] We note that interrogatories may only be served on parties (*see* RCFC 33) and that Northrop is not a party. Thus, interrogatories could only be served on the Government.

scope of the Secretary's invocation of the privilege. In addition, Zoltek is free to develop evidence of secondary considerations other than the privileged information from sources such as competitors in the field, experts, or its own employees.

***b. How can a party opposing a motion for summary judgment of invalidity prove that a genuine issue of material fact exists where such opposing party is not aware of all of the facts because some are being withheld by the moving party because of a proper assertion of the state secrets privilege?***

Whenever a privilege is at issue, the privilege will limit the ability of privilege-holder's opponent to obtain what would otherwise be available evidence. Thus, as in any case involving a privileged information, the opponent must marshal its facts from those available to it. *See Ellsberg*, 709 F.2d at 64-65. Similarly, where through the passage of time, evidence is lost due to death or loss of memory of witnesses, the non-moving party must proceed to make its case from the evidence it can prove. *Id.* Here, Zoltek contends that it has at least seven documents or witnesses evidencing secondary considerations available to it.

***c. If a patent's validity is challenged on the basis of obviousness, can a court examine privileged information pertaining to secondary considerations of nonobviousness in camera in order to determine whether a genuine issue of material fact exists as to obviousness?***

Here we agree with Zoltek, albeit for a different reason. The court should not review the privileged matter in order to evaluate whether a genuine issue of material facts exists. Such a procedure would create a substantial risk of disclosing the privileged information. For example, if the court were to find that a genuine issue of material fact exists, it would suggest which averments by Zoltek were substantiated by the court's review of privileged information. And as

noted by the Fourth Circuit in *Farnsworth Cannon*, any material considered by the court on the merits should "be introduced in a fashion in which the plaintiff has access to it." 635 F.2d at 275 (quoting *Kinoy v. Mitchell*, 67 F.R.D. 1, 15 (S.D.N.Y.1975) ("Either the documents are privileged, and the litigation must continue as best it can without them, or they should be disclosed at least to the parties, in which case the Court will rule after full argument on the merits")).

### 4. EXPLAIN THE RELEVANCE OF RCFC 56(F) IN A SITUATION WHERE A BROAD ASSERTION OF THE STATE SECRETS PRIVILEGE HAS BEEN MADE.

RCFC 56(f) provides the mechanism by which the non-moving party may avoid summary judgment by demonstrating that it cannot "for reasons stated present … facts essential to justify the party's opposition" and therefore the court "may refuse the application for judgment or … may make such other order as is just." RCFC 56(f). In cases such as the present, it offers Zoltek, as non-moving party, the opportunity to demonstrate that it cannot defend against summary judgment due to invocation of the privilege and thereby obtain a dismissal of the case.

## VI. CONCLUSION

For the reasons stated above, Zoltek's motion to strike is contrary to controlling law and therefore must be denied.

Respectfully Submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN FARGO
Director

*s/Gary L. Hausken*
GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345
Attorneys for the United States

January 4, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION,<br>a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 96-166C<br><br>Chief Judge Edward J. Damich |

**DEFENDANT'S OPPOSITION TO ZOLTEK'S MOTION [DOCKET NO. 363]**

**TO STRIKE THE GOVERNMENT'S SUMMARY JUDGMENT MOTION**

# EXHIBIT 1

**U.S. Department of Justice**

Civil Division

GLH
154-96-166

Telephone: (202) 307-0342
Facsimile: (202) 307-0345

*Washington, D.C. 20530*

May 15, 2001

**By Federal Express**

Dean A. Monco, Esq.
Wood, Phillip, VanSanten, Clark & Mortimer
Suite 3800
500 W. Madison Street
Chicago, Illinois 60661-2511

Re: Zoltek Corporation v. United States,
Court of Federal Claims No. 96-166C

Dear Mr. Monco:

In accordance with "Defendant's Response to the Court's Order of March 16, 2001," I am forwarding the Qualified Products Lists corresponding to each of the materials that we are producing in response to Categories 1 and 2 of the court's order (Production Nos. 5660-674). The Qualified Products Lists are Northrop documents that indicate the manufacturers and product numbers for the materials that are approved for use on B-2 aircraft. The documents provided are copies of those Qualified Products Lists within defendant's possession or control.

QPL-911 is the Qualified Product List corresponding to MSA-911 and identifies the manufacturer of the carbon fiber used in the manufacturing the MS-419, Types I and II, surfacer. On information and belief, Northrop has redesignated the carbon fiber material identified in QPL-911 as QFM-145. We have previously produced to you a copy of QFM-145 (Production No. 5474).

Very truly yours,

GARY L. HAUSKEN
Attorney
Commercial Litigation Branch
Civil Division

Encls.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, | ) | No. 96-166C |
| v. | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO ZOLTEK'S MOTION [DOCKET NO. 363]**

**TO STRIKE THE GOVERNMENT'S SUMMARY JUDGMENT MOTION**

# EXHIBIT 2

WOOD, PHILLIPS, VANSANTEN, CLARK & MORTIMER
FOUNDED IN 1876
ATTORNEYS AT LAW
SUITE 3800
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661-2511

RICHARD S. PHILLIPS
WILLIAM A. VANSANTEN
JEFFREY L. CLARK
JOHN S. MORTIMER
F. WILLIAM McLAUGHLIN
DEAN A. MONCO
JEFFERY N. FAIRCHILD

OF COUNSEL
ROBERT V. JAMBOR
L. DANIEL HO

HAROLD A. WILLIAMSON

TECHNICAL SPECIALIST
CHRISTOPHER D. WOOD, PH.D.
HUI ZHANG, PH.D.

TELEPHONE
(312) 876-1800
TELECOPIER
(312) 876-2020
E-MAIL
info@woodphillips.com

RETIRED
JAMES C. WOOD

G. HAUSKEN

Received

RECEIVED
2002 JAN 30 A 9: 2
OFFICE OF MGMT INFORMATION
CIVIL DIVISION

November 6, 2001

Via Telefax - Confirmation by Mail
Gary L. Hausken, Esq.
Commercial Litigation Branch - Civil Division
United States Dept. of Justice
1100 L Street, N.W.
Room 11115
Washington D.C. 20005

Re: ZOLTEK v. U.S.

Dear Gary:

We are in receipt of your letter of November 5, 2001 regarding the inspection of documents at Zoltek, scheduled to begin November 7, 2001. Please be advised that you will be permitted to review Zoltek documents regarding the manufacture of carbon fibers. However, there are some points in your letter that require clarification.

Prior to Zoltek's acquisition of Stackpole Fibers Company, Zoltek did not manufacture carbon fibers. Zoltek produced primarily gaskets. Stackpole Fibers itself was more of a research and development company than a large producer of commercial carbon fibers.

Sometime after Zoltek's acquisition of Stackpole, a large fire occurred at the former Stackpole facilities in Lowell, Massachusetts. With few exceptions, the fire consumed all of Zoltek's, formerly Stackpole's corporate records. This is the context in which Zoltek's document production will take place.

Zoltek has never made commercial quantities of the product disclosed and claimed in U.S. Patent No. 34,162. The price structure, production quantities and product

characteristics of currently produced carbon fiber products at Zoltek are completely distinct from the products disclosed and claimed in U.S. Patent No. 34,162.

As previously stated, the U.S. will be permitted to inspect Zoltek's manufacturing records regarding the production of carbon fibers. Zoltek's financial records pertaining to the figures appearing in Zoltek's annual reports and statements, previously provided to you, will also be available for inspection. If you have any questions regarding the content of this letter or any previous correspondence, please contact us.

Sincerely,

Dean A. Monco

DAM:bj
cc: Zsolt Rumy (via telefax/confirmation by mail)
John S. Mortimer