# In the United States Court of Federal Claims

No. 96-166 C

(Reissued for Publication: January 23, 2009)
(Originally Filed Under Seal: January 16, 2009)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * *<br><br>**ZOLTEK CORPORATION**,<br><br>                    Plaintiff,<br>v.<br><br>**THE UNITED STATES**,<br><br>                    Defendant.<br><br>* * * * * * * * * * * * * * * * * * * * * | Transfer under 28 U.S.C. § 1631; patent infringement claims arising in a foreign country; government contractor immunity from patent infringement liability; "authorization or consent"; relation between 28 U.S.C. § 1498 and 35 U.S.C. § 271; jurisdiction to hear infringement claims under 35 U.S.C. § 271(g); leave to amend complaint. |

*Dean A. Monco* and *John S. Mortimer* of Wood Phillips, Chicago, IL, for Plaintiff.

*Gary L. Hausken*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant, with whom were *John Fargo*, Director, and *Peter Keisler*, Assistant Attorney General.

**OPINION AND ORDER**

**DAMICH**, Chief Judge:

   This patent infringement case is before the Court on a motion by Plaintiff Zoltek Corporation ("Zoltek") to transfer a portion of the case, pursuant to 28 U.S.C. § 1631, to the United States District Court for the Northern District of Georgia. On March 31, 2006, the United States Court of Appeals for the Federal Circuit held that this court does not have jurisdiction to hear any of Zoltek's claims against the Government concerning certain allegedly infringing components of the F-22 Fighter Plane ("the F-22"). *Zoltek Corp. v. United States*, 442 F.3d 1345, 1353 (Fed. Cir. 2006). As a result, Zoltek now seeks to transfer the portion of this case relating to the F-22 to the Northern District of Georgia and to substitute the contractor that makes the F-22, Lockheed Martin Corporation ("Lockheed"), as defendant. The Government opposes the transfer, its two main arguments being (1) that Zoltek's complaint does not recite a claim for

patent infringement over which the Northern District of Georgia would have had jurisdiction and (2) that no court has jurisdiction over Zoltek's F-22 claim, per the Federal Circuit's decision and the provisions of 28 U.S.C. § 1498(a).

To be transferable under § 1631, a claim must be alleged as a cause of action over which the transferee court would have had jurisdiction on the date the original complaint was filed. *Fisherman's Harvest, Inc. v. PBS & J*, 490 F.3d 1371, 1374 (Fed. Cir. 2007). As the Government points out, currently, Zoltek's complaint does not recite a claim for patent infringement over which the Northern District of Georgia would have had jurisdiction. However, as the Court will discuss below, Zoltek's complaint could easily be amended to rephrase its F-22 claim as one brought under 35 U.S.C. § 271(g), that is, one over which the transferee court would have had jurisdiction. Given that proper jurisdiction over Zoltek's F-22 claim was uncertain enough to be accepted by the Federal Circuit as a certified question, the Court finds it equitable to grant Zoltek leave to amend its complaint to assert a claim against Lockheed. In addition, for the reasons stated below, this Court does not agree with the Government that no court has jurisdiction over Zoltek's F-22 claim per the Federal Circuit's decision and the provisions of 28 U.S.C. § 1498(a). Therefore, once Zoltek submits an amended complaint, phrased consistently with the principles discussed in this opinion, the Court will grant Zoltek's motion to transfer.

## I.  Background

This is a patent infringement case concerning alleged infringement of United States Patent No. Re. 34,162 ("the '162 patent"), belonging to Zoltek Corporation. Zoltek's statutory basis for bringing an action in this Court is 28 U.S.C. § 1498(a), which sets forth a remedy of suit against the Government in the Court of Federal Claims for patentees whose patents are "used or manufactured" by government contractors acting with the "authorization or consent" of the Government. Zoltek has alleged that the Government, by and through the Departments of the Air Force and the Navy, caused the manufacture of carbon fiber products according to processes covered by the '162 patent. 2d Am. Compl. ¶¶ 6, 7. These products were incorporated into, *inter alia*, the B-2 Stealth Bomber and the F-22 Fighter Plane. *Id.*

The asserted claims of the '162 patent recite methods for manufacturing sheet or mat products using partially carbonized fibers. In general, the methods involve steps of (1) partially carbonizing fiber starting materials, then (2) forming the partially carbonized fibers into sheet or mat products. Claim 1 is representative of the asserted method claims:

> A method of manufacturing a plurality of different value controlled resistivity carbon fiber sheet products employing a carbonizable fiber starting material; said method comprising selectively partially carbonizing previously oxidized and stabilized fiber starting material for a predetermined time period in an oxygen free atmosphere within a furnace at selected temperature values within a temperature range from 370 degrees Centigrade to about 1300 degrees Centigrade by soaking the stabilized fiber starting material at the selected temperature for the predetermined period of time to provide

a preselected known volume electrical resistivity to the partially carbonized fibers corresponding to that volume electrical resistivity value required to provide the preselected desired surface resistance value for the finished sheet products, and thereafter processing the partially carbonized fibers into homogenous carbon fiber sheet products having the preselected desired surface electrical resistances.

2d. Am. Compl. at App. A.

Zoltek's present motion to transfer concerns only the F-22 Fighter Plane (not the B-2 Stealth Bomber), in which two types of allegedly infringing sheet products are used. Pl.'s Mot. to Transfer at 1. The fibers used to make both types of sheet products are known as Nicalon and Tyranno. *See Zoltek Corp. v. United States* ("*Zoltek II*"), 58 Fed. Cl. 688, 690 (2003); *Zoltek Corp. v. United States* ("*Zoltek III*"), 442 F.3d 1345, 1349 (2006). The process used to manufacture the fibers takes place in Japan. *Id.* There is disagreement–inadvertent or otherwise–between the Federal Circuit and this Court regarding the fact of where the fibers are formed into sheet products (whether in Japan or in the U.S.), but this disagreement does not affect the Court's decision.[1]

In the Government's 2001 motion for partial summary judgment, the Government raised 28 U.S.C. § 1498(c) as an affirmative defense to liability. Def.'s Mot. for Partial Summ. J. at 1, 4. Section 1498(c) states that "[t]he provisions of this section shall not apply to any claim arising in a foreign country." The Government asserted that Zoltek's F-22 claim "arose" in a foreign country within the meaning of § 1498(c), because the accused processes include the manufacture of the Nicalon and Tyranno fibers in Japan. Thus, the Government reasoned, pursuant to the nullifying provision of § 1498(c), the Government could not be found liable under § 1498(a). Def.'s Mot. for Partial Summ. J. at 14.

In this Court's 2002 opinion on the Government's motion for partial summary judgment, it held that, since the accused processes included the manufacture of the Nicalon and Tyranno

---

[1] This Court found that both the Nicalon and Tyranno fibers are manufactured in Japan, and that both fibers are then shipped, in fiber form, to the United States for subsequent manufacture into sheet products. *Zoltek II*, 58 Fed. Cl. at 690 ("The Nicalon fibers are manufactured in Japan . . . and are then distributed in the United States; the Tyranno fibers are also manufactured in Japan . . . . Only the act of forming the sheet product from the imported fibers takes place in the United States. . . ."). On appeal, however, the Federal Circuit evidently disagreed with this finding, concluding that the Nicalon fibers were manufactured *and* formed into their sheet products in Japan. *Zoltek III*, 442 F.3d at 1349 ("[Nicalon] fibers are partially carbonized and manufactured into sheets in Japan, which are then imported into the United States."). The Federal Circuit did, however, agree that the Tyranno fibers were manufactured in Japan and shipped, as fibers, to the United States where they are then formed into sheet products. *Id.* ("The Tyranno fibers are manufactured exclusively in Japan, but they are processed into mats in the United States.").

fibers in Japan, Zoltek's F-22 claim arose in a foreign country and therefore could not be brought against the Government because of § 1498(c). *Zoltek Corp. v United States* ("*Zoltek I*"), 51 Fed. Cl. 829, 837-38 (2002). In determining when a claim "arose in a foreign country," this Court looked to the language of 35 U.S.C. § 271(a) (the Patent Act), which requires that the infringing act be performed within the United States. *Id.* at 835-36.

The relation between § 1498 and the Patent Act was also raised, when, during briefing on the Government's motion for partial summary judgment, Zoltek pointed to § 271(g) of the Patent Act, which provides a remedy for the importation, sale, offer to sell, or use of a product made by a process patented in the U.S., seemingly arguing that the remedies in this provision would apply here through § 1498. Pl.'s Mem. in Opp'n to Def.'s Mot. for Partial Summ. J. at 12. Thus, despite the fact that the patented process was not practiced entirely in the U.S., Zoltek argued that it would still have a cause of action against the Government. But this Court held that Zoltek could not bring such a claim against the Government because § 1498, by its terms, does not provide for such a remedy, despite the fact that, consequently, Zoltek would not have any other statutory cause of action against the Government for its grievance. Though this Court could find no indication in the legislative history of § 271(g) that Congress made a conscious decision not to include a similar provision in § 1498, the Court concluded it was unwarranted to assert that the Government's liability under § 1498 would automatically expand whenever liability under the Patent Act was expanded. The Court stated that, "[b]ecause nothing in the legislative history indicates that Congress intended for the meaning and effect of section 1498 to change in congruence with changes in 35 U.S.C. § 271, the Court is constrained to hold that section 1498 does not apply to all forms of direct infringement as currently defined in 35 U.S.C. § 271." *Zoltek I*, 51 Fed. Cl. at 837.

On appeal, the Federal Circuit affirmed this Court's judgment, stating that "where, as here, not all steps of a patented process have been performed in the United States, government liability does not exist pursuant to section 1498(a)."[2] *Zoltek III*, 442 F.3d at 1350. The Federal Circuit, however, did not base its ruling (as this Court did) on the conclusion that § 1498(c) negates the operation of § 1498(a) because the infringement claims arose in a foreign country. Indeed, the *per curiam* decision did not mention § 1498(c) at all. Instead, the Federal Circuit focused on a possible connection between § 1498 and § 271 of the Patent Act. Pointing to its holding in *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1316 (Fed. Cir. 2005), the Federal Circuit held that "direct infringement under section 271(a) is a necessary predicate for government liability under section 1498" and that "a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country." *Zoltek III*, 442 F.3d at 1350 (quoting *NTP*, 418 F.3d at 1316, 1318). This Court understands the Federal Circuit to be saying that, because § 271(a) requires all steps of a process to be performed in the United States and because there must be a direct infringement under § 271(a) for § 1498(a)

---

[2] The Federal Circuit also held that patent infringement claims against the Government could not independently be brought under the Fifth Amendment as a taking of property. *Zoltek III*, 442 F.3d at 1353.

to operate, Zoltek's F-22 claim is barred.  In other words, if there can be no infringement under § 271(a), there can be no infringement under § 1498(a).[3]  A petition for *certiorari* was denied. *Zoltek Corp. v. United States*, 127 S.Ct. 2936 (2007).

## II.   Transfer Under 28 U.S.C. § 1631

### A.   Application of § 1631

The transfer statute under which Zoltek has brought the present motion, 28 U.S.C. § 1631, permits transfer of a civil action to another jurisdiction when three conditions are met: (1) the transferor court lacks jurisdiction, (2) the transferee court would have had jurisdiction at the time the original case was filed, and (3) transfer would serve the interests of justice.[4]  In the present case, the Federal Circuit has already concluded that this Court lacks jurisdiction to hear Zoltek's infringement claims against the Government regarding the F-22, so only the latter two requirements of § 1631 are disputed.  Accordingly, this Court now turns to the second two prongs of the § 1631 test, namely, whether the transferee court would have had jurisdiction over Zoltek's F-22 claim at the time the original case was filed and whether transfer would be in the interest of justice.[5]

---

[3]   In another place in the *per curiam* opinion, the Federal Circuit stated:  "We affirm the trial court's conclusion that § 1498(a) bars Zoltek's claims." *Zoltek III*, 442 F.3d at 1350.  This Court believes that this statement is imprecise, because this Court concluded that § 1498(c)–not (a)–bars Zoltek's claim by eliminating the cause of action in § 1498(a).  *Zoltek I*, 51 Fed. Cl. at 836-38.  But if the Federal Circuit means to affirm the actual conclusion of this Court, then the Federal Circuit has stated two rationales for its decision, one based on the language of § 1498 (this Court's rationale), the other based on looking first to § 271 of the Patent Act.

[4]   Section 1631 states:  "Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed . . . ."  28 U.S.C. § 1631.

[5]   The Court notes that Zoltek is requesting transfer of only a portion of its civil action, the F-22 claim.  Pl.'s Mot. to Transfer at 1.  Though § 1631 provides for transfer in terms of an entire "civil action," the Federal Circuit has held that transfer of less than all claims alleged in a civil action is permissible.  *United States v. County of Cook, Ill.*, 170 F.3d 1084, 1089 (Fed. Cir. 1999).  The Government concedes that Zoltek's allegations regarding the F-22 are "a separate claim" for purposes of transfer, following the Federal Circuit's holding in *County of Cook*.  Def.'s Opp'n to Pl.'s Mot. to Transfer at 2 n.2.

### B.     The Parties' Arguments on Transfer

As to the second prong of the § 1631 test (whether the transferee court would have had jurisdiction at the time the original case was filed), Zoltek contends simply that because § 1498(a) does not apply in the present circumstances, "there is no question that this action could have originally been brought in . . . the Northern District of Georgia." Pl.'s Mot. to Transfer at 5. However, there is quite a question. Zoltek does not even address the rather problematic fact that its complaint does not now–and has never–expressly included a claim for infringement under § 271 against Lockheed. Instead, Zoltek makes note of Lockheed's substantial place of business in Marietta, Georgia, and that "a substantial portion of the work of building the F-22 Fighter plane" occurred in Georgia.[6] *Id*. This is, of course, an argument on venue, not jurisdiction. On jurisdiction, Zoltek merely offers the Court its assurances that it will move to appropriately amend its complaint in the Northern District of Georgia to name Lockheed as defendant, once the F-22 claim is transferred. *Id.* at 4.

In regard to the third prong of the § 1631 test (whether transfer would serve the interests of justice), Zoltek notes that it is entitled to its day in court, that Lockheed was made aware of this litigation through participation in discovery at least as early as 1997, and that transferring the F-22 portion of the case, as opposed to requiring Zoltek to file an entirely new suit, would potentially avoid a statute of limitations bar. Pl.'s Mot. to Transfer at 5-6.

The Government's argument on the second prong of § 1631 is that the Northern District of Georgia would not have had jurisdiction over Zoltek's F-22 claim at the time the original case was filed because the claim has been presented (at least to this Court) as one against the Government. The Government primarily argues, however, that because Lockheed was operating with the "authorization or consent" of the Government, Lockheed could not be sued–period–in district court. Def.'s Opp'n to Pl.'s Mot. to Transfer at 3-4. In other words, even if Lockheed had been named as a defendant in the case brought before this Court, the claim could not have been transferred. Thus, in effect, the Government has taken the position that § 1498(c) bars jurisdiction in this court and § 1498(a) bars jurisdiction in all other courts. The result would be that no court has jurisdiction to hear a claim concerning the allegedly infringing carbon fiber sheet products in the F-22.

Regarding the third prong, the Government believes that transfer would not serve the interests of justice for two reasons. First, the Government contends that transfer would be "futile," since the Northern District of Georgia would not have had jurisdiction over the F-22 claim because Lockheed was acting with the Government's "authorization or consent." Def.'s

---

[6]     Zoltek chose to provide the Court an article from http://www.wikipedia.com, describing Lockheed's design progress with the F-22, as evidence that the manufacture of F-22 fighters takes place in Georgia. Pl.'s Mot. to Transfer at Ex. 2. While the reliability and probative value of such an exhibit is extraordinarily low, the Government has not challenged that the Northern District of Georgia would be the proper venue for an action against Lockheed.

Opp'n to Pl.'s Mot. to Transfer. at 5.  In addition, the Government believes that transfer would be unfair to Lockheed because "Plaintiff's original 1996 Complaint against the United States under § 1498 certainly could not give Lockheed Martin fair notice that it may be a defendant 11 years later on a claim of infringement under § 271." *Id.* at 6.

### III.     Jurisdiction in the Northern District of Georgia

Given the Government's broad argument, this Court will first determine whether any court other than the Court of Federal Claims could have had jurisdiction over the F-22 claim, and then will proceed to consider the more narrow issue of whether Zoltek has alleged a claim over which the Northern District of Georgia in particular would have had jurisdiction.

####     A.     The Effect of § 1498(a) on Infringement Claims Against Contractors When § 1498(c) Applies

The parties have presented opposing interpretations as to the effect of § 1498(a) on a claim for patent infringement brought against a contractor, when § 1498(c) applies.  *See* Pl.'s Reply at 4; Def.'s Opp'n at 4.  The Government's argument that § 1498(a) operates to bar suit against government contractors, even when it provides no cause of action against the Government because of the operation of § 1498(c), raises the issue of statutory construction.  However, the Government in its brief does not parse the language of § 1498(c) in support of its interpretation.  Instead, it relies on its view of the general purpose of § 1498(a), based on a statement of the U.S. Supreme Court in *Richmond Screw Anchor v. United States*, 275 U.S. 331, 48 S. Ct. 194 (1928).  But the first step in construing a statute is to determine the unambiguous meaning, if any, of the statutory language.  If the statutory language is unambiguous and "the statutory scheme is coherent and consistent," there is no need to go further.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 846 (1997) (quoting *United States v Ron Pair Enters., Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030 (1989)); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 760 (1999); *Vesser v. Office of Personnel Management*, 29 F.3d 600, 605 n.3 (Fed. Cir, 1994).  This direction on statutory construction from the Supreme Court indicates that this Court may stop its inquiry into the meaning of § 1498 once it has determined the plain meaning of the unambiguous language of the section.  However, since the Supreme Court has also opined specifically on the statutory purpose of § 1498–at least as it existed in 1928–this Court will first construe the language of § 1498 and then turn to the more general argument of the Government based on statutory purpose as described in *Richmond Screw Anchor*.

#####          1.     The Language and Effect of § 1498(a) and § 1498(c)

Section 1498(a) states in relevant part:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof

or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a).

Section 1498(c) states: "*The provisions of this section* shall not apply to any claim arising in a foreign country." 28 U.S.C. § 1498(c) (emphasis added).

Thus, by the plain language of § 1498(c) "[t]he provisions" of § 1498 as a whole would not apply in the event that an infringement claim arose in another country. There is no limiting terminology found in either subsection (c) or subsection (a) which would suggest that subsection (c) operates to nullify only selective parts of subsection (a). Thus, § 1498(c) renders inapplicable *all* of the provisions of § 1498 when claims under § 1498(a) arise in a foreign country, including the waiver of sovereign immunity and the language of § 1498(a) stating that a patentee's "remedy *shall* be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and *entire* compensation." 28 U.S.C. 1498(a) (emphasis added). In other words, when a claim arises in a foreign country, under § 1498(c), both the language providing for Government liability *and* the language insulating government contractors from patent infringement liability for the "use" or "manufacture" of an invention "for" the government are rendered inapplicable. Thus, per the plain language of § 1498, the Court sees no reason why a government contractor could not be subject to suit under § 271 when § 1498(c) has been triggered. *See Leesona Corp. v. United States*, 599 F.2d 958, 968 (Ct. Cl. 1979) ("There is, however, no attempt in s. 1498, as we construe it, to authorize uncompensated expropriation of patents . . . .").

### 2. *Richmond Screw Anchor* and the Purpose of § 1498(a)

Faced with the clear language of § 1498, it is not surprising that the Government does not spend time on statutory interpretation; instead, it leaps directly to Congress's intent in enacting the pertinent portions of § 1498(a). Def.'s Opp'n to Pl.'s Mot. to Transfer at 3-4. But such a leap to Congressional intent without first grappling with the language of a statute is unwarranted, as has been mentioned. *Shell Oil*, 519 U.S. at 340, 117 S. Ct. at 846. Not only does the Government not examine the language of the statute, but it also does not discuss the legislative history of § 1498, all the while purporting to be looking for Congress's intent. Instead, the Government cites a string of cases for the proposition that contractors acting with Government "authorization or consent" cannot be found liable for patent infringement and focuses on an ambiguous quote from the 1928 Supreme Court opinion in *Richmond Screw Anchor*, 275 U.S. at 343, 48 S. Ct. at 197, to the effect that Congress's intent in enacting § 1498(a) was to insulate contractors from patent infringement "of every kind." *See* Def.'s Opp'n to Pl.'s Mot. to Transfer at 3-4.

It is difficult to see the relevance of citing cases that discuss what constitutes

"authorization or consent." True, the second paragraph of § 1498(a) states:

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

But none of the cases cited by the Government discuss the effect of § 1498(c) on § 1498(a).[7] Furthermore, the legislative history indicates that Congress intended this language to serve as nothing more than a simple clarification that § 1498(a) applies to subcontractors, as well as prime contractors. *See* S. Rep. No. 77-1693 at 1, 5 (1942) (regarding Royalty Adjustment Act, Pub. L. No. 77-768, 56 Stat. 1013 (1942), codified at 28 U.S.C. § 1498 by Pub. L. No. 82-248, 65 Stat. 727 (1951)). Several courts have recognized this as the sole legislative intent behind the "authorization or consent" language of § 1498(a). *See, e.g., Yassin v. United States*, 76 F.Supp. 509, 518 (Ct. Cl. 1948); *Bereslavsky v. Esso Standard Oil Co.*, 175 F.2d 148, 150-51 (4th Cir. 1949). In short, there is nothing in the legislative history which suggests the second paragraph of § 1498(a) was meant, as the Government posits, to establish patent infringement immunity for government contractors irrespective of whether the Government could be liable.

The Government cites no other authority for its argument on statutory purpose except *Richmond Screw Anchor*. The Supreme Court in that 1928 case stated that Congress enacted § 1498:

> to relieve the contractor entirely from liability *of every kind* for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word 'entire' emphasizes the

---

[7] *See TVI Energy Corp. v. Blane*, 806 F.2d 1057 (Fed. Cir. 1986); *Robishaw Eng'g Inc. v. United States*, 891 F.Supp. 1134 (E.D. Va. 1995); *Sevenson Envtl. Servs. Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361 (Fed. Cir. 2007). These cases primarily regard the determination of what constitutes "authorization or consent." *TVI Energy*, 806 F.2d at 1060; *Robishaw*, 891 F.3d at 1141-42; *Sevenson*, 477 F.3d at 1367. The holdings of these cases are inapposite at present, since there seems to be no question Lockheed was acting for the Government with its authorization or consent. For the Government to be found liable for the infringing conduct of a contractor, however, § 1498 requires that the contractor must have acted "for" the Government with its "authorization or consent" *and* the claim of infringement must have arisen in the United States. 35 U.S.C. §§ 1498(a), (c).

exclusive and comprehensive character of the remedy provided.[8]

275 U.S. at 343, 48 S. Ct. at 197 (emphasis added).

A bit of background puts this statement in historical context. In 1918, Congress amended the predecessor statute to § 1498(a) to extend Government liability to include the infringing acts of government contractors acting on behalf of the Government. *See* Act of July 1, 1918, ch. 114, 40 Stat. 705 (patent infringement occurred when the invention was "used *or manufactured* . . . by *or for* the United States without license") (italicized text added by 1918 amendment) (codified as amended at 35 U.S.C. § 68 (1925)). This explicit expansion of Government liability was made to promote the smooth procurement of products and services from government contractors, without the contractors having to face the expense or distraction posed by infringement suits. *See Richmond Screw Anchor*, 275 U.S. at 345, 48 S. Ct. at 197 ("The intention and purpose of Congress in the act of 1918 was to stimulate contractors to furnish what was needed for the war, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents."); *see also* 56 Cong. Rec. 7960-61. In sum, Congress took away the government contractor's liability for patent infringement under the Patent Act and placed it on the Government. In 1928, the types of infringement recognized in the Patent Act were: using, making and vending the patented invention. 35 U.S.C. § 68 (1925).

In elaborating on its position with respect to *Richmond Screw Anchor* that Congress intended to insulate government contractors from all patent infringement suits, even when there is no cause of action against the United States, the Government argues that "§ 1498 takes away the patentee's right to bring an infringement action against a government contractor *and substitutes* an action for compensation against the Government."[9] Def.'s Opp'n to Pl.'s Mot. to Transfer at 4 (emphasis added).

The Government's "substitution" argument, based (as it is) solely on the quote from *Richmond Screw Anchor*, does not take into account that in 1928 the acts of infringement recognized in § 1498 largely corresponded with the acts of infringement recognized in the Patent Act, whereas today the Patent Act recognizes many more acts of infringement that have no counterpart in § 1498. *See, e.g.,* 35 U.S.C. §§ 271(f) (supplying components of a patented invention), 271(g) (importing, selling, or using a product made from a patented process). When the acts of infringement recognized by the Patent Act and § 1498 largely correspond, the "substitution" argument makes sense, as does the Supreme Court's statement of the statutory

---

[8]   The statute discussed in *Richmond Screw Anchor* was the predecessor to § 1498, enacted in 1910 and revised in 1918. 275 U.S. at 342-43, 48 S. Ct. at 196-97.

[9]   The Government further argued that "the protection afforded by [§ 1498(a)] exists whether or not the patent owner is able to actually recover," but cited no authority for this proposition that is relevant to claims arising in a foreign country and the nullifying effect of § 1498(c). Def.'s Opp'n to Pl.'s Mot. to Transfer at 4.

10

purpose of § 1498. Today, however, the causes of action recognized by § 1498 are no substitute for the causes of action recognized in § 271 of the Patent Act. *See Zoltek I*, 51 Fed. Cl. at 837; *Zoltek III*, 442 F.3d at 1350.

Given the discrepancy between the types of infringement in the Patent Act and § 1498, the Government's argument implies that the Supreme Court determined that Congress consciously anticipated this possibility and nevertheless intentionally chose to free government contractors from liability for future types of infringement while providing patent owners no remedy against the federal government. The Government provides no support for this remarkable proposition other than the words of the *Richmond Screw Anchor* quotation themselves. This Court has independently reviewed the legislative history of § 1498, and it was unable to find any such intention on Congress's part. This Court believes that the meaning of the quotation from *Richmond Screw Anchor* is dependent on the scope of patent infringement in the Patent Act as it stood in 1928.

The Federal Circuit's rationale in *Zoltek* is consistent with this Court's reading of the *Richmond Screw Anchor* quotation. That is, the Federal Circuit saw a correspondence between § 271(a) of the Patent Act and § 1498(a) and not a correspondence between § 1498(a) and all of the types of infringement recognized in § 271 as a whole. *Zoltek III*, 442 F.3d at 1350 ("[D]irect infringement under section 271(a) is a necessary predicate for governmental liability under section 1498.") (quoting *NTP,* 418 F.3d at 1316). In other words, § 1498(a) did not automatically expand to include the causes of action for patent infringement that were added by Congress after 1918 (such as § 271(g)). Therefore, it seems likely that the immunity of government contractors from infringement liability also did not expand, with the result that the immunity of government contractors under § 1498(a) would correspond only with the types of infringement included in § 271(a).[10]

At bottom, the Government's "substitution" argument uses "substitute" in a very strange way. It does not mean that insofar as there is a cause of action against the Government for patent infringement (pursuant to § 1498(a)), a government contractor is immune from such causes of action. This one-to-one substitution is unobjectionable. Instead, the Government argues that even when there is no cause of action against the Government to substitute for a cause of action against a government contractor (pursuant to § 271), the government contractor is still immune. This kind of substitution is counter-intuitive and is not supported by the language of § 1498 nor by the legislative history. One ambiguous quotation from an 80-year old Supreme Court decision

---

[10]   Section 271(a) includes making, using, and selling–the same acts constituting patent infringement in the Patent Act in 1918 ("make," "use," "vend")–but it also includes offering to sell and importing the patented invention into the U.S. *Compare* 35 U.S.C. § 271 (2008) *with* Rev. Stat. § 4884 (1874) (codified at 35 U.S.C. § 40 (1925)). It is therefore an open question whether the Federal Circuit has consciously or inadvertently expanded the scope of § 1498(a). An alternate interpretation is that only those acts in § 271(a) that correspond to "use" and "manufacture" in § 1498(a) are necessary predicates for governmental liability under § 1498(a).

11

is insufficient to persuade this Court that Congress intended in 1918 to preserve government contractors from all future suits for patent infringement even if there was no corresponding cause of action against the federal government. In short, the Government cannot pour new wine into old wine skins and expect them not to break.

To summarize, when an infringement claim arises in a foreign country, § 1498(c) must be construed to nullify the contractor immunity provision of § 1498(a). According to its language and purpose, § 1498(a) only insulates government contractors from suit when the Government can be found liable.[11] Because § 1498(c) must be read to nullify all provisions of § 1498(a), there is no basis remaining for limiting a patentee's "entire" recovery to suit against the Government. Per the Federal Circuit's decision on appeal, the Government has not waived its sovereign immunity and cannot be found liable for infringement claims arising in a foreign country. Construing § 1498(a) otherwise–to incorporate all forms of liability defined in § 271(as the Government advocates)–would be contrary to legislative intent and would be inconsistent with the language of § 1498 as a whole.

### 3.     Affirmative Defense, Not Jurisdictional Bar

From the standpoint of procedure, even if it were true that a government contractor is still insulated from suit when there can be no claim against the Government, the Government's assertion that the Northern District of Georgia would not have had jurisdiction over Zoltek's F-22 claim on account of § 1498(a) would still be incorrect. That is, even if § 1498(a) still insulated contractors from suit when § 1498(c) was triggered, § 1498(a) would not bar *jurisdiction* in the Northern District of Georgia. It is well-settled, in the context of infringement suits against private parties, that "section 1498(a) is an affirmative defense rather than a jurisdictional bar." *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir. 2002) (citing *Crater Corp v. Lucent Techs. Inc.*, 255 F.3d 1361, 1364 (Fed. Cir. 2001)); *Madey v. Duke University*, 307 F.3d 1351, 1359 (Fed. Cir. 2002); *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 555 n.6 (Fed. Cir. 1990) ("we see no inconsistency between interpreting section 1498(a) as a jurisdictional statute (waiving sovereign immunity) in suits against the United States and as merely codifying a defense that private parties who are alleged infringers may raise on the merits.").

Thus, even if § 1498(a) were applicable to prevent suit against contractors, § 1498(a) has no bearing on the § 1631 inquiry regarding whether the Northern District of Georgia would have had *jurisdiction* to entertain Zoltek's F-22 claim. If Zoltek had brought suit against Lockheed in the Northern District of Georgia in 1996, that court would not have been warranted in dismissing

---

[11]     This Court does not hold that there is a cause of action against a government contractor if a patent owner *loses* his case against the Government on the merits. It is only when § 1498 does not provide a cause of action for patent infringement against the Government to substitute for a cause of action against the government contractor that the patent owner may sue the government contractor for infringement under the Patent Act.

the suit for lack of jurisdiction based solely on § 1498(a). Rather, the court would have considered § 1498(a) in the context of an affirmative defense, if raised, and after hearing evidence, would have decided the issue on a motion for summary judgment. *Toxgon*, 312 F.3d at 1382 ("If appropriate, a [contractor's] defense arising under section 1498(a) should be resolved by summary judgment under Rule 56 rather than a motion to dismiss under Rule 12").

Therefore, the Government is incorrect in arguing that § 1498(a) is a jurisdictional bar which controls the § 1631 inquiry of whether the Northern District of Georgia would have had jurisdiction over Zoltek's F-22 claim. Section 1498(a) provides a defense which a contractor has the option of raising and on which the contractor would bear the burden of proof. It is not a jurisdictional statute on which a patentee would bear the burden of proving its inapplicability.

### B.  Jurisdiction Over a Claim Against Lockheed

Zoltek's complaint currently alleges a claim against the Government, not Lockheed. Because § 1498(a) is not a jurisdictional bar and does not procedurally prevent suit against Lockheed, the next inquiry under § 1631 is to determine, substantively, whether the Northern District of Georgia could have heard any of Zoltek's claims when Zoltek filed its original complaint. *Fisherman's Harvest*, 490 F.3d at 1374. Because Zoltek's complaint does not presently allege–nor has it ever alleged in this Court–a "claim" for patent infringement over which the Northern District of Georgia would have had jurisdiction, the Court finds that this requirement of § 1631 is not presently met.

The Government correctly notes that the Northern District of Georgia would not have had jurisdiction over Zoltek's F-22 claim as presently alleged, because it recites a cause of action under § 1498 against the Government. Def.'s Opp'n to Pl.'s Mot. to Transfer at 2-3. Zoltek did not in its brief meet this issue head on. Instead, it essentially asked this Court to disregard the exact wording of the second prong of § 1631 and trust that Zoltek will appropriately amend its complaint once the F-22 claim has been transferred. Pl.'s Mot. to Transfer at 4 ("If the Court grants Zoltek's present motion to transfer, Zoltek . . . will move for leave to file an amended complaint alleging patent infringement under 35 U.S.C. § 271 against Lockheed.").

Zoltek's position is tantamount to arguing that, when seeking transfer under § 1631, it is enough merely to point to factual allegations in the complaint which *could* support a transferable claim. But the Court interprets § 1631 to require a more certain finding that the transferee court would have had subject matter jurisdiction over the claim to be transferred, *as it is alleged. See Fisherman's Harvest*, 490 F.3d at 1374-75; *County of Cook*, 170 F.3d at 1089-90. For example, in *County of Cook*, the only "claims" that were transferred were those already alleged as causes of action over which the Court of Federal Claims would have had jurisdiction. *County of Cook*, 170 F.3d at 1086-87. The Federal Circuit did not transfer other claims over which the transferee court would not have had subject matter jurisdiction, even though the other claims related to the same facts. *Id.*

13

Despite all of Zoltek's promises and exhortations, this Court simply cannot, pursuant to § 1631, transfer a claim over which the transferee court would not have had jurisdiction. Zoltek's F-22 claim is not presently framed as a claim which the Northern District of Georgia could have heard, because it is alleged as a § 1498 claim against the Government. Only this Court can hear suits against the Government for patent infringement. 35 U.S.C. § 1498(a). For a transfer to take place, Zoltek's complaint must allege an infringement claim against Lockheed of a type which is not precluded by § 1498(a).

>    1.    **Based on the facts, it reasonably appears that the Northern District of Georgia would have had jurisdiction over a claim against Lockheed properly alleged under § 271.**

Aside from its arguments concerning the effect of § 1498(a), the Government does not appear to dispute that the Northern District of Georgia would have had jurisdiction to hear a claim against Lockheed, if properly alleged under § 271(g). *See* 28 U.S.C. §§ 1391, 1400.

When steps of a process claim are performed in a foreign country, no liability for infringement would exist under § 271(a). *NTP*, 418 F.3d at 1316. However, if the process results in a product that an unauthorized individual "*imports* into the United States or offers to sell, sells, *or uses* within the United States" then liability can exist under § 271(g). 35 U.S.C. § 271(g) (emphasis added); *see Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d. 1338, 1348 (Fed. Cir. 200); *Eli Lilly & Co. v. American Cyanamid Co.*, 82 F.3d 1568, 1571-72 (Fed. Cir. 1996). In other words, by changing the infringing act from the use of a *process* to the importation, offer to sell, sale, or use of a *product resulting from the process*, the extraterritorial problems with finding infringement of a process claim under § 271(a) can be eliminated in certain instances if the claim is brought under § 271(g). *Id.*

Here, in the case of the Tyranno fibers, part of the claimed process is performed abroad and part of the claimed process is performed in the United States. However, it seems that the product resulting from the claimed process, that is, a sheet product made from partially carbonized fibers, is "used" in the United States. Thus, it appears reasonably plausible that the Northern District of Georgia could have heard Zoltek's claim if it were alleged against Lockheed under § 271(g) for the unauthorized use of the Tyranno-based sheet products in the F-22.

If the Nicalon fibers are formed into sheet products in the United States, then it is reasonably plausible, for the same reasons, that the Northern District of Georgia could have heard a claim for use of the Nicalon products. On the other hand, if the Nicalon fibers are formed into sheet products in Japan and subsequently imported into the United States, then it appears reasonably plausible that the Northern District of Georgia could have heard Zoltek's claim if it were alleged against Lockheed under § 271(g) for the unauthorized importation or use of the Nicalon-based sheet products used in the F-22.

**IV.     The Interests of Justice in Transferring the F-22 Claim**

The third requirement under § 1631 is that transfer must serve the interests of justice. In considering the equities of transfer, it should first be noted that the language of § 1631 favors transfer. When the transferor court lacks jurisdiction, and the transferee court would have had jurisdiction, then "the court *shall*, if it is in the interest of justice, transfer such action." 28 U.S.C. § 1631 (emphasis added).

Zoltek stresses the injustice that would result if its F-22 claim were now dismissed, due to potential statute of limitations problems with respect to filing a new suit in another court. Zoltek believes that "at least some portion of its patent infringement claim against Lockheed" would be lost due to the six year statute of limitations found in 35 U.S.C. § 286, though neither party has yet opined as to exactly how much of the claim would be lost. Pl.'s Mot. to Transfer at 6. Zoltek submits that the first "production-representative" plane was constructed by Lockheed in 1997 and the first "production" plane was delivered to the Government by Lockheed on January 14, 2003. *Id.*

According to the Federal Circuit, "[a] compelling reason for transfer is that the [plaintiff], whose case if transferred is for statute of limitations purposes deemed by section 1631 to have been filed in the transferor court . . . will be time-barred if his case is dismissed and thus has to be filed anew in the right court." *Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1374 (Fed. Cir. 2005) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). Though it has not been definitively established that Zoltek's claim would be completely time-barred if filed as a new case, the Court is satisfied, based on evidence submitted to date, of the plausibility that at least some importations of partially carbonized sheet products made through infringing processes occurred more than six years ago.

In response, the Government first argues that transfer would not serve the interests of justice because it would be futile given the perceived jurisdictional bar of § 1498(a). Def.'s Opp'n to Pl.'s Mot. to Transfer. at 5. This argument is unpersuasive because, as discussed above, § 1498(a) does not prevent Zoltek from bringing its claim against a private party in a district court. The Government's only other point is that it would be prejudicial and unfair to subject Lockheed to suit at this late stage in the litigation. *Id.* at 6. While the Court appreciates that being brought into an eleven year old suit without any prior warning would be unfair, Lockheed has participated in discovery in this case as early as 1997 and undoubtedly is quite aware that its product and Zoltek's '162 patent are at issue in this litigation. *See* Pl.'s Reply at 9.

More importantly, the interests of justice favor transfer because Zoltek happens to be the unfortunate plaintiff who first encountered a legislative gap between the definition of infringement under § 1498 and the definition of infringement under § 271. *See Zoltek I*, 51 Fed. Cl. at 837-38. Zoltek is also the first plaintiff to find out that it is not possible to invoke the takings jurisdiction of the Court of Federal Claims to bring patent infringement suits against the Government. *Zoltek III*, 442 F.3d at 1353. Thus, based on the law existing at the time it filed its

complaint, Zoltek reasonably and diligently attempted to have its claim heard in what it thought was the proper court. Contrary to the Government's assertion that no court has jurisdiction over Zoltek's claim, this Court is of the opinion that Zoltek is entitled, as should be all plaintiffs, to have its day in some court.

### V.  Summary

By operation of § 1498(c), § 1498(a) has no effect. Therefore, the immunity from suit for patent infringement conferred by § 1498(a) when a patented invention is used or manufactured for the federal government has no effect, as well. Consequently, the Northern District of Georgia would have had jurisdiction over a patent infringement suit brought by Zoltek against Lockheed. Furthermore, justice would favor transfer in this case. Nevertheless, Zoltek's complaint does not presently recite any claim over which the Northern District of Georgia would have had jurisdiction when the present action was filed. However, the Court recognizes that, due to the rather unique circumstances of Zoltek's claim and the associated issues of first impression involved, there would have been no reason in 1992 for Zoltek to have thought to present its claim as one against Lockheed (in any court).

Leave to amend a complaint shall be freely granted whenever justice so requires. RCFC 15(a)(2). As the Court noted above, the interests of justice favor permitting Zoltek to transfer its F-22 claim (which would require amending the complaint) and Lockheed would not be unduly prejudiced by permitting Zoltek to name Lockheed as the defendant. Moreover, though Zoltek's statutory basis for recovery would change if it were to name Lockheed as defendant, the "claim" would remain the same, at least inasmuch as the asserted claims, the allegedly infringing process steps, and the entities performing the steps would remain the same.

Furthermore, when transferring patent infringement cases to this Court, courts do not seem to have been particularly concerned with the requirement of the second prong of the transfer statute–that the transferee court would have had jurisdiction *at the time the original case was filed*. A very thorough search of cases involving transfers from district courts to the Court of Federal Claims turned up no published opinions in which a district court balked at transferring a case to the Court of Federal Claims solely because the complaint, at the time it was filed, did not recite a claim against the Government. This Court found only one recent case in which the district court appeared to be concerned by this requirement, and allowed the complaint to be amended before transfer to the Court of Federal Claims. *Kersavage v. United States*, 36 Fed. Cl. 441, 443 (1996) (case was originally filed in U.S. District Court for the Eastern District of Tennessee as a suit against private actors, but complaint was amended to recite federal government as the defendant and § 1498 as the cause of action, to allow for transfer to the Court of Federal Claims).

Finally, it makes no practical sense to deny Zoltek's motion to transfer just because its complaint did not originally recite a claim against Lockheed. If this were the law, in the future plaintiffs would file complaints against government contractors and against the Government in

district court and in the Court of Federal Claims in order to preserve their rights in case they made the wrong guess as to who was the proper defendant. The parties and the courts would then have to go through a meaningless ritual of dismissing the inapposite claim.

      Therefore, for the reasons stated above, the Court hereby GRANTS Zoltek leave to amend its complaint to assert a claim against Lockheed under § 271. Zoltek shall file a proposed amended complaint, alleging a claim against Lockheed that is phrased consistently with the Court's discussion in this opinion, on or before **February 6, 2009**. Upon the Court's satisfaction that Zoltek has properly framed its F-22 claim, the Court will grant Zoltek's present motion and enter an order transferring Zoltek's claim to the U.S. District Court for the Northern District of Georgia.

                                                        s/ Edward J. Damich
                                                        EDWARD J. DAMICH
                                                        Chief Judge