IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ZOLTEK CORPORATION, a Missouri corporation, Plaintiff, | |
| v. | No. 96-166C |
| THE UNITED STATES, and LOCKHEED MARTIN CORPORATION, a Maryland corporation, Defendants. | Chief Judge Edward J. Damich |

**MOTION BY LOCKHEED MARTIN CORPORATION TO AMEND THE COURT'S ORDER OF FEBRUARY 18, 2009 AND TO CERTIFY AN ISSUE FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(d)(2)**

Lockheed Martin Corporation ("Lockheed Martin"), named as a co-defendant with the United States ("Government") in the Third Amended Complaint filed in this Court on February 6, 2009, by Plaintiff Zoltek Corporation ("Zoltek") (Doc. No. 372), hereby requests the Court to amend its February 18, 2009 Order (Doc. No. 374) to include the following statement:

> The issue of whether when a patent infringement claim "aris[es] in a foreign country," 28 U.S.C. § 1498(c) must be construed to nullify the Government contractor immunity provided by § 1498(a) presents a controlling question of law with respect to which there is substantial ground for differences of opinion. Pursuant to 28 U.S.C. § 1292(d), an immediate appeal from this order will materially advance the termination of this litigation.

**DISCUSSION**

Transfer orders are generally interlocutory in nature and appealable only as incident to a final judgment or as a certified question. FDIC v. Maco Bancorp, Inc., 125 F.3d 1446, 1447 (Fed. Cir. 1997). Interlocutory orders of the Court of Federal Claims may be appealed to the Court of Appeals for the Federal Circuit where the judge, "in issuing an interlocutory order,

includes a statement that a controlling issue of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2). Certification of the Court's February 18, 2009 Order for immediate appeal is an appropriate vehicle to advance this case.

### A. The Court's February 18, 2009 Order and January 16, 2009 Opinion Present a Controlling Issue of Law with Respect to Which There Is a Substantial Ground for Difference of Opinion.

In an opinion dated January 16, 2009, this Court interpreted the March 31, 2006 per curiam opinion of the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") in this case to hold that because not all steps of the processes claimed in U.S. Patent No. Re. 34,162 were performed in the United States, the Government cannot be liable for infringement of the asserted processes under 28 U.S.C. § 1498(a). (Doc. No. 369 at 4 ("'[W]here, as here, not all steps of a patented process have been performed in the United States, government liability does not exist pursuant to section 1498(a).'") (quoting Zoltek Corp. v. United States (Zoltek III), 442 F.3d 1345, 1350 (Fed. Cir. 2006).) This Court then interpreted § 1498(c) to "render[] inapplicable all of the provisions of § 1498 when claims under § 1498(a) arise in a foreign country, including the waiver of sovereign immunity and the language of § 1498(a) stating that a patentee's 'remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation.'" (Id. at 8 (quoting 28 U.S.C. § 1498(a) (emphasis is the Court's)).) Because the Court saw "no reason why a government contractor could not be subject to suit under § 271 when § 1498(c) has been triggered," it granted Zoltek leave to amend its complaint to assert a claim against Lockheed Martin solely under 35 U.S.C. § 271(g). (Id. at 14, 17; see also Doc. No. 371.) After Zoltek

filed an amended complaint that the Court deemed appropriate, the Court granted Zoltek's motion to transfer Count II of the amended complaint, in its February 18, 2009 Order.

The controlling issue that underlies the Court's February 18, 2009 transfer order is an issue of law—the construction of 28 U.S.C. § 1498, as set out in the Court's January 16, 2009 opinion. See, e.g., Zoltek III, 442 F.3d at 1349 (noting that this Court's statutory construction of § 1498 is purely a question of law). Further, the construction of § 1498 is a "controlling issue of law" that will fundamentally impact many government contractors who rely on § 1498 in bidding on, negotiating, and performing contracts for the Government. See, e.g., Kohn v. Royall, Koegel & Wells, 59 F.R.D. 515, 525 (S.D.N.Y. 1973) ("[A] question is deemed controlling only if it may contribute to the determination, at an early stage, of a wide spectrum of cases.").

Apportioning risk of potential liability for intellectual property infringement is a crucial issue in commercial contracting and is often one of the most highly negotiated provisions in a commercial contract. The waiver of sovereign immunity for patent infringement claims against the Government and immunity provided to contractors for the use or manufacture of inventions by or for the Government bears heavily on this apportionment of risk and, in most cases, effectively resolves it by placing all risk on the Government. Contractors' actions in executing contracts are also heavily influenced by § 1498(a) as their immunity under it allows them to fulfill critical Government demands more quickly and efficiently than prudent parties would otherwise act when they are susceptible to claims of infringement. TVI Energy Corporation v. Blane, 806 F.2d 1057, 1059-60 (Fed. Cir. 1986) (elucidating that the Congressional purpose underlying the contractor immunity provision of § 1498 "was to relieve private Government contractors from expensive litigation with patentees, possible injunctions, payment of royalties, and punitive damages" and concluding that "[t]he coverage of § 1498 should be broad so as not

to limit the Government's freedom in procurement by considerations of private patent infringement").

The elimination of the Government's liability and the Government's contractors' § 1498(a) immunity in all cases where there is a possibility that a single step of a patented method/process may have been performed in a foreign country changes the fundamental legal framework upon which the Government and its contractors have traditionally operated in negotiating and fulfilling contracts since the year 1918. Indeed, the abrogation of contractor immunity effected by the Court's interpretation of § 1498 is without precedent in the more than ninety years since the contractor immunity provision of § 1498 was enacted. Contractors will now be potentially liable for monetary damages. Moreover, this potential liability will result in the very consequence that § 1498(a) contractor immunity was intended to avoid, namely injunctions that halt the supply of essential products and services to the Government at crucial times, such as during war.

Respectfully, there is a substantial ground for difference of opinion regarding this controlling issue of law. The Court's interpretation of § 1498(c) to render inapplicable the immunity under § 1498(a) for government contractors, such as Lockheed Martin, to patent infringement liability for the use or manufacture of an invention for the Government was not compelled by the Federal Circuit's March 31, 2006 opinion. Indeed, this Court noted that the Federal Circuit's opinion "did not mention § 1498(c) at all" and instead "focused on a possible connection between § 1498 and § 271 of the Patent Act." (Doc. No. 369 at 4; see also id. at 5 n.3 (Court noting ambiguity regarding whether the Federal Circuit's opinion purposefully omitted reference to § 1498(c)).) The Federal Circuit's opinion did not address the viability of a potential claim by Zoltek against Lockheed Martin, but did reiterate that "[a] patentee's judicial

recourse against the federal government, or its contractors, for patent infringement, is set forth and limited by the terms of 28 U.S.C. § 1498." Zoltek III, 442 F.3d at 1349. Further, this Court acknowledged that this case presents "unique circumstances" and raises "associated issues of first impression" in view of which "there would have been no reason in 1992 for Zoltek to have thought to present its claims as one against Lockheed (in any court)." (Doc. No. 369 at 16.) At least for the same reasons, and because in the more than twelve years that this case has been pending Zoltek never indicated otherwise, Lockheed Martin had no reason to expect or anticipate that Zoltek would assert a claim against Lockheed Martin until Zoltek filed its recent motion to transfer and amended its complaint.

In addition to the differences of opinion demonstrated by the briefing of the parties on Zoltek's motion to transfer, a substantial ground for differing opinions regarding whether § 1498(c) nullifies Government contractor immunity under § 1498(a) derives from the legislative history of § 1498, principally, that each of (1) the § 1498(a) waiver of the Government's sovereign immunity, (2) the § 1498(a) contractor immunity, and (3) the § 1498(c) limitation on the Government's waiver of sovereign immunity, was enacted into law at different times and for different reasons. See, e.g., Crandon v. United States, 494 U.S. 152, 158 (1990) (noting that to fully understand the meaning of a statute, the court looks "not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy"). As discussed in Richmond Screw, the waiver of the Government's sovereign immunity to patent infringement claims that would eventually be codified in § 1498(a) was enacted in 1910. 275 U.S. at 344 (discussing Act of June 25, 1910, ch. 423, 36 Stat. 851). "The original legislative premise [of the 1910 Act] was to assure a remedy to patentees." Trojan, Inc. v. Shat-R-Shield, Inc., 885 F.2d 854, 857 (Fed. Cir. 1989) (Newman, J., concurring).

The contractor immunity provision that would eventually be codified in § 1498(a) was not enacted until 1918. Act of July 1, 1918, ch. 114, 40 Stat. 704, 705. "[T]he [1918] Act deprive[d] the owner of the patent of a remedy against the infringing private contractor for infringements thereof and makes the Government indemnitor for its . . . infringements." Richmond Screw, 275 U.S. at 346. The intention and purpose of Congress in amending the 1910 Act to provide for contractor immunity was "to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the Government and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture." Id. at 343 (emphasis added). The context for this contractor immunity was "to stimulate contractors to furnish what was needed for the War, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents." Id. at 345.

Section 1498(c) was not added to the statute until 1960, as part of Congress' amendments providing an action against the Government for copyright infringement. Act of Sept. 8, 1960, Pub. L. No. 86-726, 74 Stat. 855. The language eventually adopted as § 1498(c) was proposed by the State Department, among other things, to remedy concerns that §1498 would allow for infringement actions abroad. See H.R. Rep. No. 86-624, at 6-7 (1959) (reprinting June 5, 1958 letter from William B. Macomber, Jr. Assistant Secretary of State, to James O. Eastland, Chairman of the Senate Judiciary Committee). According to this Court's interpretation of § 1498(c) in a prior opinion in this case, the intention and purpose of Congress in enacting § 1498(c) was to afford the United States the same territorial protection private citizens—such as, e.g., government contractors—have under 35 U.S.C. § 271. (Doc. No. 191, published at

Zoltek Corp. v. United States, 51 Fed. Cl. 829, 835 (Mar. 14, 2002) ("[A]t the time that section 1498(c) was enacted, because a private citizen could avoid infringing a patent by practicing one limitation in a foreign country, section 1498(c) was also intended to exempt the Federal Government from liability where any part of the invention was practiced outside of the United States.")); accord Zoltek III, 442 F.3d at 1356 (Gajarsa, J., concurring) ("Indeed, prior to the passage of § 1498(c), the remedy created by § 1498(a) was broader than that available against private parties in some instances. Again, the plain text of subsection (a) makes this clear. Whereas § 271(a) contains a territoriality restriction, § 1498(a) contains none."); id. at 1369 (Dyk, J., concurring) ("The 1918 amendments . . . similarly confirm that the purpose of the statute was simply to obligate the United States to the same extent as private parties.").

As to government contractor immunity, the legislative history of § 1498 shows that the purpose of § 1498(c) was to shield both the Government and its contractors from claims arising in a foreign country. See Zoltek III, 442 F.3d at 1364 (Gajarsa, J., concurring) ("In narrowing the reach of actions under § 1498(a), § 1498(c) manifests a Congressional intent to limit infringement actions where conduct by or for the government sounded abroad.") (emphasis added). Interpreting § 1498(c) to strip a government contractor of immunity is at odds with both the Congressional intent underlying § 1498(c) and the text of § 1498. The legislative history of § 1498(c) is intertwined with that of § 1498(b) in that both were simultaneously discussed and treated in bills introduced by Congress during the years 1955-59. See, e.g., H.R. 6716, 84th Cong. (1955); H.R. Rep. No. 84-2494, at 1-2 (1956); H.R. Rep. No. 86-624, at 1; Act of Sept. 8, 1960, Pub. L. No. 86-726, 74 Stat. 855, 855-56 (introduced as H.R. 4059, 86th Cong. (1959)). Nothing in the legislative history of subsections (b) and (c) indicates that Congress intended to expose contractors to liability for patent or copyright infringement claims arising abroad.

Indeed, a fair reading of the legislative history concerning both subsections (b) and (c) during this time period shows that Congress intended to shield government contractors from liability when acting with the authorization or consent of the United States Government, including actions that arose in a foreign country. At the time § 1498(c) was enacted, § 1498(a) already included immunity for contractors for patent infringement claims and the text of § 1498(b) provided immunity for "contractor[s], subcontractor[s], or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government" for copyright infringement claims. 28 U.S.C. § 1498(b); see also, e.g., H.R. Rep. No. 86-624, at 1 ("[T]he creation of a statutory right of suit against the United States for acts committed abroad, notes the State Department, would open an avenue of legal action which could give rise to further problems in related and similar fields."). More specifically, the legislative history of subsections (b) and (c) demonstrates that Congress intended to immunize government contractors from actions arising in foreign countries. Hearing on H.R. 4059 Before the Subcomm. on Patents, Trademarks, and Copyrights of the S. Comm. on the Judiciary, 86th Cong. 12 (1960) (statement of Arthur Fisher, U.S. Registrant of Copyrights).

Understanding this context surrounding the enactment of § 1498(c), it is clear that § 1498(c) bolsters contractor immunity as to claims arising in foreign countries. Put another way, there is a solid basis for reading § 1498 to provide that a suit against the Government is the sole remedy for infringement of an invention used or made for the Government, that government contractors are immune from all such claims of infringement, and that both the Government and its contractors are immune when such claims arise in a foreign country. Cf. Zoltek III, 442 F.3d at 1370 (Dyk, J., concurring) (noting that rights afforded by § 1498 must be construed by taking § 1498(a) and § 1498(c) together, as "[i]t makes no sense to say that section 1498(a) confers

rights that are 'taken' by section 1498(c)"). Only Congress can provide a further remedy to a patentee for a claim arising in a foreign country based on the conduct of a contractor acting with the authorization or consent of the Government. Absent a Congressional mandate, Zoltek has no cause of action against Lockheed Martin.

**B. Interlocutory Appeal May Advance the Ultimate Termination of this Litigation.**

Permitting this interlocutory appeal will materially advance the ultimate termination of this case. As with the prior appeal by the Government, the issue presented here will be presented to the Federal Circuit at some time, the only question is when.

Certifying the issue for immediate appeal will advance the litigation by obtaining an early resolution of an issue that is potentially dispositive of Zoltek's claim against Lockheed Martin. First, this Court's interpretation of the § 1498 is not binding on the transferee U.S. District Court for the Northern District of Georgia. See McGinley v. Houston, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him . . . .") (citing18-134 Moore's Federal Practice – Civil § 134.02 (Matthew Bender & Co., Inc. 2003). Accordingly, without binding precedent, this issue will be re-litigated in the transferee court. Re-litigation of this issue poses the risk that the transferee court will arrive at a statutory construction inconsistent with this Court's. Second, whether the transferee court arrives at the same statutory construction or not, the issue will likely be appealed to the Federal Circuit. Immediate appeal of this potentially dispositive issue may spare the transferee court and the parties from incurring the cost and time required for discovery and trial of issues that may not need to be litigated.

**CONCLUSION**

For the reasons stated, Lockheed Martin requests that the Court amend its February 18, 2009 Order to include the following statement:

> The issue of whether when a patent infringement claim "aris[es] in a foreign country," 28 U.S.C. § 1498(c) must be construed to nullify the Government contractor immunity provided by § 1498(a) presents a controlling question of law with respect to which there is substantial ground for differences of opinion. Pursuant to 28 U.S.C. § 1292(d), an immediate appeal from this order will materially advance the termination of this litigation.

Respectfully submitted,

Richard T. Ruzich by Christopher W. Mahaley

Dated: March 13, 2009

Richard T. Ruzich
DUANE MORRIS LLP
Suite 3700
190 S. LaSalle St.
Chicago, IL 60603-3433
p: (312) 499-6783
f: (312) 896-5652
rtruzich@duanemorris.com

*Of counsel*:
Matthew C. Mousley (admission pending)
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103-4196
p: (215) 979-1804
f: (215) 689-4936
mcmousley@duanemorris.com

Kerry B. McTigue (admission pending)
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
p: (202) 776-7844
f: (202) 315-3423
kbmctigue@duanemorris.com

*Counsel for*
*Lockheed Martin Corporation*

**CERTIFICATE OF SERVICE**

I certify that today I am filing the foregoing MOTION BY LOCKHEED MARTIN CORPORATION TO AMEND THE COURT'S ORDER OF FEBRUARY 18, 2009 AND TO CERTIFY AN ISSUE FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(d)(2) with the Office of the Clerk of the United States Court of Federal Claims by hand delivery and serving copies of the same on the below-listed counsel by U.S. mail:

Dean A. Monco
Wood, Phillips, Van Santen, Clark & Mortimer
500 West Madison, Suite 3800
Chicago, IL 60661-2511

Attorney for Plaintiff Zoltek Corporation

Peter D. Keisler
John Fargo
Gary L. Hausken
Commercial Litigation Branch
1100 L Street, NW
Civil Division
Department of Justice
Washington, D.C. 20530

Attorneys for the United States

Dated: March 13, 2009

Richard T. Ruzich by Christopher W. Maloney



DM1\1571315.10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ZOLTEK CORPORATION,<br>a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES, and<br><br>LOCKHEED MARTIN CORPORATION,<br>a Maryland corporation,<br><br>Defendants. | No. 96-166C<br><br>Chief Judge Edward J. Damich |

**DISCLOSURE STATEMENT**

Counsel for Defendant Lockheed Martin Corporation certifies the following:

1. The full name of every party represented by me is:

**Lockheed Martin Corporation**

2. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

**State Street Bank and Trust Company**
**One Lincoln Street**
**Boston, MA 02111**

March 13, 2009

Richard T. Ruzich by Christopher W. Mahoney

Richard T. Ruzich
DUANE MORRIS LLP
Suite 3700
190 S. LaSalle St.
Chicago, IL 60603-3433
p: (312) 499-6783
f: (312) 896-5652
rtruzich@duanemorris.com